WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| Robert Cook, | No. CV-23-01975-PHX-DGC |
| Individual Plaintiff, | **ORDER** |
| v. | **Expert Witness Benjamin Musher, M.D.** |
| Becton Dickinson and Company, et al., | |
| Defendants. | |

This multidistrict litigation ("MDL") involves thousands of personal injury cases related to implanted port catheters ("IPCs" or "ports") designed, manufactured, and marketed by Defendants Becton Dickenson and Company, C. R. Bard, Inc., Bard Access Systems, Inc., and Bard Peripheral Vascular, Inc. (collectively, "Defendants" or "Bard"). Plaintiff has filed a motion to exclude the expert opinions of Benjamin Musher, M.D. Doc. 5811. The motion is fully briefed and no party requests oral argument. *See* Docs. 5811, 6244, 6411. The Court will grant the motion in part.

**I.    Background.**

An IPC is a medical device surgically implanted under the skin to provide repeated access to a patient's vascular system without the need for multiple needlesticks into peripheral veins. IPCs are used to deliver chemotherapy and immunotherapy medication,

intravenous fluids, blood transfusions, and parenteral nutrition. IPCs can remain in place for weeks, months, or even years until treatment is completed.

IPCs consist of a port and a catheter. The port is a small reservoir disc with a self-sealing silicone center where a needle can be inserted to deliver medication. The port typically is implanted beneath the chest skin and below the collarbone. Port bodies vary in shape and size and are made of plastic, silicone, or titanium. The port is attached to a catheter, which is a thin flexible tube for delivery of the medication to a vein. The catheter is tunneled under the skin to an insertion point in a central vein. Catheters vary in width and are made of silicone or polyurethane. IPCs typically are implanted by an interventional radiologist or a vascular surgeon. A nurse or other medical professional then accesses the IPC to inject the medication, which flows from the port to the catheter and into the vein.

This MDL involves multiple versions of Bard IPCs, each of which received premarket clearance from the Food and Drug Administration ("FDA"). Bard IPCs contain barium sulfate, a radiopaque substance that can be seen on diagnostic imaging such as X-ray, CT, and MRI scans. Several Bard IPCs are manufactured using polyoxymethylene ("POM"), an acetal thermoplastic polymer, in the construction of the port. Many Bard IPCs have a port with raised palpation bumps on the silicone center, which help identify these IPCs as power-injectable devices.

Each Plaintiff in this MDL had a Bard IPC implanted in his or her body, and claims it was defective and caused serious injury. Plaintiffs allege that the barium sulfate in the IPC degrades the mechanical integrity of the catheter, leading to surface irregularities that cause catheter fracture, infection, and blood clots. Plaintiffs further allege that Bard's manufacturing process for the POM-containing IPCs lacks adequate measures to stabilize the POM to prevent oxidative degradation, which causes cracks, fissures, and other physical defects in the polymer and increases the risk of fracture, infection, and thrombosis. Plaintiffs also allege that the palpation bumps on the power-injectable IPCs cause undue compression stress on the tissue surrounding the port, leading to ulceration and tissue necrosis. *See* Docs. 23, 1889.

Plaintiffs claim that safer alternative designs and manufacturing processes were available to Bard and that Bard IPCs are more dangerous than other available treatment options. Plaintiffs assert a host of state law claims, including design and manufacturing defects, failure to warn, breach of warranty, misrepresentation, concealment, and consumer fraud and unfair trade practices. *See* Docs. 23, 1889.

Bard disputes Plaintiffs' allegations and contends its IPCs are safe and effective and that the medical community is aware of risks associated with IPCs. Bard further contends that various factors impact the performance and wear of IPCs, including where the catheter is inserted and how well the device is maintained by medical professionals and the patient. *See* Docs. 23, 2023-1.

Plaintiff Robert Michael Cook brings his lawsuit in this MDL. Doc. 216 (Case No. CV-23-01975-PHX-DGC). On August 24, 2022, Plaintiff Cook had a Bard port implanted, and he subsequently suffered from an infection. *Id.* at 4. Plaintiff raises claims typical of this MDL, alleging the infection was caused by the Bard port. *Id.* at 5.

Defendants have identified Benjamin Musher, M.D. as an expert witness in the Cook case. Dr. Musher is a Professor of Medicine in the Hematology-Oncology Division of Baylor College of Medicine, and the Director of the Gastrointestinal Cancer Program at Baylor's NCI-designated Dan L Duncan Comprehensive Cancer Center. Doc. 5811-1 at 54, 76. He is certified by the American Board of Internal Medicine in Internal Medicine and Medical Oncology and is a member of the American Society of Clinical Oncology, among other medical societies. *Id.* at 20, 54, 78. He specializes in gastrointestinal malignancies and has treated thousands of patients with ports. *Id.* at 54-55. Plaintiff moves to exclude certain opinions of Musher under Federal Rule of Evidence 702.

