**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| Robert Cook, | No. CV-23-01975-PHX-DGC |
| Individual Plaintiff, | |
| v. | **ORDER** |
| Becton Dickinson and Company, et al., | |
| Defendants. | |

This multidistrict litigation ("MDL") involves thousands of personal injury cases related to implanted port catheters ("IPCs" or "ports") designed, manufactured, and marketed by Defendants Becton Dickenson and Company, C. R. Bard, Inc., Bard Access Systems, Inc., and Bard Peripheral Vascular, Inc. (collectively, "Defendants" or "Bard"). The MDL Plaintiffs received implants of Bard IPCs and claim they are defective and have caused serious injury.

Plaintiff Robert Cook brings one of the MDL cases.  He received a Bard IPC in August 2022 and developed a port-related infection.  His case has been chosen as one of several bellwether cases and is set for trial in April 2026.

Plaintiff has filed a motion for partial summary judgment.  Doc. 5822.  The motion is fully briefed and no party requests oral argument.  *See* Docs. 6243, 6417.  For reasons stated below, the Court will grant the motion in part and deny it in part.

1

## I.    Background.

An IPC is a medical device surgically implanted under the skin to provide repeated access to a patient's vascular system without the need for multiple needlesticks into peripheral veins.  IPCs are used to deliver chemotherapy and immunotherapy medication, intravenous fluids, blood transfusions, and parenteral nutrition.  IPCs can remain in place for weeks, months, or even years until treatment is completed.

IPCs consist of a port and a catheter.  The port is a small reservoir disc with a self-sealing silicone center where a needle can be inserted to deliver medication.  The port typically is implanted beneath the chest skin and below the collarbone.  The port is attached to a catheter, which is a thin flexible tube for delivery of the medication to a vein.  The catheter is tunneled under the skin to an insertion point in a central vein.  IPCs typically are implanted by an interventional radiologist or a vascular surgeon.  A nurse or other medical professional then accesses the IPC to inject the medication, which flows from the port to the catheter and into the vein.

The MDL Plaintiffs allege that Bard IPCs are defective and have caused Plaintiffs to suffer serious complications, including infection, thrombosis, and catheter fracture, migration, and perforation.  Plaintiffs claim that safer alternative designs and manufacturing processes were available to Bard and that Bard IPCs are more dangerous than other treatment options.  *See* Docs. 23, 1889.

Bard disputes Plaintiffs' allegations and contends its IPCs are safe and effective and the risks associated with IPCs are understood by the medical community and are considered by doctors when deciding whether to use them.  Bard further contends that various factors impact the performance of IPCs, including where the catheter is inserted and how well the device is maintained by medical professionals and the patient.  *See* Docs. 23, 2023-1.

## II.    Plaintiff Cook.

On August 24, 2022, Plaintiff Cook received a Bard PowerPort IPC with a ChronoFlex catheter at the Mayo Clinic in Rochester, Minnesota for chemotherapy.  Dr. Richard Frimpong, an interventional radiologist, implanted the IPC.  On August 25, 2022,

medical professionals at the Mayo Clinic accessed the IPC to administer the first round of chemotherapy.  On or about August 27, 2022, the IPC was de-accessed at Plaintiff's home by his wife, Ann Potter, or his friend, Megan McGuigan Oglesbee (or both).[1]   Plaintiff developed a bloodstream infection and was diagnosed with sepsis on September 3, 2022.

Plaintiff claims the PowerPort was defectively designed and caused his infection. Plaintiff also alleges that Bard failed to warn about and concealed the PowerPort's risks, and that Bard made negligent and fraudulent misrepresentations about the PowerPort. Plaintiff asserts multiple claims against Defendants under Minnesota law.  *See* Doc. 216 (short-form complaint); Doc. 1889 (master complaint).  Defendants deny liability and assert various affirmative defenses.  *See* Doc. 2023-1 (master answer).[2]

Plaintiff moves for summary judgment on the intervening and superseding cause defense, the contributory fault and apportionment defense, and the statute of limitations and repose defenses.  Doc. 5822 at 2; *see* Doc. 2023-1 at 66-69, ¶¶ 10, 12, 13, 15, 18, 26, 28, 32.  The Court will deny the motion as moot with respect to the statute of limitations and repose defenses because Defendants do not assert these defenses in this case.  *See* Doc. 6243 at 2 n.1.  The Court will deny the motion with respect to intervening and superseding cause and grant summary judgment in part on contributory fault and apportionment.

