**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| | **ORDER** |
| | **Hybrid Witnesses Kelly Christian, John Evans, Todd McFarland, and Kelly Powers** |

This multidistrict litigation ("MDL") involves thousands of personal injury cases related to implanted port catheters ("IPCs" or "ports") designed, manufactured, and marketed by Defendants Becton Dickenson and Company, C. R. Bard, Inc., Bard Access Systems, Inc., and Bard Peripheral Vascular, Inc. (collectively, "Defendants" or "Bard"). Plaintiffs have filed a motion to exclude opinions of Kelly Christian, John Evans, Todd McFarland, and Kelly Powers.  Docs. 5193, 5194.  The motion is fully briefed and no party requests oral argument.  *See* Docs. 5766, 6029.  The Court will grant the motion in part.

## I.    Background.

An IPC is a medical device surgically implanted under the skin to provide repeated access to a patient's vascular system without the need for multiple needlesticks into peripheral veins.  IPCs are used to deliver chemotherapy and immunotherapy medication, intravenous fluids, blood transfusions, and parenteral nutrition.  IPCs can remain in place for weeks, months, or even years until treatment is completed.

IPCs consist of a port and a catheter.  The port is a small reservoir disc with a self-sealing silicone center where a needle can be inserted to deliver medication.  The port

typically is implanted beneath the chest skin and below the collarbone. The port is attached to a catheter, which is a thin flexible tube for delivery of the medication to a vein. The catheter is tunneled under the skin to an insertion point in a central vein. IPCs typically are implanted by an interventional radiologist or a vascular surgeon. A nurse or other medical professional then accesses the IPC to inject the medication, which flows from the port to the catheter and into the vein.

This MDL involves multiple versions of Bard IPCs, each of which received premarket clearance from the Food and Drug Administration ("FDA"). Each Plaintiff in this MDL had a Bard IPC implanted in his or her body, and claims the IPC was defective and caused serious injury. The MDL Plaintiffs allege, among other things, that Bard IPCs are defective because Bard failed to coat the catheters with antimicrobial or antithrombotic material. Plaintiffs assert a host of state law claims, including design and manufacturing defects, failure to warn, breach of warranty, misrepresentation, concealment, and consumer fraud and unfair trade practices. *See* Docs. 23, 1889.

Bard disputes Plaintiffs' allegations and contends its IPCs are safe and effective and that the medical community is aware of risks associated with IPCs. Bard further contends that various factors impact the performance and wear of IPCs, including where the catheter is inserted and how well the device is maintained by medical professionals and the patient. *See* Docs. 23, 2023-1.

The FDA applies different levels of scrutiny to medical devices before approving or clearing them for market. The most rigorous level of scrutiny is known as "premarket approval," often referred to as the "PMA" process. 21 U.S.C. § 360e(a). To comply, a manufacturer must file an application that provides a broad range of detailed information to the FDA to show the device is safe and effective. 21 U.S.C. § 360e(c). Other medical devices can be cleared through the less rigorous section "510(k)" review. A manufacturer can satisfy this review and be exempt from the PMA process by providing premarket notice to the FDA that its device is substantially equivalent to another device that is already on the market. 21 U.S.C. § 360c(f)(1)(A).

Bard sought premarket clearance through 510(k) review for its Avertex IPC with antimicrobial coating. Bard filed a 510(k) submission for the Avertex IPC in May 2010 and received a "Not Substantially Equivalent" ("NSE") determination from the FDA in April 2011. Bard did not seek further 510(k) review for the Avertex IPC. *See* Docs. 5193 at 4-7, 5766 at 3-6.

