Edward J. Fanning (Admitted *Pro Hac Vice*)
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Phone: (973) 639-8486
Fax: (973) 797-3868
Email: efanning@mccarter.com

Richard B. North, Jr. (Admitted *Pro Hac Vice*)
NELSON MULLINS RILEY &
SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Ste. 1700
Atlanta, GA  30363
Phone: (404) 322-6000
Fax: (404) 322-6050
Email: richard.north@nelsonmullins.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard Implanted Port Catheter Products Liability Litigation<br><br><br>THIS DOCUMENT RELATES TO:<br><br>*Robert Michael Cook*<br>*Civil Case No. 2:23-cv-1975-DGC* | MDL No. 3081<br><br>**DEFENDANTS' MOTION TO BIFURCATE TRIAL AND MEMORANDUM OF LAW IN SUPPORT** |

## MOTION

Pursuant to Fed. R. Civ. P. 42(b), Defendants Becton, Dickinson and Co., C. R. Bard, Inc., Bard Access Systems, Inc., and Bard Peripheral Vascular, Inc. (collectively "Bard") move to bifurcate trial into separate phases. In the first phase, the jury should only determine liability and any compensatory damages. In a second phase, if necessary, the jury should determine whether punitive damages should be awarded and, if so, in what amount. This structure follows Minnesota's punitive damages statute (Minn. Stat. § 549.20, subd. 4), ensures that trial is conducted as it would be in Minnesota, facilitates the orderly presentation of evidence, avoids undue prejudice to Bard, and promotes judicial economy under Rule 42(b).

## MEMORANDUM OF LAW

### I.    Introduction

This products liability action arises from Plaintiff Robert Cook's use of a Bard PowerPort implantable port catheter ("IPC")[1] and is before the Court under diversity jurisdiction. Minnesota substantive law governs. Plaintiff seeks punitive damages under Minn. Stat. § 549.20, which requires, upon request, a separate proceeding for punitive damages and prohibits "evidence of the financial condition of the defendant" in the initial proceeding. Minn. Stat. § 549.20, subd. 4. Courts differ on whether § 549.20, subd. 4, or Federal Rule of Civil Procedure 42(b) governs bifurcation in federal diversity cases. But the Court need not resolve that question. Bifurcation following the procedures set out in § 549.20, subd. 4 is proper under Rule 42(b), which grants courts broad discretion to order bifurcation for "convenience, to avoid prejudice, or to expedite and economize" the proceedings. This Court repeatedly exercised its Rule 42(b) discretion to bifurcate punitive damages issues in the *Bard IVC Filter* MDL to reduce prejudice and promote trial efficiency.[2] It should do so here in the manner contemplated by § 549.20, subd. 4:

---

[1]    Bard incorporates the facts from its summary judgment memorandum. (Doc. 5832.)

[2]    Bifurcation in the *Booker* and *Jones* trials in the *Bard IVC Filter* MDL under Rule 42(b) following the procedures in Georgia's punitive damages statute, O.C.G.A. § 51-

- 1 -

the first phase should address liability and compensatory damages only, and the second phase, if needed, should address whether punitive damages should be awarded and, if so, in what amount.

## II.     Argument and Citation of Authority

### A.   Minn. Stat. § 549.20, subd. 4, mandates a second phase in which the jury determines both whether punitive damages should be awarded and, if so, in what amount.

Minn. Stat. § 549.20 sets forth the substantive standard for punitive damages, and subdivision 4 expressly requires punitive damages be decided in **separate, bifurcated proceedings**. Minn. Stat. § 549.20, subd. 4; *see Markegard v. Von Ruden*, No. A05-616, 2006 WL 163508, at *4 (Minn. Ct. App. Jan. 24, 2006) ("The plain language of [Minn. Stat. § 549.20] mandates a second proceeding . . . .") (unpublished); *Krutchen v. Zayo Bandwidth Ne., LLC*, 591 F. Supp. 2d 1002, 1022 (D. Minn. 2008) ("[Minn. Stat. § 549.20, subd. 4] provides that a trier of fact must determine whether compensatory damages are warranted and then consider whether punitive damages should be awarded in a separate proceeding."). It requires that the jury first determine whether compensatory damages are to be awarded. Only "[a]fter a determination has been made" does the jury, "in a separate proceeding, determine **whether** punitive damages will be awarded and **in what amount**." Minn. Stat. § 549.20, subd. 4 (emphasis added). Thus, under the statute's plain language,[3] the first phase does not include any determination of whether punitive damages are warranted; that question, and the amount of punitive damages, belongs in the second phase. The statute prohibits evidence of a defendant's "financial condition" in the first phase, along with "other evidence relevant only to punitive damages."

