**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| | **ORDER** |
| | **Ravi Srinivasa, M.D.** |

This multidistrict litigation ("MDL") involves thousands of personal injury cases related to implanted port catheters ("IPCs" or "ports") designed, manufactured, and marketed by Defendants Becton Dickenson and Company, C. R. Bard, Inc., Bard Access Systems, Inc., and Bard Peripheral Vascular, Inc. (collectively, "Defendants" or "Bard"). Plaintiffs have filed a motion to exclude the expert opinions of Ravi Srinivasa, M.D. Doc. 4822.  The motion is fully briefed and no party requests oral argument.  *See* Docs. 4822, 5330, 5572.  The Court will grant the motion in part.

**I.      Background.**

An IPC is a medical device surgically implanted under the skin to provide repeated access to a patient's vascular system without the need for multiple needlesticks into peripheral veins.  IPCs are used to deliver chemotherapy and immunotherapy medication, intravenous fluids, blood transfusions, and parenteral nutrition.  IPCs can remain in place for weeks, months, or even years until treatment is completed.

IPCs consist of a port and a catheter.  The port is a small reservoir disc with a self-sealing silicone center where a needle can be inserted to deliver medication.  The port typically is implanted beneath the chest skin and below the collarbone.  Port bodies vary in shape and size and are made of plastic, silicone, or titanium.  The port is attached to a catheter, which is a thin flexible tube for delivery of the medication to a vein.  The catheter is tunneled under the skin to an insertion point in a central vein.  Catheters vary in width and are made of silicone or polyurethane.  IPCs typically are implanted by an interventional radiologist or a vascular surgeon.  A nurse or other medical professional then accesses the IPC to inject the medication, which flows from the port to the catheter and into the vein.

This MDL involves multiple versions of Bard IPCs, each of which received premarket clearance from the Food and Drug Administration ("FDA").  Bard IPCs contain barium sulfate, a radiopaque substance that can be seen on diagnostic imaging such as X-ray, CT, and MRI scans.  Several Bard IPCs are manufactured using polyoxymethylene ("POM"), an acetal thermoplastic polymer, in the construction of the port.  Many Bard IPCs have a port with raised palpation bumps on the silicone center, which help identify these IPCs as power-injectable devices.

Each Plaintiff in this MDL had a Bard IPC implanted in his or her body, and claims it was defective and caused serious injury.  Plaintiffs allege that the barium sulfate in the IPC degrades the mechanical integrity of the catheter, leading to surface irregularities that cause catheter fracture, infection, and blood clots.  Plaintiffs further allege that Bard's manufacturing process for the POM-containing IPCs lacks adequate measures to stabilize the POM to prevent oxidative degradation, which causes cracks, fissures, and other physical defects in the polymer and increases the risk of fracture, infection, and thrombosis.  Plaintiffs also allege that the palpation bumps on the power-injectable IPCs cause undue compression stress on the tissue surrounding the port, leading to ulceration and tissue necrosis.  *See* Docs. 23, 1889.

Plaintiffs claim that safer alternative designs and manufacturing processes were available to Bard and that Bard IPCs are more dangerous than other available treatment

options.  Plaintiffs assert a host of state law claims, including design and manufacturing defects, failure to warn, breach of warranty, misrepresentation, concealment, and consumer fraud and unfair trade practices.  *See* Docs. 23, 1889.

Bard disputes Plaintiffs' allegations and contends its IPCs are safe and effective and that the medical community is aware of risks associated with IPCs.  Bard further contends that various factors impact the performance and wear of IPCs, including where the catheter is inserted and how well the device is maintained by medical professionals and the patient.  *See* Docs. 23, 2023-1.

