**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| | No. CV-23-01975-PHX-DGC |
| _____ | |
| Robert Cook, | |
| Individual Plaintiff, | **ORDER** |
| v. | **Ravi Srinivasa, M.D.** |
| Becton Dickinson and Company, et al., | |
| Defendants. | |

This multidistrict litigation ("MDL") involves thousands of personal injury cases related to implanted port catheters ("IPCs" or "ports") designed, manufactured, and marketed by Defendants Becton Dickenson and Company, C. R. Bard, Inc., Bard Access Systems, Inc., and Bard Peripheral Vascular, Inc. (collectively, "Defendants" or "Bard"). Plaintiff Robert Cook has filed a motion to exclude the expert opinions of Ravi Srinivasa, M.D.  Doc. 5797.  The motion is fully briefed and no party requests oral argument.  *See* Docs. 5797, 6245, 6409.  The Court will grant the motion in part.

## I.      Background.

An IPC is a medical device surgically implanted under the skin to provide repeated access to a patient's vascular system without the need for multiple needlesticks into

peripheral veins.  IPCs are used to deliver chemotherapy and immunotherapy medication, intravenous fluids, blood transfusions, and parenteral nutrition.  IPCs can remain in place for weeks, months, or even years until treatment is completed.

IPCs consist of a port and a catheter.  The port is a small reservoir disc with a self-sealing silicone center where a needle can be inserted to deliver medication.  The port typically is implanted beneath the chest skin and below the collarbone.  Port bodies vary in shape and size and are made of plastic, silicone, or titanium.  The port is attached to a catheter, which is a thin flexible tube for delivery of the medication to a vein.  The catheter is tunneled under the skin to an insertion point in a central vein.  Catheters vary in width and are made of silicone or polyurethane.  IPCs typically are implanted by an interventional radiologist or a vascular surgeon.  A nurse or other medical professional then accesses the IPC to inject the medication, which flows from the port to the catheter and into the vein.

This MDL involves multiple versions of Bard IPCs, each of which received premarket clearance from the Food and Drug Administration ("FDA").  Bard IPCs contain barium sulfate, a radiopaque substance that can be seen on diagnostic imaging such as X-ray, CT, and MRI scans.  Several Bard IPCs are manufactured using polyoxymethylene ("POM"), an acetal thermoplastic polymer, in the construction of the port.  Many Bard IPCs have a port with raised palpation bumps on the silicone center, which help identify these IPCs as power-injectable devices.

Each Plaintiff in this MDL had a Bard IPC implanted in his or her body, and claims it was defective and caused serious injury.  Plaintiffs allege that the barium sulfate in the IPC degrades the mechanical integrity of the catheter, leading to surface irregularities that cause catheter fracture, infection, and blood clots.  Plaintiffs further allege that Bard's manufacturing process for the POM-containing IPCs lacks adequate measures to stabilize the POM to prevent oxidative degradation, which causes cracks, fissures, and other physical defects in the polymer and increases the risk of fracture, infection, and thrombosis. Plaintiffs also allege that the palpation bumps on the power-injectable IPCs cause undue

2

compression stress on the tissue surrounding the port, leading to ulceration and tissue necrosis.  *See* Docs. 23, 1889.

Plaintiffs claim that safer alternative designs and manufacturing processes were available to Bard and that Bard IPCs are more dangerous than other available treatment options.  Plaintiffs assert a host of state law claims, including design and manufacturing defects, failure to warn, breach of warranty, misrepresentation, concealment, and consumer fraud and unfair trade practices.  *See* Docs. 23, 1889.

Bard disputes Plaintiffs' allegations and contends its IPCs are safe and effective and that the medical community is aware of risks associated with IPCs.  Bard further contends that various factors impact the performance and wear of IPCs, including where the catheter is inserted and how well the device is maintained by medical professionals and the patient.  *See* Docs. 23, 2023-1.

Plaintiff Cook brings his lawsuit in this MDL.  Doc. 216 (Case No. CV-23-01975-PHX-DGC).  On August 24, 2022, Plaintiff had a Bard port implanted, and he subsequently suffered from an infection.  *Id.* at 4.  Plaintiff raises claims typical of this MDL, alleging the infection was caused by the Bard port.  *Id.* at 5.

