WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard Implanted Port Catheter Products Liability Litigation<br><br>_____<br><br>Robert Cook,<br><br>            Individual Plaintiff,<br><br>v.<br><br>Becton Dickinson and Company, et al.,<br><br>            Defendants. | MDL No. 3081<br><br><br><br>No. CV-23-01975-PHX-DGC<br><br><br>**ORDER** |

The parties have filed motions in limine in preparation for the Cook bellwether trial. This order will set forth the Court's rulings on several of the motions.  "DMIL" refers to a motion in limine filed by Defendants, and "PMIL" to a motion filed by Plaintiff Cook.

**DMIL 1 — FDA Warning Letter.**

Defendants ask the Court to exclude evidence of a warning letter issued by the FDA on July 13, 2015, with respect to Defendants' IVC filters.  Doc. 7520.  Defendants argue the letter has no application to the port catheter business at issue in this case and is inadmissible under Federal Rules of Evidence 401, 402, 403, and 404 as irrelevant, unfairly prejudicial, and improper propensity evidence.  *Id.* at 2.  Plaintiff argues that topic 3 of the letter, concerning Bard's complaint handling and reporting of adverse events with respect

1

to the G2 and Eclipse filters, and the adequacy of Bard's evaluation of the root cause of filter failures, is relevant to Bard's internal procedures and not specific to a particular product line. Doc. 7744 at 2-3. Plaintiff does not oppose exclusion of topics 1-2 and 4-8 of the letter. *Id.* at 2 n.1. With respect to topic 3, Plaintiff states he "will not rely on the Warning Letter affirmatively" during trial, but argues topic 3 will become relevant for impeachment or rebuttal if Defendants present complaint data to the jury, argue they have always been in full regulatory compliance, or argue they have not been subject to FDA enforcement actions. *Id.* at 4.

The Court **grants** Defendants' motion (Doc. 7520) with respect to topics 1-2 and 4-8 of the FDA warning letter. The Court will be better equipped to address the relevancy of topic 3 at trial when it better understands the nature of the parties' arguments and the evidence they are presenting. If Plaintiff believes topic 3 becomes relevant during the course of the trial, he should raise that issue with the Court outside the hearing of the jury and when there is time for the Court to consider the issue without keeping the jury waiting.

### DMIL 2 — Past Criminal Conviction.

Defendants move to exclude evidence of a 1994 criminal conviction of C.R. Bard, Inc. Doc. 7521. Defendants argue the conviction is inadmissible under Rules 402, 403, 404, and 609 "because (a) the evidence is improper to impeach potential witnesses in this case, (b) the evidence is not admissible as character evidence, and (c) the evidence has no relevance to any disputed issue in this case." *Id.* at 2. Defendants argue the conviction was based on conduct that occurred in the late 1980s involving an angioplasty catheter sold by the former USCI Division of C. R. Bard that was sold in 1998. *Id.* at 2 & n.4. Defendants further argue that none of the employees involved in the conviction will be witnesses at trial or are currently employed by Defendants. *Id.* at 2.

Plaintiff argues that the conviction is admissible to rebut Defendants' reliance on the FDA's 510(k) clearance of their IPCs and assertions by several defense experts that Defendants complied fully with FDA requirements. Doc. 7745 at 2-3. Plaintiff argues that the conviction occurred while Defendants were obtaining clearance of an IPC that will be

addressed in this case and that was used as a predicate for later IPCs. *Id.* at 3-4. He seeks to introduce the conviction to rebut Defendants' heavy reliance on FDA regulations and FDA clearance of products in this case. *Id.* at 2-4.

The Court cannot resolve this issue on the current pretrial record. On one hand, introduction of the conviction could be highly prejudicial to Defendants, and unfairly so if it is not closely related to evidence and issues in the case. Fed. R. Evid. 403. Depending on how it is used, it could also constitute improper propensity evidence under Rule 404(b) or improper impeachment under Rule 609. On the other hand, the 1994 conviction — which in part concerned Bard's deliberate disregard of FDA requirements and its knowing and willful failure to comply with FDA disclosure rules — could be relevant if Defendants rely heavily before the jury on their past compliance with FDA requirements and suggest to the jury that they have always been exemplary and forthcoming in their dealings with federal regulators. The issue is also factually complex, with Plaintiff submitting more than 70 pages of court records from 1994. Docs. 7745-7, 7745-8, 7745-9.