**II.    Legal Standard.**

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the proponent of the expert's testimony "demonstrates to the court that it is more likely than not that" (a) "the expert's scientific, technical, or other specialized knowledge will help the

trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The proponent of the expert testimony must show by a preponderance of the evidence that the testimony satisfies each of these requirements. Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("[T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025) ("Consistent with the 2023 amendment, our precedent establishes that Rule 702 requires a proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence.").

The Court acts as a gatekeeper to ensure that expert testimony satisfies Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The Court's task is not to decide whether the expert is right or wrong, but to ensure the proposed opinions satisfy Rule 702. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 969-70 (9th Cir. 2013); *Engilis*, 151 F.4th at 1050. If the proponent does not meet its Rule 702 burden, the expert testimony is not admissible. *See Davis v. McKesson Corp.*, No. CV-18-1157-PHX-DGC, 2019 WL 3532179, at *3 n.2 (D. Ariz. Aug. 2, 2019) ("[T]he Court may admit expert opinions only if it can determine, under Rule 104(a), that Plaintiffs have shown each of the Rule 702 requirements to be satisfied by a preponderance of the evidence.").

**III.   Diagnosis Opinion.**

Plaintiff argues Musher, an oncologist and not an infectious disease doctor, is not qualified to diagnose Plaintiff's infection. Plaintiff argues "[i]t is not entirely clear whether Dr. Musher independently diagnosed Plaintiff with a port infection or is merely relaying the diagnosis made by Plaintiff's treating physicians." Doc. 5811 at 4. Plaintiff contends

4

Musher may only relay Plaintiff's diagnosis from Plaintiff's doctors – he may not make the diagnosis himself. *Id.*

Defendants confirm that Musher has not diagnosed Plaintiff with a port-related MSSA infection. Doc. 6244 at 5. Instead, Musher incorporates into his testimony the undisputed fact that Plaintiff was diagnosed with an MSSA infection stemming from his port. *See id.* at 6 ("There is no dispute that [Plaintiff] had an infection and that the infection was caused by MSSA."); *see also* Doc. 5811-1 at 6 (Musher's report relying on Plaintiff's medical records confirming Plaintiff's infection was MSSA). Plaintiff acknowledges that Musher may testify about these undisputed facts. *See* Doc. 5811 at 4. Defendants' clarification will be accepted by the Court, and this issue therefore provides no basis for exclusion of Musher's testimony.

**IV.    Causation Opinion.**

Plaintiff seeks to exclude Musher's opinion that Plaintiff's infection was "most likely" introduced during deaccessing. Doc. 5811 at 6. Plaintiff contends Musher's opinion must be excluded because it was not timely disclosed, he is not qualified to provide it, and he did not perform a differential diagnosis. *Id.* at 6-12. Because the Court accepts one of these arguments it need not address the other two.[1]

Plaintiff argues Musher is unqualified to opine on the "most likely" source of Plaintiff's infection because he does not possess "specialized training in or knowledge of infectious diseases" and was not otherwise Plaintiff's treating physician. Doc. 5811 at 9. Plaintiff relies on *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334 (S.D.N.Y. 2005), for the proposition that Plaintiff must exhibit specialized training or knowledge in infectious diseases, or otherwise be Plaintiff's treating physician, to render his causation opinion. *See id.* at 352 n.24 (orthopedic surgeon likely not qualified to opine on the cause of infection where he lacked "any unique training or qualifications," but causation opinion admitted because he was the treating physician).

---

[1] The Court reminds Plaintiffs' counsel to eliminate snide comments from briefing or argument. *See* Doc. 6411 at 2 (saying Musher "sputtered out his half-baked causation opinion for the first time at deposition").

5

Defendants respond that "courts in the Ninth Circuit have consistently held that Rule 702 'impose[s] no requirement that an expert be a specialist in a given field, although there may be a requirement that he or she be of a certain profession, such as a doctor.'" Doc. 6244 at 7 (quoting *Doe v. Cutter Biological, Inc.*, 971 F.2d 375, 385 (9th Cir. 1992)). They contend Musher need not be an infectious disease physician to render his causation opinion, and that "lack of particularized expertise goes to the weight accorded [an expert's] testimony, not to the admissibility of her opinion as an expert." *Id.* (quoting *Marshall v. RS 2018 Float, LLC*, No. 22-35899, 2024 WL 637487, at *1 (9th Cir. Feb. 15, 2024)).

The Court is not persuaded by Defendants' arguments. Clearly, a medical doctor's qualification to opine in one area "does not mean he is qualified to testify on all other medical topics." *Gorney v. Safeway Inc.*, No. CV-23-01413-PHX-SHD, 2025 WL 2586133, at *5 (D. Ariz. Sept. 8, 2025) (citation omitted). Because Musher is not an infectious disease physician, Defendants must show by a preponderance of the evidence that his knowledge, skill, experience, training, or education equip him with the specialized knowledge to opine on the original cause of Plaintiff's infection. Fed. R. Evid. 702.