**III.    Summary Judgment Standard.**

Summary judgment is appropriate if the moving party shows there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

[1] The Court notes that Ms. Oglesbee is referred to as Ms. McGuigan in other orders filed in this litigation.  The record uses these names interchangeably, and the Court follows the name used in the parts of the record relevant to this motion.

[2] The master pleadings set forth allegations, claims, and defenses the MDL Plaintiffs and Defendants assert generally.  *See* Doc. 145.  Plaintiff-specific allegations are contained in individual short-form complaints, profile forms, and fact sheets.  *See id.*; Docs. 476, 477. Defendants are not required to file case-specific answers and instead enter an initial appearance in each case.  *See* Doc. 453.

and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 322, 323 (1986).

The moving party "bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and draw justifiable inferences in that party's favor, *Anderson*, 477 U.S. at 255.

**IV.    Discussion.**

Plaintiff alleges that Bard negligently designed the PowerPort because the polyurethane used in the ChronoFlex catheter is a hydrophobic material ripe for infection and Bard failed to coat the catheter with antimicrobial material. Doc. 5822 at 2. Plaintiff claims the lack of coating caused his infection. *Id.* Defendants contend that the de-access procedure is the most likely source of the infection. Doc. 6243 at 2.

De-accessing an IPC involves disconnecting the chemotherapy infusion from the port, flushing with saline and heparin solutions, removing the access needle, inspecting the site for redness or swelling, and applying an appropriate dressing. *See* Docs. 5822 at 3, 6243 at 4. There is conflicting testimony as to who performed the de-access procedure in this case. Ms. Oglesbee recalled that Ms. Potter performed most of the procedure. Doc. 5822-4 at 4-8. Ms. Potter recalls that Ms. Oglesbee performed it. Doc. 5822-5 at 3, 7; Doc. 6243-3 at 8.

**A.    Intervening and Superseding Cause Defense.**

Defendants claim that the de-access procedure, whether performed by Ms. Potter or Ms. Oglesbee, was an intervening and superseding cause for which Defendants are not legally responsible. Doc. 6243 at 5-11; *see also* Doc. 2023-1 at 66-68, ¶¶ 15, 26.

Under Minnesota law, "an intervening cause does not relieve a defendant of liability for the consequences of its negligence if the intervening cause was a 'foreseeable consequence' of the original act." *Glay, Trustee for McGill v. R.C. of St. Cloud, Inc.*, 30 N.W.3d 639, 654 (Minn. 2026) (quoting *Rieger v. Zackoski*, 321 N.W.2d 16, 21 (Minn. 1982)).[3] "For an intervening cause to become a *superseding* intervening cause, thereby breaking the chain of causation from the original negligent act and the injury, it must satisfy four elements: (1) its harmful effects must have occurred after the original negligence; (2) it must not have been brought about by the original negligence; (3) it must actively work to bring about a result which would not otherwise have followed from the original negligence; and (4) it must not have been reasonably foreseeable by the original wrongdoer." *Id.* (quoting *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 113 (Minn. 1992)); *see also Kroeger v. Lee*, 132 N.W.2d 727, 729-30 (Minn. 1965) (discussing the four elements); *Hafner v. Iverson*, 343 N.W.2d 634, 637 (Minn. 1984) ("Generally speaking, a superseding, intervening cause is an act of plaintiff or of a third person, in no way caused by defendant's negligence, or a force of nature, occurring after defendant's negligent act or omission and operating as an independent force to produce the injury.") (citation omitted); 4 Minn. Prac., Jury Instr. Guides – Civil CIVJIG 27.20 Superseding Cause (6th ed. 2025) (an intervening event is not a superseding cause unless "the original wrongdoer could not have reasonably anticipated this event").