Bard filed a 510(k) pre-submission for IPCs with dextran flycoconjugate polymer ("DGP") antithrombotic coating in September 2013 and received comments from the FDA in December 2013 and October 2014. Bard experienced challenges developing DGP coating, which hindered its ability to address the FDA's comments. Bard decided in late 2014 that it would not continue to pursue DGP coating. *See id.*

Under Federal Rule of Civil Procedure 26(a)(2)(C), Defendants have identified four former Bard employees – Kelly Christian, John Evans, Todd McFarland, and Kelly Powers – as non-retained expert witnesses and have disclosed summaries of the facts and opinions to which they are expected to testify. *See* Doc. 5193-1 at 8-10, 16-18, 21-37. These individuals were part of Bard's research and development ("R&D") team and have knowledge about Bard's 510(k) submissions and efforts to develop catheters with antimicrobial and antithrombotic coatings. *See* Doc. 5193 at 4-5. Bard asserts that they can testify as percipient fact witnesses and as non-retained experts about Bard's evaluation of the coating technologies and the likelihood of FDA clearance. Doc. 5766 at 4-6. Plaintiffs argue that they should be limited to offering opinions formed during their employment with Bard based on percipient knowledge and observations. Doc. 5193 at 2-3, 9-12. Plaintiffs also argue that some of their opinions are inadmissible under Federal Rule of Evidence 702. *Id.* at 3, 12-15.

## II.    Legal Standard.

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the proponent of the expert's testimony "demonstrates to the court that it is more likely than not that" (a) "the expert's scientific, technical, or other specialized knowledge will help the

trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702(a)-(d).  The proponent must show by a preponderance of the evidence that the testimony satisfies each of these requirements.  Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("[T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025) ("Consistent with the 2023 amendment, our precedent establishes that Rule 702 requires a proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence.").

The Court acts as a gatekeeper to ensure that expert testimony satisfies Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  The Court's task is not to decide whether the expert is right or wrong, but to ensure the proposed opinions satisfy Rule 702.  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 969-70 (9th Cir. 2013); *Engilis*, 151 F.4th at 1050.  If the proponent does not meet its Rule 702 burden, the expert testimony is not admissible.  *See Davis v. McKesson Corp.*, No. CV-18-1157-PHX-DGC, 2019 WL 3532179, at *3 n.2 (D. Ariz. Aug. 2, 2019) ("[T]he Court may admit expert opinions only if it can determine, under Rule 104(a), that Plaintiffs have shown each of the Rule 702 requirements to be satisfied by a preponderance of the evidence.").

**III.    Discussion.**

      **A.    Proper Scope of the Hybrid Witnesses' Testimony and Opinions.**

Non-retained experts for whom opinion summaries are provided under subsection (C) of Rule 26(a)(2) are sometimes referred to as "hybrid witnesses" because they often provide both fact testimony as percipient witnesses and expert opinions based on specialized knowledge.  *Alsadi v. Intel Corp.*, No. CV-16-03738-PHX-DGC, 2020 WL

4035169, at *18 (D. Ariz. July 17, 2020); *see Jodie v. Mountain W. Farm Bur. Mut. Ins. Co.*, No. CV 20-30-BLG-SPW, 2023 WL 2584317, at *2 (D. Mont. Mar. 21, 2023) ("Along the spectrum of the two kinds of expert witnesses is a hybrid fact/expert witness – 'that is, someone whose testimony turns in part on scientific, technical, or other specialized knowledge, but who has a relationship to the subject matter of the action independent of the litigation itself.'" (citation modified)). Examples include current or former "employees of a party who do not regularly provide expert testimony." Fed. R. Civ. P. 26(a)(2)(C), advisory committee note to 2010 amendment.

The relevant distinction arose from the history of Rule 26. In 1993, the rule was amended to require, for the first time, that expert witnesses provide detailed reports of the opinions they would offer at trial. The new requirement, found in subsection (B) of Rule 26(a)(2), applied only to expert witnesses "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Party employees who did not have such duties were not covered by the report requirement even if they provided expert testimony under Rule 702. Rule 26 was amended in 2010 to add a second kind of expert disclosure. This new requirement provided that "if the witness is not required to provide a written report" under subsection (B) – in other words, if the witness was not retained or specially employed and was not an employee whose duties regularly involve giving expert testimony – then only a less detailed summary of the expert's opinions was required by new subsection (C) of the rule. *See* Fed. R. Civ. P. 26(a)(2)(C).