---

12-5.1(d), was uncontested. Bifurcation in *Hyde* was contested; the Court exercised its Rule 42(b) discretion and bifurcated trial. *In re Bard IVC Filters Prods. Liab. Litig.*, No. CV-16-00893-PHX-DGC, 2018 WL 4184950, at *3 (D. Ariz. Aug. 31, 2018).

[3]   Statutory language is given its plain and ordinary meaning. Minn. Stat. § 645.08(1).

**B.   Rule 42(b) grants this Court power to bifurcate.**

Federal district courts sitting in diversity jurisdiction have differed on whether § 549.20, subd. 4's mandatory bifurcation requirement applies. *Compare In re Levaquin Prods. Liab. Litig.*, No. CIV 08-5743-JRT, 2010 WL 4867588, at *3 (D. Minn. Nov. 23, 2010) (applying § 549.20, subd. 4, in a diversity action to bifurcate trial and exclude evidence of defendants' "net worth, size, and financial condition" from the first phase), *with Kelley v. BMO Harris Bank N.A.*, No. 19-CV-1756-WMW, 2022 WL 4547022, at *23 (D. Minn. Sept. 29, 2022) (holding that Rule 42(b) "addresses bifurcating issues and ordering separate trials," not § 549.20, subd. 4).

Regardless of whether § 549.20, subd. 4 applies, Rule 42(b) allows federal courts to bifurcate issues "[f]or convenience, to avoid prejudice, or to expedite and economize" proceedings. Fed. R. Civ. P. 42(b); *see Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002); *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001). The power to bifurcate includes "the authority to separate trials into liability and damage phases." *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) (*citing De Anda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993)). Because the existence of liability must be resolved before damages are considered, "separation of issues of liability from those relating to damages is an obvious use" for Rule 42(b). 9A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 2390 (3d ed. 2025); *see M2 Software, Inc., v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005) ("The district court had broad discretion to try the liability phase first and did not abuse its discretion in bifurcating the trial."); *see, e.g.*, *Phanpradith v. Griego*, 850 F. App'x 497, 500 (9th Cir. 2021) (affirming district court's order bifurcating trial because the plaintiff "attempted to introduce evidence about a [defendant's] income before he had established liability for punitive damages").

**C.   Bifurcation of the *Cook* trial is warranted.**

The Ninth Circuit observes that bifurcation under Rule 42(b) most often serves "to exclude evidence of a defendant's wealth or net worth" from the liability and

compensatory damages phase. *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 152 (9th Cir. 1992). Although net worth evidence may be relevant to evaluating punitive damages, it risks unfairly influencing the jury's determination of liability and compensatory damages. The Supreme Court has warned that admitting "evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003). Limiting instructions do not cure that risk. *See Estate of Diaz*, 840 F.3d at 603–04 (reversing denial of bifurcation request and observing that if a limiting instructed cured all prejudice, "there would be no need to ever bifurcate to avoid prejudice").

Given the substantial risk of undue prejudice, this Court invoked its Rule 42(b) discretion in the *Bard IVC Filter* MDL and bifurcated all the bellwether trials into compensatory and punitive phases—as courts in this Circuit routinely do. *In re Bard IVC Filters*, 2018 WL 4184950, at *2 (ordering a bifurcated trial and collecting cases showing that "courts in this Circuit regularly bifurcate trials under Rule 42(b)"). The sequencing for bifurcation in this case differs from the sequencing used in the *Bard IVC Filter* MDL, where bifurcation was based on Georgia's procedure. Under Georgia law, whether punitive damages are warranted is determined in the first phase; only the amount is decided in the second. *See* O.C.G.A. § 51-12-5.1. Minnesota's statute is different. It contemplates a first phase limited to liability and compensatory damages, followed by a second phase in which the jury determines whether punitive damages should be awarded at all and, if so, in what amount. Bard seeks bifurcation in that manner here.