Defendants have identified Ravi Srinivasa, M.D., as a medical expert.  Dr. Srinivasa is a board-certified vascular and interventional radiologist with 20 years of experience.  Doc. 4822-1 at 3.  He is certified in Diagnostic Radiology by the American Board of Radiology and maintains a Certificate in Vascular and Interventional Radiology.  *Id.* at 36.  In 2018, Srinivasa joined the University of California, Los Angeles ("UCLA") as an Associate Professor of Vascular and Interventional Radiology, and was subsequently promoted to Professor of Vascular and Interventional Radiology.  *Id.* at 3.  Prior to his professorship with UCLA, Srinivasa held assistant and clinical professor positions with other major educational intuitions including the University of Pennsylvania, the University of Texas (Houston), and the University of Michigan.  *Id.* at 37.  He was the Quality Assurance and Safety Officer at the University of Michigan Health System between 2015 and 2018.  *Id.*  And he has participated in monthly Morbidity and Mortality conferences at institutions where he has practiced, reviewing every complication and associated complications rates for central veinous access devices, including IPCs.  *Id.* at 11; Doc. 4822-2 at 28.  During his medical career, Srinivasa has implanted more than 10,000 ports and removed between 6,000 and 8,000.  Docs. 4822-2 at 28, 5330-1 at 3-4.  Plaintiffs move to exclude Srinivasa's opinions under Federal Rule of Evidence 702.

**II.    Legal Standard.**

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the

3

proponent of the expert's testimony "demonstrates to the court that it is more likely than not that" (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The proponent of the expert testimony must show by a preponderance of the evidence that the testimony satisfies each of these requirements. Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("[T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025) ("Consistent with the 2023 amendment, our precedent establishes that Rule 702 requires a proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence.").

The Court acts as a gatekeeper to ensure that expert testimony satisfies Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The Court's task is not to decide whether the expert is right or wrong, but to ensure the proposed opinions satisfy Rule 702. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 969-70 (9th Cir. 2013); *Engilis*, 151 F.4th at 1050. If the proponent does not meet its Rule 702 burden, the expert testimony is not admissible. *See Davis v. McKesson Corp.*, No. CV-18-1157-PHX-DGC, 2019 WL 3532179, at *3 n.2 (D. Ariz. Aug. 2, 2019) ("[T]he Court may admit expert opinions only if it can determine, under Rule 104(a), that Plaintiffs have shown each of the Rule 702 requirements to be satisfied by a preponderance of the evidence.").

**III.    Discussion.**

Plaintiffs argue Srinivasa "offers opinions that exceed the bounds of his qualifications, are based on insufficient facts or data, and are products of an unreliable methodology." Doc. 4822 at 3.

4

### A.   Port Safety and Efficacy Opinions.

Plaintiffs argue Srinivasa's opinions about the safety and efficacy of ports, which they contend are "based solely on his own recollections from his practice," should be excluded for insufficient facts or data and for lacking a reliable methodology. *Id.* at 4. They cite the following opinions:

- Srinivasa testified during his deposition that he "had never personally had issues with Bard ports, nor had any of [his] colleagues at [his] current institution or at previous institutions." Doc. 4822-2 at 12.
- He testified he had "not personally seen" a catheter fracture occur when the port catheter was placed via the internal jugular vein. *Id.* at 21.
- He testified he has "never personally, over the course of . . . over 10,000 port placements, ever had a pinch-off situation happen by an [internal jugular] placed port." *Id.* at 22-23.
- He again testified that he has not had a pinch-off happen from an internal jugular approach catheter. *Id.* at 24.
- He opines in his report that he has "not found any higher infection or thrombotic risk related to different types of ports from different manufacturers." Doc. 4822-1 at 25.

Plaintiffs contend these opinions are "based solely" on Srinivasa's "own personal experience." Doc. 4822 at 4. They note Srinivasa acknowledged "his personal experience cannot be independently verified or tested." *Id.* at 5 (citing Doc. 4822-2 at 29, 40). Plaintiffs argue his opinions "are unsupported by data, have no reliable foundation, cannot be tested, and should therefore be excluded." *Id.* at 4.