Defendants have identified Ravi Srinivasa, M.D., as a medical expert in Plaintiff's case.  Dr. Srinivasa is a board-certified vascular and interventional radiologist with 20 years of experience.  Doc. 5797-1 at 4.  He is certified in Diagnostic Radiology by the American Board of Radiology and maintains a Certificate in Vascular and Interventional Radiology.  *Id.* at 101.  In 2018, Srinivasa joined the University of California in Los Angeles ("UCLA") as an Associate Professor of Vascular and Interventional Radiology, and was subsequently promoted to Professor of Vascular and Interventional Radiology.  *Id.* at 4.  Prior to his professorship with UCLA, Srinivasa held assistant and clinical professor positions with other major educational intuitions including the University of Pennsylvania, the University of Texas (Houston), and the University of Michigan.  *Id*. at 102.  He was the Quality Assurance and Safety Officer at the University of Michigan Health System between 2015 and 2018.  *Id*.  Srinivasa has "placed tens of thousands of ports" and de-accesses ports

frequently.  Docs. 5797-2 at 7-8, 6245-1 at 48.  Plaintiff moves to exclude his opinions under Federal Rule of Evidence 702.

**II.     Legal Standard.**

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the proponent of the expert's testimony "demonstrates to the court that it is more likely than not that" (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702(a)-(d).  The proponent of the expert testimony must show by a preponderance of the evidence that the testimony satisfies each of these requirements.  Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("[T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025) ("Consistent with the 2023 amendment, our precedent establishes that Rule 702 requires a proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence.").

The Court acts as a gatekeeper to ensure that expert testimony satisfies Rule 702.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  The Court's task is not to decide whether the expert is right or wrong, but to ensure the proposed opinions satisfy Rule 702.  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 969-70 (9th Cir. 2013); *Engilis*, 151 F.4th at 1050.  If the proponent does not meet its Rule 702 burden, the expert testimony is not admissible.  *See Davis v. McKesson Corp.*, No. CV-18-1157-PHX-DGC, 2019 WL 3532179, at *3 n.2 (D. Ariz. Aug. 2, 2019) ("[T]he Court may admit expert

opinions only if it can determine, under Rule 104(a), that Plaintiffs have shown each of the Rule 702 requirements to be satisfied by a preponderance of the evidence.").

**III.    Discussion.**

Plaintiff seeks to exclude several opinions of Srinivasa.

**A.    Causation and Diagnosis Opinions.**

Srinivasa opines that Plaintiff "developed a bloodstream infection likely due to suboptimal sterile technique by his wife and family friend at the time of flushing and deaccessing his port." Doc. 5797-1 at 15. Relatedly, he opines "the infection was most likely introduced during the deaccessing of the port[.]" *Id.* at 11; *see also id.* at 10-12. Plaintiff argues Srinivasa is not qualified to render these opinions because he is not an infectious disease doctor. Doc. 5797 at 4.

Plaintiff claims that Srinivasa referring to Plaintiff's infection as a "bloodstream infection" instead of a "catheter-related bloodstream infection" amounts to a diagnosis, which he contends Srinivasa is not qualified to render. *Id.* at 5. Defendants state Srinivasa will not render a diagnosis opinion. Doc. 6245 at 6 ("There is no dispute that Mr. Cook had an infection and that the infection was caused by MSSA. Rather, Dr. Srinivasa is offering an opinion that the MSSA likely entered Mr. Cook's bloodstream during the deaccessing procedure performed by Ms. Potter, likely not during the implantation of the port, and likely not during the access of the port at the hospital." (footnote omitted)).

Plaintiff claims Srinivasa is not qualified to render a medical causation opinion regarding the most likely source of Plaintiff's infection. Doc. 5797 at 7. He contends Srinivasa's "lack of 'specialized training in or knowledge of infectious diseases' precludes him from offering a causation opinion" where he is not Plaintiff's treating physician. *Id.* at 8 (quoting *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 340, 352 n.24 (S.D.N.Y. 2005)).

As with other 702 motions, Plaintiff cites *Berk*, 380 F. Supp. 2d 334, for the proposition that Srinivasa must exhibit specialized training or knowledge in infectious diseases, or otherwise be Plaintiff's treating physician, to render his causation opinion. *See*

*id.* at 352 n.24 (orthopedic surgeon likely not qualified to opine on the cause of infection where he lacked "any unique training or qualifications," but causation opinion admitted because he was the treating physician).  Plaintiff also cites *Estate of Arama v. Winfield*, 2017 WL 1951462, at *10 (N.D. Ind. May 11, 2017), for the proposition that Srinivasa is not qualified to render a causation opinion because he did not "review key parts of the factual record."  Doc. 5797 at 8-9; *see also* Doc. 5797-2 at 25 (Srinivasa incorrectly claiming "[Plaintiff] wasn't getting chemotherapy at home" despite his at-home chemotherapy being an undisputed fact).