This issue must be resolved at trial, when the Court has a better understanding of the parties' evidence and arguments. The Court therefore will **deny** Defendants' motion (Doc. 7521). Because of the risk of unfair prejudice, however, Plaintiff should not mention the conviction before the jury without first raising the issue with the Court, and far enough in advance for the Court to address the issue with both parties and review relevant documents without keeping the jurors waiting. Plaintiff's request for oral argument is denied.

**DMIL 3 — Confidential Documents.**

Defendants ask the Court to preclude Plaintiff from mentioning Defendants' designation of documents as confidential during the discovery process. Doc. 7522 at 2. Plaintiff agrees he should not comment during trial on such designations, but argues he should not be precluded from mentioning Defendants' assertion of confidentiality before this litigation, such as in internal corporate documents. Doc. 7746 at 2. This is a matter that should have been worked out between the parties; this motion is unnecessary. The

3

Court understands the motion to be focused on Defendants' designation of documents as confidential during discovery, and it will **grant** the motion (Doc. 7522) with respect to such designations. Such designations should not be mentioned or become an issue before the jury. That is the extent of the Court's order.

**DMIL 4 — Other Claims and Lawsuits.**

Defendants ask the Court to exclude as irrelevant evidence of other claims or lawsuits involving Defendants and their products, including other cases in this MDL. Doc. 7523 at 2. They also argue such evidence is inadmissible hearsay and that any probative value is substantially outweighed by the risk of unfair prejudice. *Id.* Plaintiff opposes the motion unless a host of limitations are imposed, many of them going beyond the scope of Defendants' motion. Doc. 7747 at 2-4. These issues should have been worked out between counsel; this motion is unnecessary. Defendants' motion (Doc. 7523) is **granted**. Plaintiff should not mention other claims or cases against Defendants, including in this MDL. This limitation does not prevent Plaintiff from cross-examining Defendants' experts regarding other work they have done for Defendants.

**DMIL 5 — Sloan Kettering Email.**

Defendants seek to exclude an email dated January 30, 2008, sent by Dr. George I. Getrajdman, a radiologist at Memorial Sloan Kettering Hospital, to Kelly Powers, a Bard employee. Doc. 7524 at 2. The email states that "[a]ll my doctors have come to love silicone as much as I do. They hate the PowerPort because of the polyurethane." Doc. 7524-1. It further states "I want to again encourage you to coat inside and outside of catheters . . . . These are things that your competitors will use against you." *Id.* Defendants argue that these statements are hearsay and are not admissible as a business record or for purposes of notice, and in fact are inadmissible expert opinions. Doc. 7524 at 3-4.

Plaintiff argues the email is admissible as an adoptive admission under Rule 801(d)(2)(B) because it was forwarded by a Bard employee to others within Bard (Docs. 7752-1, 7752-2), and is also admissible for purposes of notice, including on punitive

damages (Doc. 7752 at 2-4).  They also argue it is not an inadmissible expert opinion.  *Id.* at 4.

The parties should be prepared to address this issue at the final pretrial conference. The Court notes a few specific issues to be addressed by the parties.

- Rule 801(d) concerns hearsay "statements," not entire documents.  The emails forwarding Dr. Getrajdman's email within Bard all seem to focus on the statement that doctors at his facility love the silicone product.  The forwarding emails appear to congratulate a Bard employee on her completion of the silicone project.  Docs. 7752-1, 7752-2.  The emails do not mention or appear to respond to either the statement that doctors hate the polyurethane PowerPort or the statement encouraging development of a coated product.  Rule 801(d)(2)(B) requires adoption of the hearsay statement, and the internal Bard emails do not appear to manifest adoption of either of these statements.

- Plaintiff argues that the commencement of a coating project 11 months after the Getrajdman email also manifests adoption (Doc. 7752 at 3), but nothing in the later documents provided by Plaintiff connect the project to the Getrajdman email (Doc. 7752-4).

- It appears Plaintiff seeks to use the email to show the jury that doctors at Sloan Kettering held the opinion that coating catheters inside and out would reduce infections.  This is an issue addressed in expert testimony in this case.  If the email were admitted for this purpose, the non-testifying doctors would in effect be acting as experts on a disputed issue.  Plaintiff cites *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 686-87 (11th Cir. 1984), where evidence was admitted solely for notice and the court specifically instructed the jury that out-of-court statements of doctors were not to be taken as true.  Doc. 7752 at 4.  It appears Plaintiff's response to Defendants' expert-witness objection rests on Plaintiff's argument that the email is admissible for notice.  Plaintiff should confirm with the Court if this is correct.

5

- Defendants argue that notice is not required by Minnesota law and the email therefore is not admissible for notice. Doc. 7524 at 3-4. Plaintiff does not address this argument.