Defendants have not met this burden. They cite Musher's qualification as a board-certified oncologist, but a medical license is not enough to opine on the cause of any medical issue. *See Alsadi v. Intel Corp.*, No. CV-16-03738-PHX-DGC, 2019 WL 4849482, at *4 (D. Ariz. Sept. 30, 2019) (explaining "the mere fact that Dr. Garcia is a qualified pulmonologist who treated [the plaintiff] does not render his opinions on causation admissible under Rule 702[.]" (citation omitted)).

Defendants rely primarily on Musher's clinical experience in managing patients with IPCs, in addressing both port-related and non-port related infections, and in collaborating with other doctors on treating port-related infections, as well as his medical decision-making for patients with port-related infections, including whether ports should be removed. Doc. 6244 at 6-7. But Musher's management of port patients and their infections, and his involvement in decision-making about port removal, does not show he has the knowledge or experience to testify as an expert on the original source of a port-

6

related infection. Treating an infection is not the same as determining its originating cause, and Defendants offer no evidence that Musher's medical practice involves determining the causes of infections.

The Court finds no support for Musher's qualification from its own review of his report and curriculum vitae. As a hematologist oncologist, Musher primarily treats patients with gastrointestinal ("GI") cancers. Doc. 5811-1 at 54. His research, publications, and teaching focus on GI cancers. *Id.*; *see also id.* at 76, 79-80, 86-92. Musher's clinical experience involving IPCs centers around providing therapy to his GI cancer patients, which requires him to monitor his patients' ports for complications, including infections, and treat them accordingly. *Id.* at 55. But Musher's report and CV nowhere state that he determines the causes of port-related infections.[2]

Courts have recognized that a physician's skill and experience in treating an illness does not necessarily mean the doctor can determine its cause. *See, e.g.*, *Wilson v. Pinnacle Foods Inc.*, No. 3:19-CV-229-BJB, 2022 WL 419595, at *6 (W.D. Ky. Feb. 10, 2022) ("Dr. Cumbo never connects his general experience treating Listeria and enteritis with any experience deducing their causes. Causation, not clinical diagnosis and treatment, is the question at issue. And '[t]he ability to diagnose medical conditions is not remotely the same,' . . . 'as the ability to deduce . . . in a scientifically reliable manner, the causes of those medical conditions.'" (citation omitted)). Courts within the Ninth Circuit have similarly excluded causation opinions of experts who have experience treating a medical condition but cannot show experience deducing their cause. *See, e.g.*, *Stambolian v. Novartis Pharms. Corp.*, No. CV 12-04378 BRO FMOX, 2013 WL 6345566, at *6 (C.D. Cal. Dec. 6, 2013) (finding doctor unqualified to render causation opinion where the

---

[2] The Court notes one publication co-authored by Musher on gastrointestinal infections. *See* Doc. 5811-1 at 86 (citing Daniel M. Musher & Benjamin L. Musher, *Contagious Acute Gastrointestinal Infections*, 351 New England J. Med. 2417 (2004)). The parties have not provided this article to the Court for review and it is not readily accessible. The article's abstract suggests, however, that the article does not discuss port-related infections. *See id.* ("This article examines direct human-to-human spread of acute gastrointestinal illness, defined as a syndrome of vomiting, diarrhea, or both that begins abruptly in otherwise healthy persons and is most often self-limited.").

7

plaintiff had "only shown that Dr. Herford was qualified to treat her as a patient suffering from [the medical condition at issue]," but there was "not enough evidence to demonstrate that Dr. Herford [was] qualified to opine within a reasonable degree of medical certainty that there [was] a connection between [the argued cause] and Plaintiff's [medical condition]").

The cases cited by Defendants are distinguishable.

In *Doe*, 971 F.2d 375, the Ninth Circuit found a surgeon qualified as an expert on blood products and hematology based on both his experience and study of medical literature. *See id.* at 385-86. Here, the Court finds no similar support for Musher's causation opinion.

In *Marshall*, 2024 WL 637487, the Ninth Circuit affirmed a district court's exclusion of proposed expert opinions on railcar design, modification, and loading because "beyond general references to their broad areas of expertise, [the experts] did not provide any link between their expertise and their opinions and methodology." *Id.* at *1. Similarly, Defendants have not provided any link between Musher's expertise in hematology oncology and the skill needed to determine the original source of an infection.

Finally, in *Gorney*, 2025 WL 2586133, the expert was not rendering a causation opinion. The cause of the injury – an accident – was not in dispute. *Id.* at *1.

Defendants have not shown by a preponderance of the evidence that Musher has the knowledge, skill, experience, training, or education to opine on the most likely cause of Plaintiff's infection. The Court therefore will exclude this opinion.

**IT IS ORDERED** that Plaintiff's motion to exclude the opinions of Benjamin Musher, M.D. (Doc. 5811) is **granted in part and denied in part**. Dr. Musher cannot opine that deaccessing was the most likely source of Plaintiff Cook's infection.

Dated this 29th day of January, 2026.

David G. Campbell
Senior United States District Judge