Plaintiff seeks summary judgment based on the fourth element, reasonable foreseeability. Doc. 5822 at 6-9. He argues that "the undisputed evidence shows that the risk of infection arising from de-accessing the port was foreseeable to and foreseen by Defendants." *Id.* at 7. Plaintiff relies on Defendants' own experts who state that "[a]ll port devices carry inherent risk . . . including infection," which is "well-known in the oncological community"; that de-access is "a common route of contamination"; that contamination occurs even when de-accessing is performed by trained medical

---

[3] The parties agree that Minnesota law governs the affirmative defenses. *See* Doc. 5822 at 5 n.4.

professionals because they "frequently make mistakes"; and that even protective measures cannot "completely eliminate the risk of port-related bloodstream infections." *Id.* at 7-8 (citing Doc. 5822 ¶¶ 10-11). Plaintiff also notes that the PowerPort's Instructions for Use warn about the risk of infections. *Id.* at 8 (citing Doc. 5822-1 ¶ 15). He argues this evidence shows that "Defendants' claimed superseding cause of port contamination through de-access is a 'common route' of contamination reasonably foreseeable to Defendants as a matter of law." *Id.*

Defendants' asserted intervening cause in this case is not the general risk of infection that accompanies IPCs – a primary focus of Plaintiff's motion – but Ms. Potter's or Ms. Oglesbee's alleged missteps in the at-home de-access procedure. Doc. 6243 at 6-8. If the foreseeability of a general risk were enough to satisfy the foreseeability element, Defendants are correct that no intervening act would ever be a superseding cause if the resulting harm fell within the general risk. Doc. 6243 at 7 n.5.

Thus, the relevant question is not whether a risk of contamination arising from de-access was generally foreseeable to Defendants, or even whether at-home de-accessing was foreseeable, but whether the alleged cause – missteps during the de-accessing by Ms. Potter or Ms. Oglesbee – was reasonably foreseeable to Defendants. As the cases cited above state, "the question of whether an *intervening act* is a superseding cause in the law often turns on the question of whether *that act was a foreseeable consequence* of the original actor's negligence." *Rieger*, 321 N.W.2d at 21 (emphasis added); *see also Glay*, 30 N.W.3d at 654 ("For an *intervening cause* to become a superseding intervening cause, thereby breaking the chain of causation from the original negligent act and the injury, . . . [*the alleged intervening cause*] must not have been reasonably foreseeable by the original wrongdoer.") (emphasis added); *Hafner*, 343 N.W.2d at 637 (explaining that a superseding cause is an "act" of a third person).

The foreseeability of the alleged intervening cause in this case is a disputed question of fact. Plaintiff asserts that Defendants knew that infections like his are known risks of IPCs and that patients and their caregivers could be involved in de-access procedures,

citing Defendants' Patient Guide.  Doc. 5822 at 8 (citing 5822-1 ¶ 17).  Defendants argue that the Patient Guide also states that "[i]f your doctor has asked you to help with these procedures, you will receive special training and information to help you accomplish this" (*id.*), and assert they were not aware Ms. Potter or Ms. Oglesbee would perform the de-access procedure without special training.  Doc. 6243 at 10-11.  Defendants present expert evidence that missteps likely occurred during the home de-accessing and that those missteps are the most likely cause of Plaintiff's infection.  *See* Doc. 6243-1 ¶¶ 11, 33, 35.  The jury must decide whether this alleged superseding cause occurred and whether it was foreseeable to Defendants.

Plaintiff's citation of *Rieger*, 321 N.W.2d 16, does not change the Court's decision.  Doc. 5822 at 7.  The defendant in *Rieger* was a racetrack owner that negligently allowed an unauthorized driver to enter and drive on its track when other people were camping on the track's infield.  The plaintiff, who was a friend of the driver, was in the infield and wanted to join the driver in his car.  The plaintiff was severely injured when he attempted to wave down the driver and instead was hit by the driver's vehicle.

The track owner argued that the conduct of the driver was a superseding cause of the plaintiff's injuries, but the trial court declined to give a superseding cause instruction.  *Rieger* affirmed the trial court's decision.  It first noted that "the question of whether an intervening act is a superseding cause in the law often turns on the question of whether that act was a foreseeable consequence of the original actor's negligence."  *Id.* at 21.  But it rejected the track owner's argument that the "specific conduct" of the driver – his failing to stop and his hitting of the plaintiff – was unforeseeable.  *Id.* ("BIR is incorrect in arguing that the *specific* conduct of the third party must be foreseeable.") (emphasis in original).  Instead, *Rieger* held, "[i]t is sufficient to establish a lack of superseding cause that the unreasonable risk of harm attributable to the third party's conduct be foreseeable."  *Id.*  Stated differently, because the track owner clearly could foresee that permitting an unauthorized driver to race on the track while people were in the infield created an unreasonable risk of harm, the owner was not entitled to a superseding cause instruction.