Because this new summary requirement applies "if the witness is not required to provide a written report" under subsection (B), courts must decide when a witness is "retained or specially employed" within the meaning of subsection (B) and when a witness is not. The Ninth Circuit addressed this issue in *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011), holding that a treating physician (a category of witness historically not viewed as coming within subsection (B)) is exempt from the report requirement only to the extent his or her opinions "were formed during the course of

treatment." *Id.* at 826. If the opinions instead were formed after the treatment and in preparation for the litigation, the Ninth Circuit concluded that the witness reasonably could be viewed as "retained or specifically employed" for the litigation and therefore subject to subsection (B) report requirement. *Id.*

Courts have applied this distinction to employee and former employee witnesses – another category that historically has not been viewed as coming within subsection (B). *See, e.g.*, *Cooc v. Bureau Veritas N. Am. Inc.*, No. 2:24-CV-0906 TLN SCR, 2025 WL 2420000, at *2 (E.D. Cal. Aug. 21, 2025) ("'The dispositive question' in evaluating whether an expert properly falls within Rule 26(a)(2)(C), 'is whether the witness's opinion was developed either for purposes of litigation or as part of the witness's duties as the party's employee.'" (citation omitted)); *Meredith v. Int'l Marine Underwriters*, No. CIV.A. GLR-10-837, 2012 WL 3025139, at *5 (D. Md. July 20, 2012) ("[T]o the extent that a witness' opinion is based on facts learned or observations made 'in the normal course of duty,' the witness . . . need not submit a report." (citation omitted)). Thus, former employees who will testify only to opinions formed during the course of their employment are not required to provide reports under subsection (B), and the lawyers presenting them can provide a summary of their opinions under subsection (C). But for opinions not formed during the course of their employment, such witnesses are viewed as falling within the scope of subsection (B) and can state opinions only if they were fully disclosed in a report under subsection (B). *See Alsadi*, 2020 WL 4035169, at *14.

The witnesses at issue in this motion – Christian, Evans, McFarland, and Powers – may therefore present opinions under Rule 702 that were formed during the course of their employment with Defendants without having prepared detailed reports under subsection (B) of Rule 26(a)(2). Plaintiffs do not dispute such opinions of these witnesses were properly disclosed under subsection (C). And these witnesses may provide factual testimony about their work for Defendants. Thus, for example, to the extent these witnesses were involved with the FDA clearance process and formed opinions during that

work, those opinions may be stated at trial, assuming Rule 702 and other evidence rules are satisfied.

Defendants assert that they have "no plans to elicit new opinions based on information reviewed in anticipation of trial from these witnesses[.]" Doc. 5766 at 7. But it appears Defendants do intend to have at least some of the witnesses express opinions formed outside of their work for Bard. Doc. 6029 at 2-3. Defendants state, for example, that each witness's testimony will be based on his experiences at Bard *and* "in the medical device industry generally." Doc. 5766 at 2; *see id.* at 7 (same). With respect to McFarland, Defendants state his opinions are based on information obtained during his tenure at Bard *and* in "his current role overseeing the design and potential regulatory approval of a coating technology [at a different company]." *Id.* at 11; *see id.* at 15 (McFarland may testify about the "current restrictiveness of the FDA's standards" because he "did not leave the industry in 2018 and is currently developing a coating for eventual 510(k) clearance in his present role").