Evidence potentially relevant only to punitive damages—such as Bard's net worth, size, and financial condition—carries the same risk of undue prejudice recognized by the Supreme Court, this Court in the *Bard IVC Filter* MDL, and many others. That already significant risk will become even more acute if Plaintiff were to succeed in putting Bard's net worth before the jury. Limiting instructions do not cure that risk; only bifurcation can. Bifurcation excludes unduly prejudicial financial evidence during the liability and compensatory phase while permitting its proper introduction, if necessary, in a separate

punitive phase. It strikes the appropriate balance between shielding the jury from irrelevant and unduly prejudicial financial evidence and allowing punitive damages proof if warranted. Indeed, bifurcation in the manner Bard requests here is the "preferred method" of accommodating these competing interests at trial. *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 374 (2d Cir. 1988) ("Since it often would be prejudicial to a defendant to attempt to litigate its financial condition during the trial on the issues of liability and compensatory damages, the preferred method of accommodating the various interests is to delay trial as to the amount of an award of punitive damages until the usual issues of liability and compensatory damages have been tried, along with the matter of whether the defendant's conduct warrants any award of punitive damages at all.") (emphasis added).

Even apart from financial evidence, there is an additional and independent reason to reserve the threshold punitive damages question for the second phase. If the jury were asked in phase one to decide whether punitive damages are warranted, Plaintiff would have every incentive to frame the entire first phase around punitive themes and to make inflammatory arguments aimed at moral blame and punishment rather than liability and compensatory damages. *See Jensen v. Walsh*, 623 N.W.2d 247, 251 (Minn. 2001) (stating that punitive damages are intended "to punish the perpetrator, to deter repeat behavior and to deter others from engaging in similar behavior"). Reserving the punitive damages question for phase two keeps the first phase focused on the elements of Plaintiff's underlying claims—namely, whether the IPC at issue was defective and unreasonably dangerous as claimed—and any compensatory damages, reduces the risk that punitive themes will distort the jury's consideration of those threshold issues, and better serves the orderly presentation of evidence under Rule 42(b).

Plaintiff may argue that bifurcation is not appropriate because he asserts fraud claims. But that does not justify submitting the punitive damages question in phase one. Evidence of Bard's net worth, size, and financial condition is irrelevant to any fraud element. *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986); CIVJIG

57.10; *see, e.g.*, *In re Levaquin Prods. Liab. Litig.*, 2010 WL 4867588, at *3 (D. Minn. Nov. 23, 2010) (excluding "evidence of defendants' financial condition" from the first phase of a bifurcated trial as irrelevant to the plaintiff's consumer fraud claims). Even if there were some tangential relevance to Bard's financial condition to any fraud claim, and there is not, any such relevance is substantially outweighed by the risk of unfair prejudice and provides no reason to ask the jury in phase one whether punitive damages should be awarded. To the contrary, preserving that question for phase two helps ensure that the first phase remains focused on the elements of the underlying claims and any compensatory damages, not on punishment-oriented themes that carry a substantial risk of unfair prejudice.

Therefore, this trial should be bifurcated under Rule 42(b) to avoid undue prejudice to Bard, ensure the orderly presentation of evidence, and promote judicial economy.

## III.  Conclusion

For these reasons, this Court should grant Bard's motion under Rule 42(b) and bifurcate trial in accordance with § 549.20, subd. 4, so that in the first phase, the jury will determine liability and any compensatory damages; and in the second, if needed, it will determine whether and in what amount punitive damages will be awarded.

DATED this 18th day of March, 2026.

NELSON MULLINS RILEY & SCARBOROUGH, LLP

By: */s/ Richard B. North, Jr.*
Richard B. North, Jr.
(Admitted *Pro Hac Vice*)
Atlantic Station
201 17th St. NW, Ste. 1700
Atlanta, GA 30363
Phone: (404) 322-6155
Fax: (404) 322-6050
richard.north@nelsonmullins.com

MCCARTER & ENGLISH, LLP

By: */s/ Edward J. Fanning, Jr.*
Edward J. Fanning, Jr.
(Admitted *Pro Hac Vice*)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Phone: (973) 639-7927
Fax: (973) 297-3868
efanning@mccarter.com

*Attorneys for Defendants*