Plaintiffs' motion argues at least nine times that Srinivasa's experience-based opinions lack an "objective source," "objective data," or an "objective foundation." *See id.* at 4-9. This argument misstates the requirements of Rule 702(b). Srinivasa's opinions can be based on his clinical experience. As the Advisory Committee on the Federal Rules of Civil Procedure explained when it amended Rule 702 to recognize the Supreme Court's

5

*Daubert* decision, "[n]othing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony.  To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience."  Fed. R. Evid. 702 advisory committee's note to 2000 amendment; *see also Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) ("An expert's specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion."); *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 993675, at *2 (D. Ariz. Feb. 21, 2018) ("[A] doctor's experience can serve as a sufficient foundation for opinions about the medical devices the doctor uses in his clinical practice," including his opinion the device is "safe and effective.").

As an interventional radiologist with years of experience, Srinivasa has performed thousands of port procedures and "managed a wide range of port complications."  Docs. 4822-1 at 4 ("I personally have performed thousands of central venous access procedures[.]"; "I have placed multiple different types of port devices including ports manufactured by Bard, AngioDynamics, and Braun."; "I have managed a wide range of port complications[.]").  His experience provides a factual basis for his port safety and efficacy opinions.

Srinivasa's clinical experience also satisfies Rule 702(c).  *See Geiger v. Creative Impact Inc.*, No. CV-18-01443-PHX-JAT, 2020 WL 3268675, at *6 (D. Ariz. June 17, 2020) ("An expert's opinion can be based on 'the application of extensive experience,' which satisfies Rule 702(c)'s requirement that an expert opinion be based upon reliable principles and methods." (quoting Fed R. Evid. 702 notes for the 2000 amendments)).  The Court will not exclude Srinivasa's port safety and efficacy opinions.

Plaintiffs argue Srinivasa "provides no data, scientific literature, statistical analysis, patient tracking, or comparative methodology" to support his opinion that "[he has] not found any higher infection or thrombotic risk related to different types of ports from different manufacturers."  Doc. 4822 at 5 (quoting Doc. 4822-1 at 25).  They contend that "[w]ithout objective data comparing infection and thrombosis rates across different

manufacturers' devices, his comparative safety assertion lacks any scientific foundation and constitutes inadmissible speculation." *Id.* But clinical experience alone can reliably inform an expert's opinion, as shown above, and Srinivasa has performed thousands of port procedures with various port manufacturers. Doc. 4822-1 at 4. He may opine about medical devices he has used extensively during his clinical experience. *In re Bard*, 2018 WL 993675, at *2 ("[A] doctor's experience can serve as a sufficient foundation for opinions about the medical devices the doctor uses in his clinical practice."). His opinions are not speculative. *See In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 6186496, at *2 (D. Ariz. Feb. 21, 2018) ("Testimony about a doctor's own clinical experiences is not based on mere speculation.").

Srinivasa's opinions are further supported by his review of and reference to medical literature. *See Heinrich v. Ethicon, Inc.*, No. 220CV00166A PGVCF, 2021 WL 1854648, at *2 (D. Nev. May 10, 2021) (instructing an expert may "opine as to the large-scale safety and efficacy of a medical device" when those opinions are "based on the expert's observations in his own clinical practice that is on par with the findings in medical literature the expert cites" (citation modified)); Doc. 4822-1 at 7 ("My clinical observations have also been supported by literature, including a systematic literature search and metanalysis by *Yeow et al.* from 2022 which found that ports have the lowest rates of complications compared to other central venous access devices.").

Srinivasa's published peer-reviewed literature on central venous access, including on the "safety and feasibility" of PICC placement, further supports his safety and efficacy opinions. Doc. 4822-1 at 5 ("Additionally, I have co-authored peer-reviewed publications related to central venous access, including a 2018 study [2] examining the safety and feasibility of bedside PICC placement in pediatric patients as well as a 2019 commentary on catheter-associated thrombi published in the Journal of Vascular Surgery [3].")