A medical doctor's qualification to opine in one area "does not mean he is qualified to testify on all other medical topics."  *Gorney v. Safeway Inc.*, No. CV-23-01413-PHX-SHD, 2025 WL 2586133, at *5 (D. Ariz. Sept. 8, 2025) (citation omitted).  Srinivasa is not an infectious disease physician.  Defendants must show by a preponderance of the evidence that his knowledge, skill, experience, training, or education equip him with the specialized knowledge to opine on the original cause of Plaintiff's infection.  Fed. R. Evid. 702.

Defendants argue "Srinivasa's experience – performing port placements and removals, accessing and deaccessing ports himself, supervising trainees in these procedures, and evaluating suspected port infections throughout his time at four major academic centers – gives him precisely the kind of specialized knowledge courts in the Ninth Circuit routinely" accept as sufficient under Rule 702(a).  Doc. 6245 at 8.  The Court is not persuaded.

Srinivasa is an interventional radiologist, but a medical license is not enough to opine on the cause of any medical issue.  *See Alsadi v. Intel Corp.*, No. CV-16-03738-PHX-DGC, 2019 WL 4849482, at *4 (D. Ariz. Sept. 30, 2019) (explaining "the mere fact that Dr. Garcia is a qualified pulmonologist who treated [the plaintiff] does not render his opinions on causation admissible under Rule 702" (citation omitted)).  Srinivasa agreed he is not an infectious disease expert.  Doc. 5797-2 at 6.  Defendants point to his clinical experience, which involves frequently accessing and de-accessing ports.  *Id.* at 7.  But

Srinivasa's familiarity with ports does not necessarily render him qualified to opine on the cause of a blood infection.

Srinivasa testified that he identifies the presence of port-related infections and informs the necessary course of action – whether a catheter "needs to be removed, or replaced, or exchanged." *Id*. at 9. But Defendants have not shown that identifying the presence of an infection is the same as determining the infection's original cause. As Srinivasa acknowledges, "there are a multitude of factors that could cause an infection." *Id*. at 12. Courts recognize that a physician's skill and experience in identifying and treating an illness does not necessarily mean the physician can determine its cause. *See, e.g.*, *Wilson v. Pinnacle Foods Inc.*, No. 3:19-CV-229-BJB, 2022 WL 419595, at *6 (W.D. Ky. Feb. 10, 2022) ("Dr. Cumbo never connects his general experience treating Listeria and enteritis with any experience deducing their causes. Causation, not clinical diagnosis and treatment, is the question at issue. And '[t]he ability to diagnose medical conditions is not remotely the same,' . . . 'as the ability to deduce . . . in a scientifically reliable manner, the causes of those medical conditions.'" (citation omitted)).

Courts within the Ninth Circuit have similarly excluded causation opinions of experts who have experience treating a medical condition but not deducing their cause. *See, e.g.*, *Stambolian v. Novartis Pharms. Corp.*, No. CV 12-04378 BRO FMOX, 2013 WL 6345566, at *6 (C.D. Cal. Dec. 6, 2013) (finding doctor unqualified to render causation opinion where doctor was qualified to treat a condition but not to opine on its cause).

Defendants have not shown by a preponderance of the evidence that Srinivasa is qualified to opine on the cause of Plaintiff's infection.

**B.     De-Accessing Training and Procedure Opinions.**

Plaintiff argues Srinivasa is not qualified to render opinions about "de-accessing training and procedures," and that the opinions are not supported by sufficient facts or data. Doc. 5797 at 11. Srinivasa testified that he frequently de-accesses ports. Doc. 5797-2 at 7-8 ("I frequently do deaccess ports[.]"; "[M]aybe twice a week or so, on average."). Plaintiff nonetheless argues Srinivasa is not qualified to opine on de-accessing training and

procedures because he has no experience with at-home de-accessing.  Doc. 5797 at 12. Plaintiff contends that Srinivasa performing de-accessing "in a hospital suite protected by institutional sterility protocols, specialized equipment, and ever-present nursing support does not equip Dr. Srinivasa to speak to at-home de-access procedures or training for patients and caregivers – particularly when Defendants have not carried their burden to connect the dots between the two distinct exercises." Doc. 6409 at 7.

The Court is not persuaded.  Srinivasa clearly has years of experience de-accessing ports and doing so without introducing infections.  Such experience qualifies him to opine on procedures and training for safe de-accessing.  Srinivasa's substantial experience with de-accessing qualifies him to discuss de-accessing training and procedure.

Further, Srinivasa has training experience.  This includes instructing medical students and residents on proper de-access procedures (Doc. 5797-1 at 12) and developing educational protocols to standardize training in this area (*id.* at 5).