- Defendants should be prepared to address Plaintiff's argument that the email is relevant for notice on the punitive damages issue (Doc. 7752 at 4).

**DMIL 6 — Dow and DuPont Medical Caution Statements.**

This is another matter the parties should have resolved through reasonable discussion. Defendants move to exclude Dow and DuPont's medical caution statements in various documents (Docs. 7526-1 through 7526-6). Doc. 7526. They note neither company's materials are used in the IPC primarily at issue in this case. *Id.* at 3. They accuse Plaintiff of reneging on an agreement regarding deposition designations. *Id.* Plaintiff argues at length about ambiguous communications between the parties. Doc. 7755 at 2-4. Because the IPC at issue in this case does not include the Dow or DuPont materials related to the caution statements, the statements are irrelevant to this case and Defendants' motion (Doc. 7526) is **granted**. The parties shall not mention the Dow or DuPont caution statements during trial.

**DMIL 7 — IPCs Not Available in the United States.**

Defendants ask the Court to exclude evidence regarding proposed IPC designs that were not available in the United States at the time of Plaintiff's implant. Doc. 7533 at 2. The Court has already ruled that an alternative design's availability in the U.S. is not a requirement of Minnesota product liability law. Doc. 7345 at 11. The Court has also rejected Defendants' argument that an alternative design must exist in product form to be feasible. *Id.* at 12. Defendants say they filed this motion to preserve the issue for appeal. Doc. 7533 at 2 n.1. It is denied for reasons previously stated by the Court.

Defendants also argue the evidence should be excluded under Rule 403 because it would require extensive and confusing evidence at trial on whether the FDA would have cleared the foreign products for use in the U.S., a showing needed for Plaintiff to prove the alternative designs were feasible. *Id.* at 4. The Court is not persuaded. The three-week

trial will provide ample time to present this and other relevant issues, and the Court is confident the parties can present their positions in a way that does not confuse the jury. Defendants' motion (Doc. 7533) is **denied**.

**DMIL 8 — Japan Instruction for Use.**

Defendants ask the Court to exclude evidence or testimony regarding the Instructions for Use for Bard IPCs marketed in Japan ("Japan IFU"). Doc. 7534 at 2. Defendants argue the impetus for the Japanese government's directive on IPC warnings was catheter breakage, an alleged defect not at issue in Plaintiff's case. *Id.* This assertion is supported by the Japanese directive, which focuses on breakage. Doc. 7534-1. Defendants primarily argue the Japanese directive and Japan IFU are not relevant in this infection case. Doc. 7534 at 2.

Plaintiff argues that Defendants' Japan IFU also contains a warning about infection and includes a copy (Doc. 7757 at 2), but he never argues that Defendants' U.S. IFU does not contain a warning about infection (*see id.*). Unless the U.S. IFU lacks such a warning, it is not clear why the Japan IFU infection warning is relevant. Plaintiff should be prepared to address this issue at the final pretrial conference.

Plaintiff argues that "[t]he Japanese IFU also instructs that when a port 'is no longer necessary, from a medical point,' then 'the port and catheter should preferably be removed.'" *Id.* at 3 (citation omitted). But this warning is clearly tied to catheter breakage. The preceding sentence says: "The long-term placement of the port and catheter may lead to the catheter breakage and its migration to areas such as heart." Doc. 7757-1 at 3. The length-of-time warning is not addressed to the issue in this case — infection.

Nor is the Court persuaded, as Plaintiff suggests, that the Japanese instruction is relevant to rebut Defendants' criticism of the Iida and Suzuki studies. Doc. 7757 at 3.

In summary, the Court is inclined to grant Defendants' motion (Doc. 7534) unless the Japan IFU includes an infection warning not present in Defendants' U.S. IFU. The parties should be prepared to address this at the final pretrial conference.

/ / /

**DMIL 9 — IPC Monopoly.**

Defendants ask the Court to exclude evidence or argument that Defendants' share of the market for IPCs and related devices constitutes a "monopoly," as well as derivative terms such as "virtual monopoly" or "monopolistic practices." Doc. 7535 at 2. Defendants primarily argue that such terms are irrelevant as there is no antitrust claim in this case, would require irrelevant trial evidence about the extent of Defendants' market share, and would be unduly prejudicial. *Id.*

Plaintiff argues that Defendants' market share (alleged to be 75%) and profitability are relevant to an important argument in their case — that Defendants had the financial ability to innovate, but lacked the incentive because of their dominant market share. Doc. 7758 at 2-3. But even if these facts are relevant as Plaintiff argues, he does not explain why he needs to characterize Defendants' market position as a monopoly, a word with a specific legal meaning and pejorative understanding.