The fact that the owner could not foresee the specific way the plaintiff would be hurt (by the driver not stopping when the plaintiff stepped near the track and tried to wave him down) did not change that fact. This ruling comports with other Minnesota cases. *See, e.g.*, *Glay*, 30 N.W.3d at 653 ("We focus on whether R.C. could have reasonably foreseen the possibility that the three assailants would attack a patron, rather than whether R.C. could have reasonably foreseen the possibility that the three assailants would attack a patron with a sharp object, because the test is not whether the precise nature and manner of the plaintiff's injury was foreseeable, but whether the possibility of the harmful event was clear to the person of ordinary prudence.") (cleaned up); *Maanum v. Aust*, 364 N.W.2d 827, 831 (Minn. Ct. App. 1985) ("Knowledge of the precise nature of the harm that might result from Wersinger's negligence was not necessary. It was sufficient that Wersinger knew or should have known that his actions were creating a hazard which could result in the accident that occurred.").

So, for Plaintiff to defeat the superseding cause defense at the summary judgment stage in reliance on *Rieger*, Plaintiff must show as a matter of undisputed fact that the unreasonable risk of harm attributable to Ms. Potter's or Ms. Oglesbee's missteps in the de-access process was foreseeable to Defendants. As noted above, Plaintiff has not shown that this fact is undisputed. A jury must decide the foreseeability issue.

### B.     Contributory Fault and Apportionment Defense.

Defendants seek to reduce or eliminate their potential liability for damages by attributing fault to others. Doc. 6243 at 3; *see also* Doc. 2023-1 at 66-69, ¶¶ 13, 18, 28, 32. Minnesota's comparative fault statute permits apportionment of damages to any person whose "fault" contributed to the injury. Minn. Stat. §§ 604.01, 604.02. The statute defines "fault" to include acts or omissions that are "negligent or reckless" toward the injured person. Minn. Stat. § 604.01.[4] The statute also provides that the "[l]egal requirements of

---

[4] Defendants do not contend that any of the other Minnesota definitions of fault apply in this case – strict tort liability, unreasonable assumption of risk, product misuse, or unreasonable failure to avoid injury or mitigate damages. *See* Minn. Stat. § 604.01.

8

causal relation apply both to fault as the basis for liability and to contributory fault." *Id.*[5] Plaintiff argues that Defendants have no evidence that any fault should be attributed to the Mayo Clinic, Dr. Frimpong, Plaintiff, Ms. Potter, or Ms. Oglesbee.  Docs. 5822 at 9-15, 6417 at 9-11.

### 1.    Mayo Clinic and Dr. Frimpong.

Plaintiff notes that Defendants' own experts disclaim any opinion that Mayo Clinic or Dr. Frimpong were at fault for Plaintiff's infection.  Doc. 5822 at 11-12 (citing Doc. 5822-1 ¶¶ 11(a), 13-14); Doc. 6417 at 11 (citing Doc. 6417-1 at 5-6).  Defendants counter that Plaintiff's own infectious disease expert, Dr. Bernard Camins, claims that Plaintiff's IPC was most likely contaminated during the implant procedure based on the timing of the infection.  Doc. 6243 at 14 (citing Doc. 6243-1 ¶ 39).  But as Defendants concede, "Dr. Camins identifies no specific misstep by Dr. Frimpong or the Mayo Clinic." *Id.* at 14-15.  Defendants thus lack any evidence of fault — "negligent or reckless" conduct – on the part of Dr. Frimpong or Mayo Clinic.  Minn. Stat. § 604.01.  The Court will grant Plaintiff's motion in this regard.

Defendants contend that Plaintiff's motion is premature because apportionment of fault must be addressed after the close of evidence at trial.  Doc. 6243 at 11-12.  But this argument is contrary to the Supreme Court's *Celotex* decision, which holds that a party with the burden of proof can be put to its proof at the summary judgment stage.  If that party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment may be granted.  *Celotex*, 477 U.S. at 322.  Defendants' Minnesota cases are not to the contrary.  *See Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346, 350 (Minn. 1981) (issue must be submitted to the jury unless, given the evidence, the factfinder could come to only one conclusion); *Riley v. Lake*, 203 N.W.2d 331, 340 (Minn. 1972) (same).  Defendants cite cases from other courts, but this Court will follow *Celotex*.