Applying the distinction recognized by the Ninth Circuit in *Goodman*, the Court concludes that Defendants' witnesses cannot express opinions formed outside of their employment at Bard without disclosing them in a report under subsection (B) of Rule 26(a)(2). Because the opinions were not so disclosed, they cannot be stated at trial. *See* Fed. R. Civ. P. 37(c)(1);[1] *see also Fed. Trade Comm'n v. Amazon.com, Inc.*, No. 2:23-CV-00932-JHC, 2025 WL 2460658, at *4 (W.D. Wash. Aug. 26, 2025) (explaining that as hybrid witnesses, the FTC's former employees could not offer opinions beyond their "personal knowledge and observations they gained on the job"); *Seoul Semiconductor Co. v. Feit Elec. Co.*, No. 2:22-CV-5097-AB-SHK, 2025 WL 1145962, at *3 (C.D. Cal. Mar. 14, 2025) ("percipient experts . . . may not offer 'a current opinion for the purposes of litigation'" (citation omitted)); *KISS Nail Prods., Inc. v. Ardell Int'l, Inc.*, No. 2:25-CV-02793-SVW-MBK, 2026 WL 180031, at *2 (C.D. Cal. Jan. 22, 2026) ("Hybrid fact/expert

---

[1] The Court does not find a failure to disclose expert opinions substantially justified or harmless under Rule 37(c)(1). In this expert-intensive MDL, full pretrial disclosure of expert opinions is critical to fair and efficient bellwether trials.

witnesses must testify from the personal knowledge they gained on the job and the district court certainly may preclude these witnesses from testifying beyond the scope of facts they learned and opinions they formed during the course of their project duties." (citation modified)).  The Court specifically called the parties' attention to this distinction in an early case management order.  *See* Doc. 114, ¶ II.E n.1.  The Court will grant Plaintiffs' motion in this regard.

But the Court rejects Plaintiffs' suggestion that Defendants are obligated at this pretrial stage to present affirmative evidence that each expert's opinion was formed during his or her employment by Defendants.  Doc. 6029 at 6.  This is not a Rule 702 challenge, but a challenge under Rule 26, and Plaintiff's cite no authority for the proposition that Defendants must make an affirmative showing in response to Plaintiff's motion.  Defendants may lay this foundation at trial.

Nor does the Court accept Plaintiffs' argument that certain opinions must be limited to the time when Bard made its FDA submissions – specifically, to April 2011 when the FDA issued its NSE determination for the Avertex IPC or to 2016 when the then-current FDA director retired.  Doc. 5193 at 10-11.  These witnesses were not required to provide subsection (B) reports for opinions formed during the course of their employment by Defendants, and Plaintiffs do not claim their subsection (C) summaries were deficient. Thus, there is no basis to limit their opinions under Rule 37(c)(1).  If opinions formed during their employment are relevant and admissible, the witnesses can state them regardless of when during their employment the opinions were formed.

### B.    FDA's Intent and State of Mind.

Plaintiffs identify certain opinions they contend are impermissible testimony about the FDA's intent and state of mind.  Doc. 5193 at 5-7, 12-15.  Defendants state that, consistent with their subsection (C) disclosures, the witnesses may testify about Bard's and their own interpretations of the FDA's positions regarding antimicrobial and antithrombotic coatings, Bard's and their own beliefs regarding the likelihood the FDA would clear a device with such coatings, and the appropriateness of Bard's decision to

forgo further attempts to obtain FDA clearance of IPCs with such coatings.  Doc. 5766 at 2.  The Court agrees.

Defendants make clear that the hybrid witnesses will offer no opinion on the FDA's intent or state of mind.  *Id.*  The Court will hold Defendants to their word.  *See In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2017 WL 6523833, at *9 (D. Ariz. Dec. 21, 2017) ("Inferences about the intent or motive of . . . others lie outside the bounds of expert testimony." (citation omitted)); *In re Traylsol Prods. Liab. Litig.*, No. 09-MD-01928, 2010 WL 4102247, at *6 (S.D. Fla. Sept. 10, 2010) (excluding opinions about "the FDA's motive, knowledge, intent, and state of mind" because they fell outside "the scope of [the witness's] knowledge and expertise and are classic jury questions").  While "an expert may not opine on the state of mind of the FDA," they can "testify about their interpretation of the meaning of documents in the regulatory history."  *Holley v. Gilead Scis., Inc.*, No. 18-CV-06972-JST, 2023 WL 2469632, at *7 (N.D. Cal. Feb. 27, 2023).  If a proper foundation is laid, a hybrid witness can testify that he or Bard believed "it was very unlikely that the FDA would clear the Avertex IPC 510(k) after issuing [an NSE] determination."  Doc. 5193-1 at 9.