Plaintiffs challenge Srinivasa's opinions regarding his colleagues' experiences with Bard ports. Srinivasa opines that (1) "[his] own observations and understanding based on discussions with colleagues across numerous academic hospitals confirms that Bard ports

are safe, effective and the preferred option in many clinical settings" (Doc. 4822-1 at 22), (2) port-related risks are "well understood by colleagues who place them" (*id.*), and (3) his colleagues have experienced no negative outcomes with port placement, and they have not used the terms "flex fatigue" or "flexural fatigue" in regard to ports (Doc. 4822-2 at 11-12, 17-18, 19-20, 24-28).  Plaintiffs contend Srinivasa impermissibly relies on "the absence of comments" from his colleagues to support these opinions, which they contend constitutes "*ipse dixit* [testimony] that cannot be verified, tested, or confirmed."  Doc. 4822 at 6.

As discussed above, an expert's opinion may be reliably supported by his clinical experience.  *Elosu*, 26 F.4th at 1024; *Geiger*, 2020 WL 3268675, at *6.  Expert witnesses may also "properly offer opinions" on "knowledge of the medical community in general." *McBroom v. Ethicon, Inc.*, No. CV-20-02127-PHX-DGC, 2021 WL 2709292, at *16 (D. Ariz. July 1, 2021) (citation omitted); *see also In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 495188, at *4 (D. Ariz. Jan. 22, 2018) ("[E]xpert testimony 'is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.'" (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010))).  Srinivasa may opine about the safety and efficacy of Bard ports, the known port risks, and that "flex fatigue" and "flexural fatigue" are unfamiliar terms within the interventional radiologist community.

Plaintiffs' authority is distinguishable.  They cite *Montera v. Premier Nutrition Corp.*, 2022 WL 1225031, at *9 (N.D. Cal. Apr. 26, 2022), for the proposition that "[a]lthough an expert may testify based on their 'personal knowledge or experience[,] . . . courts have excluded doctors' observations about rates of patient outcomes 'where the expert was unable to provide verifiable data from the expert's practice.'"  *Id.*  Srinivasa's safety and efficacy opinions do not discuss rates of patient outcomes.  Plaintiffs' other cases are similarly unpersuasive.  *See Rose v. Boston Sci. Corp.*, 2020 WL 4195470, at *1 (W.D. Wash. July 21, 2020) (holding inadmissible testimony regarding "specific personal complication rates" because it was not supported by "verifiable data from the expert's practice"); *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018

WL 495189, at *2 (D. Ariz. Jan. 22, 2018) (holding inadmissible interventional radiologist's opinion "that Bard filters have higher complication rates than other IVC filters").

Plaintiffs contend Defendants' reliance on *In re Bard*, 2018 WL 993675, is misplaced because the Court admitted the expert's opinions only because it was supported by both his clinical experience and cited studies. Doc. 5572 at 3. To the contrary, the Court found the expert's clinical experience alone sufficient to support his safety and efficacy opinions, which were further supported by his literature review. *In re Bard*, 2018 WL 993675, at *2 (explaining expert's "clinical experience [wa]s sufficient to satisfy the threshold reliability requirements of Rule 702"). The Court reaches the same conclusion here.

The Court rejects Plaintiffs' contention that Srinivasa was obligated to "conduct[] a poll regarding the terminology used by other physicians" to support his opinion that his colleagues do not use the term "flex fatigue" or "flexural fatigue" in regard to ports. Doc. 5572 at 4. Plaintiffs cite no case law for this requirement.

Plaintiffs' additional contentions that Srinivasa testified inconsistently when asked if he had reviewed a certain article, and that his "reliance on literature is selective and insufficient" (*id.* at 3-4), are suitable for cross examination but are not grounds for excluding his opinions. *McBroom*, 2021 WL 2709292, at *4 ("The Court cannot exclude Dr. Flynn's opinions based on mere references to articles that Plaintiff believes are contrary to the literature on which Dr. Flynn relies[.]").

### B.     Complication Rate Opinions.

Plaintiffs argue Srinivasa's opinions regarding his complication and adverse event rates, as well as those of his institution, are not supported by sufficient facts and data or a reliable methodology because they are based on "unverified guesses." Doc. 4822 at 8-9. They correctly argue "experts cannot testify on personal complication rates where they have not provided 'objective data to back up [such] assertion[s].'" *Id.* at 9 (quoting *Rose*, 2020 WL 4195470, at *1) (alterations in original).