Plaintiff contends that Srinivasa "explicitly disclaimed any personal experience 'administer[ing] chemotherapy specifically through the port,' and further admitted that his institution does not 'allow home deaccess[.]'" Doc. 5797 at 12 (quoting Doc. 5797-2 at 7, 12).  He further argues that Srinivasa's lack of experience is demonstrated by his factually incorrect testimony that Plaintiff "wasn't getting chemotherapy at home." *Id.* (quoting Doc. 5797-2 at 25).  But the issue in this case concerns de-accessing, not chemotherapy, and Srinivasa's lack of experience administering chemotherapy has no bearing on his qualification to discuss de-accessing.  And the fact that his institution does not allow de-accessing at home does not alter his years of experience performing de-accessing safely, experience that supports his opinions on training and procedure.  His deposition error on when Plaintiff received chemotherapy (an error he did not make in his report (*see* Doc. 5797-1 at 8)) is not a basis for excluding his opinion.

Plaintiff challenges the factual foundation of Srinivasa's de-accessing training and procedure opinions. Doc. 5797 at 12.  But a doctor's clinical experience alone can factually support his opinions.  *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir.

2022).  As discussed above, Srinivasa regularly performs de-accessing, trains others in central venous access procedures, and develops central venous access protocols.  His detailed testimony explaining the de-accessing procedure (Doc. 6245-1 at 27-47) shows his specialized knowledge thereof.  Further, Srinivasa reviewed materials regarding the de-accessing in Plaintiff's case.  Doc. 5797-1 at 7-9.  The Court finds by a preponderance of the evidence that Srinivasa's opinions on de-accessing training and procedure are supported by sufficient facts and data.  Plaintiff's other arguments, focusing on narrow aspects of Srinivasa's testimony (Doc. 5797 at 12-14), may be raised in cross-examination.

### C.    Sources of Contamination Opinions.

Plaintiff cites several opinions of Srinivasa regarding points of contamination during Plaintiff's de-accessing procedure and contends they are "pure speculation, they lack sufficient facts or data and are *ipse dixit* that fails to meet Rule 702's requirements for reliability."  *Id.* at 15.  Plaintiff focuses on Srinivasa's identification of possible points of contamination as part of his infection causation opinion.  *Id.*  For example, Srinivasa's report includes this discussion:

> The fact that Mr. Cook had an infection with MSSA, a type of bacteria that is associated with the skin and nose about a week after his wife and Ms. Oglesbee deaccessed the port, *suggests that a potentially incompletely sterile deaccess technique – for example, coughing, touching her hands to her face or nose and then touching the port, not having fully sanitized her hands, among others – likely caused Mr. Cook's infection*.

Doc. 5797-1 at 10 (emphasis added).  The Court concludes above that Srinivasa is not qualified to opine on the most likely cause of Plaintiff's infection.  As a result, he cannot discuss possible points of contamination that are part of his causation opinion.

But this is not the only context in which Srinivasa discusses possible points of contamination.  He also provides a rebuttal to Dr. Hurst's opinions.  Doc. 5797-1 at 12-15. Hurst opines that the records show Ms. Potter and Ms. Oglesbee did not deviate from clean technique when they de-accessed Plaintiff's port at home.  Doc. 5828-1 at 7-8.  In rebuttal, Srinivasa states that the training of Ms. Potter and Ms. Oglesbee was minimal and that, in his experience, it is common for untrained individuals inadvertently to breach sterile technique.

Doc. 5797-1 at 12-13. This opinion, which is based on Srinivasa's substantial experience placing and de-accessing ports and instructing medical students in proper technique, is supported by sufficient facts and data and will not be excluded.

**IT IS ORDERED:**

1.     Plaintiff's motion to exclude the opinions of Ravi Srinivasa, M.D. (Doc. 5797) is **granted in part and denied in part**. Dr. Srinivasa may not opine that Plaintiff's infection was most likely caused by the de-accessing procedure. This includes opinions about various points in the procedure where Plaintiff's infection likely was introduced. Srinivasa may opine about the training and procedures connected with the de-accessing, and may render his rebuttal opinion to Hurst's assertion that Plaintiff's at-home de-accessing did not deviate from clean technique, if Hurst testifies. This testimony may include Srinivasa's experience on the ease with which untrained individuals may unintentionally breach sterile technique.

2.     There being no requests to seal the briefing on this motion, the Clerk's Office is directed to file the motion (Doc. 5797), Defendants' response (Doc. 6245), and Plaintiff's reply (Doc. 6409) on the public docket with the same document number and filing date.

Dated this 24th day of March, 2026.

David G. Campbell
Senior United States District Judge

10