Plaintiff argues that Bard employees used similar phrases internally. *Id.* at 3. The question, however, is not what wording employees used internally, but what wording in the courtroom will accurately portray the evidence without prejudicing the jury.

The Court will **grant** Defendants' motion (Doc. 7535). Plaintiff has ample ways to accurately portray Defendants' market share, which is relevant for the reason stated above, without using a pejorative term like monopoly. The marginal relevancy of this specific word (and its derivations) is substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403.

**PMIL 10 — Law Firm Employment.**

Plaintiff moves to exclude any argument that his wife, Ann Potter, is employed by one of the Plaintiff law firms. Doc. 7531. He argues this evidence is irrelevant and prejudicial. *Id.* at 2-4.

Defendants argue Ms. Potter's employment goes directly to her credibility. Doc. 7754 at 2. She is a witness because she and a friend de-accessed Plaintiff's port, a process

Defendants blame for Plaintiff's infection.  Defendants also contend her employment is relevant to bias.  *Id.* at 2-4.

The Court does not find Defendants' arguments persuasive.  Even if her employment at the law firm is somewhat relevant, its probative value is substantially outweighed by the risk of unfair prejudice, such as the jury concluding Plaintiff's case lacks merit because it was brought by his wife's law firm.  Fed. R. Evid. 403.  Plaintiff's motion (Doc. 7531) is **granted**.  Plaintiff's request for oral argument is denied.

**PMIL 9 — Medical History Matters.**

Plaintiff moves to exclude evidence and argument regarding specific matters in his medical history: (1) his unrelated medical conditions and surgeries; (2) his and his wife's alcohol, tobacco, and drug use; and (3) his mental-health conditions absent clinical diagnoses.  Doc. 7530.  Plaintiff argues these matters are irrelevant to any issue in this case, and their introduction would be unfairly prejudicial and distracting.  *Id.* at 2-4.  Defendants contend these medical issues are relevant to Plaintiff's damages claim, and in some degree to his and his wife's credibility.  Doc. 7753.

After reviewing the parties' briefing and each of the attachments to Defendants' response, the Court reaches the following conclusions.

- Plaintiff's diagnoses for hyperlipidemia, undescended testicle, sinusitis and allergies, and his vasectomy, are irrelevant to the claims in this case, including the damages claims, and will be excluded.

- Plaintiff testified that he used marijuana, CBD oil, and cannabis edibles to help with sleep in 2020 and 2022.  Doc. 7753-3 at 7.  This was due to anxiety he was experiencing due to his cancer.  *Id.*  The fact that Plaintiff was dealing with sleep-interrupting anxiety at a time close to his port infection is relevant to his claim for emotional distress damages.  Defendants will be allowed to ask Plaintiff to confirm he used sleep aids to deal with cancer-related anxiety in 2020 and 2022, but there is no need for them to elicit evidence that the sleep aids were marijuana, CBD oil, and cannabis edibles.  The potential for unfair prejudice from those

facts substantially outweighs any marginal relevance in the specific method of sleep aid Plaintiff used.  Fed. R. Evid. 403.  Those facts are excluded.

- The fact that Plaintiff's wife used alcohol, marijuana, and cannabis edibles may be slightly relevant to her credibility as a witness in this case, but the potential for unfair prejudice from those facts substantially outweighs any slight relevance.  *Id.*  This evidence will be excluded under Rule 403.

- Plaintiff's testimony regarding his anxiety and depression, and Dr. Thomas's testimony regarding her diagnosis of Plaintiff with adjustment disorder, are relevant to his claim of emotional distress damages and will not be excluded.

Plaintiff's motion (Doc. 7530) is **granted** as set forth above, and otherwise **denied**.

**PMIL 8 — Replacement Bard Port.**

Plaintiff asks the Court to exclude evidence and argument regarding the fact that Plaintiff's post-infection replacement port was a Bard port and did not become infected.  Doc. 7528.  Plaintiff argues the facts that the port was made by Bard and did not get infected are irrelevant because they do not make it more or less likely that his infection was caused by the previous Bard port.  *Id.* at 2.

Defendants identify several other ways the replacement port is relevant.  Doc. 7761.  Plaintiff should be prepared to address them at the final pretrial conference.