---

[5] Defendants do not dispute Plaintiff's assertion that Minnesota law requires expert testimony to establish medical causation.  Docs. 5822 at 11, 6243 at 11-15, 6417 at 11-12.

### 2. Plaintiff.

Plaintiff argues that Defendants have no evidence he was at fault for the infection. Doc. 5822 at 12-13. Defendants state only that they do not "currently intend to apportion fault to Plaintiff." Doc. 6243 at 2 n.1. Because Defendants do not present any evidence showing Plaintiff was at fault, the Court will grant Plaintiff's motion on this issue. *See Celotex*, 477 U.S. at 322; *N. Petrochemical Co. v. Thorsen & Thorshov, Inc.*, 211 N.W.2d 159, 167-68 (Minn. 1973) (a negligent party bears the burden of proving others were also at fault); *Est. of Boggess v. U.S. Bank N.A.*, No. 24-MC-43 (DWF/DJF), 2024 WL 4647989, at *4 (D. Minn. Nov. 1, 2024) ("Defendants have the burden of proof as to their own defenses.").

### 3. Ms. Potter and Ms. Oglesbee.

Plaintiff argues that Defendants cannot show that either Ms. Potter or Ms. Oglesbee were at fault for the infection. Doc. 5822 at 13-15. Defendants disagree, citing evidence that both had no training or experience with IPCs and Ms. Potter undertook a de-access procedure she was not comfortable performing. Doc. 6243 at 13-14 (citing Doc. 6243-1 ¶¶ 24, 28, 30-31). Defendants also cite evidence showing that several missteps occurred during the procedure, such as failing to wipe down the table surface before the de-access, wiping the hub rather than scrubbing it for 15-20 seconds, wiping the tips of the syringe and line, and failing to use a pulsatile flushing technique. *Id.* (citing Doc. 6243-1 ¶ 33). Defendants rely on the report and testimony of their oncologist nurse expert, Keilye Pampillonia, who identified the missteps that were contrary to "best practices." *Id.*

Plaintiff argues that this testimony is not sufficient to show negligence, but he cites no case holding that such alleged missteps are not sufficient to constitute negligence by non-medical-professionals like Ms. Potter and Ms. Oglesbee. The question at trial will be whether they failed "to exercise such care as persons of ordinary prudence usually exercise under such circumstances." *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011) (citation omitted). Defendants' evidence of alleged missteps creates a jury question on whether these women failed to exercise ordinary prudence.

Plaintiff notes that Defendants' infectious disease expert, Dr. Ban Allos, attributes Plaintiff's infection to "inadvertent" contamination.  Docs. 6417-1 ¶ 11(a), 5822-8 at 10.  She testified that no one is to blame for the infection, and specifically not Ms. Potter or Ms. Oglesbee.  Doc. 6417-1 at 4-6.  And she made clear "[t]here is no fault.  There was no negligence.  There was . . . none of that." *Id.* at 6.  But Pampillonia opined that the "de-accessing was performed improperly." Doc. 5784-1 at 5.  If the jury accepts Pampillonia's opinion rather than Allos's testimony, it could conclude that these women were negligent.  Although the Court does not view this as likely in light of Allos's qualifications, the Court may not make credibility determinations at the summary judgment stage.  Instead, the Court must view the evidence in the light most favorable to Defendants and draw all inferences in their favor.  Doing so, the Court finds a question of fact on the alleged fault of Ms. Potter and Ms. Oglesbee and will deny summary judgement with respect to them.

**IT IS ORDERED** that Plaintiff's motion for partial summary judgment (Doc. 5822) is **granted in part** and **denied in part**.  The motion is granted with respect to the contributory fault and apportionment defense with respect to Mayo Clinic, Dr. Frimpong, and Plaintiff, and denied with respect to Ms. Potter and Ms. Oglesbee.  The motion is denied with respect to the intervening and superseding cause defense, and denied as moot on the statute of limitations and repose defenses.

Dated this 3rd day of March, 2026.

_____
David G. Campbell
Senior United States District Judge