### C.     Plaintiffs' Rule 702 Arguments.

Plaintiffs argue that these witnesses are not qualified to offer FDA-related opinions, that their opinions are not supported by facts or data, and that their opinions are not based on a reliable methodology.  Doc. 5193 at 13-15.

#### 1.     Qualifications.

Plaintiffs argue that the witnesses are not qualified to offer "FDA-related opinions" because they are experts in R&D, not regulatory affairs.  Doc. 5193 at 13.  But Plaintiffs do not identify the opinions they seek to exclude, nor do they address this argument in their reply brief.  *See* Doc. 6029.  Defendants have shown, by a preponderance of the evidence, that the hybrid witnesses had extensive experience with Bard's IPCs and coating technologies, Bard's 510(k) submissions to the FDA, and communications between Bard and the FDA.  Doc. 5766 at 8-13.  These experiences include the Avertex and DGP coatings

and the FDA's Avertex NSE determination. With appropriate foundation at trial, these experts will be permitted to provide FDA-related opinions formed during their employment at Bard.

### 2.    Facts and Data.

Plaintiffs challenge two opinions on the ground that they are not supported by facts or data: (1) Evans' opinion that "it was very unlikely that the FDA would clear the Avertex 510(k)"; and (2) McFarland's opinion that "the FDA's evolving stance on nanoparticles and increasingly stringent antimicrobial requirements rendered certain coating technologies infeasible and/or impractical[.]" Doc. 5193 at 14-15 (citing Doc. 5193-1 at 9, 17). Regarding the challenged opinion of Evans, Defendants state that the opinion is based on experience and information he obtained during his time at Bard. Doc. 5766 at 9. With respect to McFarland's opinion, Defendants state that it is based on information obtained during his tenure at Bard and his experience as the director of R&D for catheter coating projects, during which time Bard continued to evaluate potential antimicrobial devices. *Id.* at 11. The Court finds this experience sufficient to support their opinions. *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) ("An expert's specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion.").

### 3.    Reliable Methodology.

Plaintiffs assert that the hybrid witnesses' opinions about what the FDA would have done are unreliable because they are based on "little more than their own feelings." Doc. 5193 at 15 (citing Doc. 5193-5 at 9 ("It felt like the FDA was misconstruing or not . . . understanding aspects of our testing.")). Plaintiffs argue that such opinions should be excluded because the witnesses have not identified the "principles and methods" they used to reach their conclusions. *Id.*

"Although some expert testimony 'rests upon scientific foundations,' in other cases 'the relevant reliability concerns may focus upon personal knowledge or experience.'" *McBroom v. Ethicon, Inc.*, No. CV-20-02127-PHX-DGC, 2021 WL 2709292, at *5 (D.

10

Ariz. July 1, 2021) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)); *see also In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 495188, at *4 (D. Ariz. Jan. 22, 2018) ("[E]xpert testimony 'is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.'" (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010))).

Defendants have shown, by a preponderance of the evidence, that the hybrid witnesses' opinions are reliably based on knowledge and experience obtained during their time at Bard. Doc. 5766 at 3, 8-13. They will not be excluded now, but proper foundation for the opinions will still be required at trial.

**IT IS ORDERED:** Plaintiffs' motion to exclude opinions of Kelly Christian, John Evans, Todd McFarland, and Kelly Powers (Docs. 5193, 5194) is **granted in part** and **denied in part**. These witnesses cannot (1) offer opinions formed before or after their employment at Bard, or (2) opine on the FDA's intent or state of mind. The motion is otherwise **denied**.

Dated this 9th day of March, 2026.

David G. Campbell
Senior United States District Judge

11