Plaintiffs cite one opinion of Srinivasa that conveys a quantifiable complication rate. When asked during his deposition what number of ports he has removed or explanted due to a device complication, Srinivasa testified "probably in the range of . . . 2 to 3 percent[.]" Doc. 4822-2 at 3. He testified the complication rate was "[j]ust a rough guess, based on complication rates related to ports." *Id.* Defendants confirm Srinivasa "will not offer at trial any 'estimated' complication rates that Plaintiffs' counsel elicited from him at his deposition." Doc. 5330 at 11. The Court will grant Plaintiffs' motion on this opinion.

Complication and adverse event rate opinions that are not quantifiable, however, do not necessarily require supporting data. A doctor may rely on his clinical experience to opine about a medical device. *Elosu*, 26 F.4th at 1024 ("An expert's specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion."); *Geiger*, 2020 WL 3268675, at *6 ("An expert's opinion can be based on 'the application of extensive experience,' which satisfies Rule 702(c)'s requirement that an expert opinion be based upon reliable principles and methods." (citation omitted)); *In re Bard*, 2018 WL 993675, at *2 ("[A] doctor's experience can serve as a sufficient foundation for opinions about the medical devices the doctor uses in his clinical practice."). The Court has admitted a physician's testimony that he had not experienced unexpectedly high complication rates in his clinical practice. *See In re Bard*, 2018 WL 6186496, at *2 ("Dr. Grassi may rely on his own clinical experience in stating his opinions" including that "[in his] own experience, [he has] not encountered unexpectedly high complication rates with Bard filter devices.").

Srinivasa's other complication rate opinions are admissible. He opines: (1) the results of a port placement quality assurance review he participated in "demonstrated that there was a higher infection rate in ports that were placed in the inpatient setting versus an outpatient setting," (2) in his clinical experience, and as supported by medical literature, "Bard ports do not demonstrate any higher complication rate than devices from other manufacturers," (3) his colleagues have not expressed concern about higher risks with Bard ports, (4) he has not observed increased risk of catheter fracture with Bard ports, or increased infection or thrombotic risk across different manufacturers, (5) he has not seen

any randomized clinical trial or prospective cohort study demonstrating that Bard IPCs have a high complication rate, and (6) the *Teichgraber et al.* 2011 study showed Bard ports had low complication rates, consistent with his clinical experience.  Doc. 5330 at 8-9 (quoting Doc. 4822-1 at 5, 20-22, 25-26). These opinions are supported by Srinivasa's clinical experience with port-related complications and, where relevant, the cited medical literature.  Docs. 4822-1 at 4 ("I personally have performed thousands of central venous access procedures, including placement and removal of implantable port devices . . . . including ports manufactured by Bard[.]"; "I have managed a wide range of port complications[.]"), 5330-1 at 5 ("We discuss all complications at our institution at a monthly [Morbidity and Mortality] meeting, including port-related complications."; "[W]hen there are complications, we do discuss all of them.").

Plaintiffs argue that "[b]y his own admission, Dr. Srinivasa's statements regarding his own complication rate, as well as the complication rates at his medical institutions, were unverified guesses." Doc. 4822 at 9.  But Srinivasa's opinions set forth above are not guesses.  They are based on his extensive clinical experience implanting and removing thousands of IPCs, his monthly review (with other physicians) of complications across the major university medical centers where he has worked, and relevant medical literature.  His testimony based on this clinical experience need not be exact to be admissible.  *See McBroom*, 2021 WL 2709292, at *6 ("If *Daubert* required an expert witness to independently verify every single clinical experience he had over the course of his career, the court would never make it past pre-trial motions" (citation omitted)).

Plaintiffs summarily argue Srinivasa may not opine that the risk of certain complications associated with Bard's implantable ports is "low" because "[s]uch testimony is vague, open to interpretation, and likely to mislead the jury." Doc. 5572 at 5.  The Court does not agree, for reasons just explained.  At trial, Plaintiffs may clarify the basis of Srinivasa's testimony if they consider it open to interpretation, and they may object when they deem it inadmissible.