- Defendants argue the replacement port is relevant to Plaintiff's failure-to-warn claim because it shows Dr. Frimpong "(1) was aware of the information that, according to the plaintiff-patient, a defendant drug company or medical-device manufacturer wrongly failed to provide, and (2) would have taken the same action even if the defendant had included that information in a warning."  *Id.* at 2 (quoting *Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128, 1152 (D. Minn. 2011)).  Defendants assert Dr. Frimpong's decision to implant a Bard IPC following the occurrence of an infection in the previous Bard port is highly probative of the fact that Dr. Frimpong would have taken the same action even if Dr. Frimpong had additional warnings about infections.  *Id.*

- Defendants argue the replacement port is relevant to Plaintiff's theory, proffered by Drs. Camins and Jarvis, that the primary opportunity for further risk mitigation rests in device design changes. *Id.* at 3. Defendants argue that the fact the replacement IPC did not become infected after Dr. Frimpong utilized prophylactic antibiotics shows that Bard IPCs are not unreasonably dangerous because infection-reduction practices can further reduce the already low risk of infection. *Id.*

- Defendants also contend the replacement port is relevant because Plaintiff seeks damages related to implantation of the replacement device. *Id.*

The Court is not persuaded by Defendants' argument that Dr. Frimpong's decision to use a Bard IPC for the replacement device, and the fact that the replacement IPC did not cause a further infection, is relevant to the likelihood of harm and the gravity of harm elements in the design-defect balancing test. But one data point is too thin a reed upon which to hang such arguments. Nor does the Court believe Defendants can turn Dr. Frimpong's decision to use a Bard replacement device into expert evidence that a reasonable medical provider did not consider the likelihood of harm to be too high, or the gravity of the harm too severe, when using a Bard port. These conclusions are confirmed by the fact that the Bard replacement port was a different model than the previous port. *See* Doc. 7528 at 3.

**PMIL 7 — Adverse Societal Impact of Verdict and Bard Good Acts.**

Plaintiff asks the Court to exclude evidence and argument (1) suggesting that a verdict for Plaintiff could negatively affect the cost or availability of research, medical devices, or healthcare; adversely impact jurors or the general public; negatively affect Defendants' shareholders or employees; lead to terminations of Defendants' employees; discourage innovation; or otherwise harm the broader medical community; and (2) referencing purported good character, activities, and conduct of Defendants and their employees, including but not limited to charitable giving and volunteering. Doc. 7527 at 2. Plaintiff cites argument during the punitive damages phase of an IVC bellwether trial, some

11

of which the Court permitted and other portions the Court corrected in a jury instruction. *Id.* at 2-3.

This motion asks the Court to engage in line drawing that more properly is done during trial. Arguments will be permitted on punitive damages that would not be permitted on a simple liability determination, and the Court has not yet decided whether to bifurcate punitive damages from liability. Furthermore, the extent to which Defendants will be permitted to make arguments will depend in part on arguments made by Plaintiff. The Court will rule on objections and provide guidance during the course of the trial.

Plaintiff's motion (Doc. 7527) is **denied**.

**PMIL 6 — Misleading Safety-Related Evidence.**

Plaintiff asks the Court to exclude evidence and argument framed to mislead the jury regarding safety-related evidence, including misrepresenting that (1) the FDA's stance on the safety of antimicrobial ports as having "rejected" the Avertex antimicrobial port, and (2) the safety and technological functions of ports by characterizing them as "lifesaving devices" or claiming "ports save lives." Doc. 7525 at 2.

On the first issue, Plaintiff contends that the best evidence of the FDA's reason for denying Defendants' Avertex 510(k) application is the letter sent to Defendants by the FDA, which does not say the FDA rejected Avertex or its coating, but instead found the proposed port not substantially equivalent to existing devices. *Id.* Plaintiff argues that Defendants cannot engage in "mindreading" about the FDA's position on Avertex, and the the FDA does not contain a finding that Avertex was unsafe. *Id.* Plaintiff argues the letter states only that the Avertex port was determined to be "not substantially equivalent" to a specific predicate. *Id.*

The Court is not persuaded. The antimicrobial coating in the proposed port contained ionic silver and Brilliant Green. Doc. 7759-2 at 4. The FDA letter stated Bard had not shown its proposed product to be as safe and effective as legally marketed devices, and specifically identified several issues Bard would have to address if it resubmitted a request for clearance of the device. *Id.* at 2, 4. The first issue identified by the FDA was

the possibility that the proposed product could leach out ionic silver and Brilliant Green. *Id.* at 4. The FDA "believe[d] severe cytotoxic and hemolytic effects" could result from the leaching, and that the information submitted by Bard was not "sufficient to ensure biocompatibility." *Id.* Defendants are entitled to argue that these statements show the FDA had safety concerns about the substances used to make the device antimicrobial. Plaintiff is entitled to make counterarguments. The Court cannot agree that Defendants' arguments would misstate the meaning of the letter.