/ / /

### C.      Port Design Opinions.

Plaintiffs argue Srinivasa, as an interventional radiologist, is not qualified to opine about the design of Bard ports or the inadequacy of alternative port designs.  Doc. 4822 at 9-10.   Defendants contend Srinivasa "does not offer 'design' opinions," only "clinical opinions addressing the benefits and risks of the devices that he uses and the clinical impacts of Plaintiffs' proposed alternative designs."  Doc. 5330 at 12.  The Court disagrees with Defendants.  Srinivasa offers a design opinion when he states that he does "not believe antimicrobial technology or antithrombotic coatings would necessarily provide any clinical benefit and could potentially result in additional complications resulting from dissolution of these coatings into the patient's body."  Doc. 4822-1 at 24-25 (citation omitted).

Srinivasa testified during his deposition that he is not an engineer, has never designed an implantable medical device, and does not consider himself an expert in FDA regulations.  Doc. 4822-2 at 7.  He is not a materials scientist; has no education, training, or experience in developing polymers, materials for catheters, or the materials used in manufacturing implantable chest ports; and has conducted no studies comparing different catheter materials.  *Id.* at 9-10.   He has no education, training, or experience in the design of ports.  *See* Fed. R. Evid. 702.

Defendants contend Srinivasa's opinion is supported by his clinical experience and medical literature.  Doc. 5330 at 12-13.  But his experience implanting and removing ports does not qualify him to opine on whether a particular type of material coating would reduce infections or dissolve within the body.

Nor may an expert become qualified by a review of literature alone.  *See*, *e.g.*, *In re Roundup Prods. Liab. Litig.*, No. 16-MD-02741-VC, 2023 WL 7928751, at *3 (N.D. Cal. Nov. 15, 2023) ("It is not enough to simply read the conflicting studies in the literature and describe their findings.  And it's certainly not enough to read and report on the summaries of the studies performed by other bodies or experts."), *aff'd sub nom. Engilis*, 151 F.4th 1040; *Buck v. Ford Motor Co.*, 810 F. Supp. 2d 815, 844 (N.D. Ohio 2011) ("An expert

must make some findings and not merely regurgitate another expert's opinion." (citation modified)).

Defendants argue that a 2015 FDA Safety Alert supports Srinivasa's opinion, and that applying FDA safety alerts "is a routine part of interventional radiology practice." Doc. 5330 at 13. But Srinivasa cannot rely on an FDA Safety Alert to become an expert on antimicrobial technology. *In re Roundup*, WL 7928751, at *3. The Court notes that Srinivasa's own published literature does not discuss port design. *See* Doc. 4822-1 at 5.

Defendants have not shown by a preponderance of the evidence that Srinivasa is qualified to opine on port design. His design opinions will be excluded.

### D.    Instructions for Use.

Plaintiffs argue Srinivasa's opinions regarding Bard's port-related warnings in its instructions for use ("IFUs") should be excluded under Rule 702(a)-(c). Doc. 4822 at 11. Plaintiffs point to Srinivasa's opinion that the risks discussed in Bard's IFUs "are clearly discussed and are consistent with known complications of all port systems, which are all well-known and have been widely reported on in the medical literature," including "catheter pinch off (which is the most common cause of fracture)," and which "has nothing to do with the catheter design by Bard and would be a similar issue in port catheters made by other manufacturers[.]" Doc. 4822-1 at 21-22.

Plaintiffs argue Srinivasa is not qualified to opine on Bard's IFUs because "he has no experience whatsoever in drafting IFUs and/or interacting with the FDA regarding the content of IFUs." Doc. 4822 at 12. But experience creating them is not the only basis for relevant expert opinions on IFUs. Experience using IFUs can also provide relevant perspectives on their sufficiency. Thus, many courts have held that a physician is qualified to opine on the adequacy of IFUs based on their clinical experience. *See Kelley v. C.R. Bard, Inc.*, 644 F. Supp. 3d 1316, 1341-42 (N.D. Ga. 2022) ("IFUs are designed for and disclosed specifically to doctors, these doctors are qualified to testify about the adequacy of warnings contained therein."), *vacating in part*, No. 2:20-CV-00045-SCJ, 2023 WL 2370109 (N.D. Ga. Jan. 24, 2023); *Arevalo v. Coloplast Corp.*, No. 3:19CV3577-TKW-