Plaintiff also argues that the Court should preclude Defendants from asserting at trial that their ports are "lifesaving devices." Doc. 7525 3-4. Plaintiff essentially makes a jury argument as to why this is not so. *Id.* Defendants note that their employees will testify that ports can save the lives of patients who cannot safely receive essential treatment through alternative vascular access devices. Doc. 7759 at 3. They also note that one of Plaintiff's experts agreed ports can save lives. *Id.* at 3-4. The Court will not preclude Defendants from eliciting this evidence and arguing how the jury should evaluate it.

Plaintiff's motion (Doc. 7525) is **denied**.

**PMIL 5 — Unrelated Litigation.**

Plaintiff asks the Court to exclude evidence and argument concerning other lawsuits or claims involving Defendants' competitors, including a prior antitrust action between Bard and AngioDynamics and ongoing litigation regarding AngioDynamic ports. Doc. 7516. Specifically, Plaintiff asks the Court to exclude a stipulation entered between Bard and AngioDynamics in separate litigation, namely that there is no clinical evidence that establishes the superiority of AngioDynamics' BioFlo PICCs. *Id.* at 2-3. Among other arguments, Plaintiff contends the stipulation is inadmissible hearsay. *Id.*

Defendants argue the stipulation is not hearsay because it can be admitted for a purpose other than to prove the truth of the matter asserted. Doc. 7762 at 3. Defendants argue the stipulation can be used to prove that an agreement existed between Bard and AngioDynamics. *Id.* at 3. But this fact — that Bard and AngioDynamics at some point entered an agreement — has no relevance in this case. The only relevance of the stipulation

is what it says: that there is no clinical evidence that establishes the superiority of AngioDynamics' BioFlo PICCs. This is why the stipulation would be relevant. In fact, as Defendants note, "[a] stipulation is a contract between two parties to agree *that a certain fact is true*." *Id.* (emphasis added; citation omitted). The Court finds that the only plausible use of the stipulation at trial would be to prove the truth of the matter it asserts, and therefore rejects this argument by Defendants.

Defendants also argue the stipulation is admissible under Rule 807. *Id.* at 3-4. That rule requires Defendants to show the stipulation is supported by sufficient guarantees of trustworthiness after considering the totality of circumstances under which it was made, and any evidence corroborating the statement. Fed. R. Evid. 807(a)(1). Defendants do not dispute Plaintiff's assertion of how the stipulation came into existence. In May 2017, AngioDynamics filed suit against C.R. Bard, Inc. and Bard Access Systems, Inc. alleging Sherman Act antitrust violations. Doc. 7516 at 2. Before trial, the parties disputed whether evidence on alleged PICC "superiority" was relevant to the antitrust claim. *Id.* After the trial court directed the parties to try to reach an agreement that might avoid unnecessary presentation of evidence to the jury, they stipulated that there is no clinical evidence that establishes the superiority of AngioDynamics' BioFlo PICCs. *Id.*

Defendants argue that the stipulation is supported by sufficient guarantees of trustworthiness because Bard and AngioDynamics agreed to memorialize the statement in a judicial stipulation admitted into evidence in another trial. Doc. 7762 at 3. The Court is not persuaded. Stipulations are entered for a variety of strategic and litigation-related reasons, and often are not meant to establish the truth of a matter outside of the litigation. In the case between Bard and AngioDynamics, for example, the stipulation was entered at the encouragement of the trial judge to avoid the unnecessary presentation of evidence in an antitrust case. Doc. 7516 at 2. Further, stipulations generally are not binding on parties outside of litigation if they were intended to apply only to the trial. *Waldorf v. Shuta*, 142 F.3d 601, 616 (3rd Cir. 1998). Defendants present no evidence that AngioDynamics and Bard intended the stipulation to apply outside of the trial and for years to come.

14

As noted, Rule 807 expressly directs the Court to consider whether there is any evidence corroborating the statement in the stipulation.  Fed. R. Evid. 807(a)(1). Defendants present none in their response.

Given the totality of the circumstances, the Court cannot find that the stipulation from the 2017 antitrust case carries sufficient guarantees of trustworthiness. Stated differently, because the 2017 case concerned antitrust issues and the stipulation apparently addressed a matter of disputed relevancy and was entered at the judge's urging to shorten the trial, the Court cannot conclude that Defendants have shown it to be trustworthy outside the antitrust case.