MJF, 2020 WL 3958505, at *5 (N.D. Fla. July 7, 2020) (rejecting argument that expert "is not qualified to opine on the adequacy of Exair's IFU because he lacks experience drafting IFUs and lacks expertise in the regulatory standards governing product warnings" and admitting his testimony on "the risks associated with the device and whether those risks were adequately expressed in the device's IFU, how physicians use IFUs, and the type of information typically included in IFUs"), *aff'd sub nom. Arevalo v. Mentor Worldwide LLC*, No. 21-11768, 2022 WL 16753646 (11th Cir. Nov. 8, 2022); *Wise v. C.R. Bard, Inc.*, No. 2:12-CV-01378, 2015 WL 521202, at *14 (S.D.W. Va. Feb. 7, 2015) (holding expert "qualified to evaluate Bard's warnings based on his knowledge of and experience with the risks of the Avaulta"); *Godreau-Rivera v. Coloplast Corp.*, 598 F. Supp. 3d 196, 210-11 (D. Del. 2022) (adopting *Wise*'s reasoning); *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 719 (S.D.W. Va. 2014) ("[A]s a urologist, Dr. Blaivas is qualified to testify about the risks of implanting the TVT–O and whether those risks were adequately expressed on the TVT–O's IFU.").

Plaintiffs argue Srinivasa's opinions are not based on sufficient facts or data because he "admitted that he does not know, nor does he want to know, about Bard's knowledge with respect to risks and complications associated with its ports," and a failure-to-warn claim "of any state . . . depends on what the product manufacturer knew or should have known when making decisions about warnings." Doc. 4822 at 12 (citation omitted). But Srinivasa is not opining that the IFUs reflect everything Bard knows; he opines they are sufficient for doctor uses. Defendants confirm Srinivasa will opine only on how interventional radiologists use IFUs, what information IFUs typically contain, the widely known risks associated with ports, and whether those risks were contained in Bard's IFUs. Doc. 5330 at 16.

These opinions can be factually supported by Srinivasa's clinical experience. *See Elosu*, 26 F.4th at 1024 ("An expert's specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion."). As an interventional radiologist, he is an intended recipient of IFUs, and he has extensive experience performing

port procedures and managing port-related complications. Docs. 4822-1 at 4, 5330-1 at 3. He has also participated in a years-long port-placement quality assurance review. Doc. 4822-1 at 5 ("I participated in a quality assurance review of all port placements at our institution, UCLA, during several years of my practice where I specifically analyzed infection rates between ports that were placed in the outpatient setting versus ports that were placed in the inpatient setting."). Srinivasa also cites medical literature discussing the well-known risks of ports, and he reviewed Bard's IFUs in preparation of his report. Docs. 5330 at 16, 4822-1 at 7, 17-23. His IFU opinions are supported by sufficient facts and data.

Plaintiffs argue Srinivasa's IFUs opinions are not supported by a reliable methodology because "[t]hey are based on nothing more than personal conviction" as shown by Srinivasa's testimony "that he has no interest in Bard's internal documents and information regarding risks and complications." Doc. 4822 at 13. But Srinivasa's opinions are based on his clinical experience, which can reliably support his opinions, *see Geiger*, 2020 WL 3268675, at *6, as well as his review of medical literature and Bard's IFUs. The Court will not exclude these opinions.

**IT IS ORDERED:** Plaintiffs' motion to exclude the opinions of Ravi Srinivasa, M.D. (Doc. 4822) is **granted in part and denied in part**. Dr. Srinivasa may not opine (1) that 2-3% of the ports he has removed or explanted was due to a device complication, or (2) on the design of Bard's ports or the inadequacy of alternative port designs.

Dated this 20th day of March, 2026.

David G. Campbell
Senior United States District Judge

15