Rule 807 also requires Defendants to show that the stipulation "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807(a)(2).  As noted above, the point on which the stipulation is offered is that there is no clinical evidence that establishes the superiority of AngioDynamics' BioFlo PICCs.  On this requirement of Rule 807, Defendants argue only that they "cannot offer direct evidence proving a negative; that is, proof of the absence of clinical data."  Doc. 7762 at 3-4.  But Defendants could have retained an expert to say there is no clinical data that establishes the superiority of AngioDynamics' BioFlo PICCs. Defendants have retained many experts in this case and do not argue they were unable to obtain one on this issue through reasonable efforts.

Defendants have not satisfied the requirements of Rule 807.  They identify no other hearsay exception under which the stipulation is admissible, and the Court therefore will **grant** Plaintiff's motion (Doc. 7516) with respect to the stipulation.

Plaintiff also seeks to exclude complaints in other lawsuits involving competitors' products as purported substantive evidence in this case.  Doc. 7516 at 4.  Plaintiff's argument focuses on complaints against AngioDynamics.  *Id.*  Defendants respond that they will not, in Plaintiff's trial, "seek to introduce evidence of product liability claims against AngioDynamics[.]"  Doc. 7762 at 2.  This issue is moot.

/ / /

**PMIL 4 — Undisclosed Risk-Benefit Opinion.**

Plaintiff asks the Court to exclude the opinions of Dr. Frimpong regarding the risks and benefits of Defendants' ports. Doc. 7515. Defendants timely disclosed Dr. Frimpong as an expert witness under Rule 26(a)(2)(C). Doc. 7515-2 at 7-11. Plaintiff claims that some of Frimpong's opinions were not formed during the course of his treatment of Plaintiff and therefore had to be disclosed in an expert report under Rule 26(a)(2)(B). Doc. 7515 at 2 (citing *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011)). But the specific opinion in question — that the benefits of implanting the Bard port in Plaintiff outweighed the risks — was in fact formed during his treatment of Plaintiff. Dr. Frimpong confirmed this in his deposition. *See* Doc. 7515-1 at 10-11.

Plaintiff argues the doctor did not know the materials used in the port, but Dr. Frimpong is not offering a materials-based opinion. Doc. 7515-2 at 7-11. Plaintiff argues that at most he formed an opinion about the benefits of the *surgical procedure*, not the port. But this is not what Frimpong said in his deposition. Doc. 7515-1 at 10 (confirming he "believed at the time that the benefits *of the Bard port catheter* outweigh its potential risks" (emphasis added)).

Plaintiff argues the opinion is irrelevant because Minnesota law does not require the jury to weigh a product's risks against its utility or benefit in evaluating Plaintiff's design-defect claim. Doc. 7515 at 3-4. But Defendants note that Dr. Frimpong's testimony is relevant to Plaintiff's failure-to-warn claim, which involves the learned intermediary doctrine and looks at what Dr. Frimpong knew and considered when he implanted Plaintiff's ports. Doc. 7751 at 4.

Plaintiff argues that the probative value of his testimony will be outweighed by the risk that jurors will be confused and misled into believing that he assessed the risks and benefits of Defendants' port design. Doc. 7515 at 4. But Defendants do not propose to use him on the question of port design. *See* Doc. 7515-2 at 7-11.

Finally, Plaintiff argues that Rule 26 was violated because, at the time of Dr. Frimpong's deposition, Defendants had not disclosed him as an expert. Doc. 7515 at 4.

But the deadline for expert disclosures had not arrived.  Plaintiff does not dispute that Defendants provided their expert disclosures on the date required by the Court.  The Court has read Defendants' disclosure of Dr. Frimpong as an expert, and it complies with Rule 26(a)(2)(C).  Doc. 7515-2 at 7-11.

Plaintiff's motion (Doc. 7515) is **denied**.

**PMIL 3 — Personal Use of Ports.**

Plaintiff asks the Court to exclude evidence and argument concerning personal use of ports by witnesses, counsel, or their family members and friends.  Doc. 7514.  Plaintiff's motion is based on the Court's ruling in *In re Bard IVC Filters Products Liability Litigation*, No. CV-16-00782-PHX-DGC, 2018 WL 2095829 (D. Ariz. May 3, 2018).  *Id.* at 2.  The Court will adopt the same ruling here:

> The Court generally agrees with Plaintiff that any probative value of this evidence is outweighed by the dangers set forth in Rule 403, at least to the extent that a Bard witness offers gratuitous testimony that a relative received a Bard filter implant.  But such testimony may be appropriate if the line of questioning suggests that the Bard witness viewed adverse event data only in terms of "numbers" and "rates" rather than "people with names."
>
> The motion in limine is granted. Defendants shall not elicit testimony on direct examination that Bard employees or their relatives have received Bard filter implants. If Defendants believe such testimony becomes appropriate during trial, they can raise that issue with the Court outside the hearing of the jury.

*Id.* at *4 (citation modified).  Witnesses similarly should not volunteer that a relative received a port, and Defendants should not elicit (and witnesses should not volunteer) that they would recommend Bard ports.  Other line drawing must occur at trial.  Plaintiff's motion (Doc. 7514) is **granted** as set forth above.

**PMIL 2 — Particular FDA-Related Evidence.**

Plaintiff asks the Court to exclude evidence and argument that would misrepresent the FDA's role and related federal and state laws.  Doc. 7513.  Plaintiff apparently failed

to consult with Defendants before filing this motion as required by the Court's local rule. Doc. 7749 at 2. Doing so could have saved time and effort.

Plaintiff asks the Court to exclude evidence or argument that FDA consent was required for warnings or recalls. Doc. 7513 at 2. Defendants state in response that they "do not intend to argue or elicit evidence to suggest that FDA approval was needed to change IPC warning labels, send warning letters to physicians, or initiate a voluntary recall." Doc. 7749 at 2. This issue is moot.

Plaintiff asks the Court to exclude evidence or argument that other catheters cannot serve as predicates for ports. Doc. 7513 at 2. Defendants respond that they do not dispute that a different kind of CVC could serve as a predicate for an implantable port. Doc. 7749 at 2. To this extent, Plaintiff's motion is moot.

Defendants do not concede, however, that a different kind of CVC could serve as the sole or primary predicate for a port. *Id.* They cite one of their experts as supporting this position. *Id.* Because Defendants have expert testimony in support of this assertion, the Court will not preclude Defendants from asserting it. This portion of Plaintiff's motion is **denied**.

Plaintiff asks the Court to exclude evidence and argument that alternative designs must be FDA-cleared and domestically available. Doc. 7513 at 3. Plaintiff argues that Minnesota law requires only technological and practical feasibility, and designs developed or used only outside of the United States can satisfy this standard. *Id.* at 3. They note that Defendants may point out whether Plaintiff's safer alternatives are FDA-cleared and available domestically. *Id.* Defendants do not argue that Minnesota law precludes foreign or non-FDA-cleared products from being introduced as alternative-design evidence. Doc. 7749 at 3. Like Plaintiff, they note that the unavailability of Plaintiff's alternatives in the U.S. and that they are not FDA-cleared can be relevant to the jury's determination of the feasibility of the alternatives. *Id.* This issue is moot.

Plaintiff asks the Court to preclude evidence or argument that the FDA's lack of recall or enforcement action reflects safety or effectiveness. Doc. 7513 at 3-4. They argue

18

such evidence is irrelevant and unfairly prejudicial. *Id.* They further state that if the Court permits reference to those facts, it should not allow Defendants to state or imply that FDA inaction establishes that their ports are safe, non-defective, or otherwise satisfy Minnesota law. *Id.* at 4. The Court adopts the same ruling it entered in the IVC litigation: "Whether evidence that the FDA took no enforcement action against Bard is relevant and otherwise admissible will depend heavily on the context in which the evidence is offered . . . . The Court will make this ruling during trial." *In re Bard IVC Filters Prods. Liab. Litig.*, 289 F. Supp. 3d 1045, 1050 (D. Ariz. 2018). In this respect, Plaintiff's motion is **denied**. If the Court does allow Defendants to present evidence of lack of FDA enforcement, they shall not argue that the lack of such action shows their IPCs are safe and effective. In this respect, Plaintiff's motion is **granted**.

**PMIL 1 — FDA Evidence.**

Plaintiff argues the Court should exclude all evidence regarding the FDA, including 510(k) clearance and FDA regulations. Doc. 7512. The Court will take this matter under advisement due to the large number of cases it must read. In addition, Plaintiff has requested oral argument on this motion, which the Court will grant. Argument will be heard during the final pretrial conference. The ruling on this motion could affect some of the rulings in this order.

**IT IS ORDERED** that the parties' motions in limine are granted, denied, and taken under advisement as set forth above.

Dated this 6th day of April, 2026.

David G. Campbell
David G. Campbell
Senior United States District Judge

19