**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| _____ | |
| Robert Cook, | No. CV-23-01975-PHX-DGC |
|           Individual Plaintiff, | |
| v. | **ORDER** |
| Becton Dickinson and Company, et al., | **Bernard Camins, M.D., M.Sc.** |
|           Defendants. | |

This multidistrict litigation ("MDL") involves thousands of personal injury cases related to implanted port catheters ("IPCs" or "ports") designed, manufactured, and marketed by Defendants Becton Dickenson and Company, C. R. Bard, Inc., Bard Access Systems, Inc., and Bard Peripheral Vascular, Inc. (collectively, "Defendants" or "Bard"). Defendants have filed a motion to exclude opinions of Bernard Camins, M.D., M.Sc. Doc. 5825.  The motion is fully briefed and no party requests oral argument.  *See* Docs. 6238, 6407.  The Court will grant the motion in part.

## I.    Background.

An IPC is a medical device surgically implanted under the skin to provide repeated access to a patient's vascular system without the need for multiple needlesticks into peripheral veins.  IPCs are used to deliver chemotherapy and immunotherapy medication,

1

intravenous fluids, blood transfusions, and parenteral nutrition.  IPCs can remain in place for weeks, months, or even years until treatment is completed.

IPCs consist of a port and a catheter.  The port is a small reservoir disc with a self-sealing silicone center where a needle can be inserted to deliver medication.  The port typically is implanted beneath the chest skin and below the collarbone.  Port bodies vary in shape and size and are made of plastic, silicone, or titanium.  The port is attached to a catheter, which is a thin flexible tube for delivery of the medication to a vein.  The catheter is tunneled under the skin to an insertion point in a central vein.  Catheters vary in width and are made of silicone or polyurethane.  IPCs typically are implanted by an interventional radiologist or a vascular surgeon.  A nurse or other medical professional then accesses the IPC to inject the medication, which flows from the port to the catheter and into the vein.

This MDL involves multiple versions of Bard IPCs, each of which received premarket clearance from the Food and Drug Administration ("FDA").  Bard IPCs contain barium sulfate, a radiopaque substance that can be seen on diagnostic imaging such as X-ray, CT, and MRI scans.  Several Bard IPCs are manufactured using polyoxymethylene ("POM"), an acetal thermoplastic polymer, in the construction of the port.  Many Bard IPCs have a port with raised palpation bumps on the silicone center, which help identify these IPCs as power-injectable devices.

Each Plaintiff in this MDL had a Bard IPC implanted in his or her body, and claims it was defective and caused serious injury.  Plaintiffs allege that the barium sulfate in the IPC degrades the mechanical integrity of the catheter, leading to surface irregularities that cause catheter fracture, infection, and blood clots.  Plaintiffs further allege that Bard's manufacturing process for the POM-containing IPCs lacks adequate measures to stabilize the POM to prevent oxidative degradation, which causes cracks, fissures, and other physical defects in the polymer and increases the risk of fracture, infection, and thrombosis.  Plaintiffs also allege that the palpation bumps on the power-injectable IPCs cause undue compression stress on the tissue surrounding the port, leading to ulceration and tissue necrosis.  *See* Docs. 23, 1889.

2

Plaintiffs claim that safer alternative designs and manufacturing processes were available to Bard and that Bard IPCs are more dangerous than other available treatment options. Plaintiffs assert a host of state law claims, including design and manufacturing defects, failure to warn, breach of warranty, misrepresentation, concealment, and consumer fraud and unfair trade practices. *See* Docs. 23, 1889.

Bard disputes Plaintiffs' allegations and contends its IPCs are safe and effective and that the medical community is aware of risks associated with IPCs. Bard further contends that various factors impact the performance and wear of IPCs, including where the catheter is inserted and how well the device is maintained by medical professionals and the patient. *See* Docs. 23, 2023-1.

Plaintiff Cook brings his lawsuit in this MDL. Doc. 216 (Case No. CV-23-01975-PHX-DGC). Plaintiff had a Bard PowerPort IPC implanted on August 24, 2022, and subsequently suffered from an infection. *Id.* at 4. Plaintiff raises claims typical of this MDL, alleging the infection was caused by the Bard port. *Id.* at 5.

The parties plan to call various expert witnesses at trial. Plaintiff has identified Dr. Camins as an infectious disease expert.

Camins is a Professor of Medicine at the Icahn School of Medicine and the Medical Director of Infection Prevention at Mount Sinai Health System in New York City. He was trained in internal medicine and infectious diseases, receiving his M.D. and a Master of Science in Clinical Research from Emory University. He has published more than 60 peer-reviewed articles, books, and chapters addressing various types of infections and interventions before, during, and after surgery. He has investigated and reported on complications associated with healthcare devices, including infection and thrombosis. He has led multiple grant-funded research projects on reducing catheter-related bloodstream infections through various means, including medical devices. Doc. 5825-1 at 2-3.

Camins serves on the editorial boards of infection-related journals and participates in various medical societies and committees related to infectious diseases. As part of his practice, he regularly evaluates methods to reduce the risk of infection, including the

modifiable and unmodifiable risks of infection associated with implanted medical devices generally and central venous catheters specifically, including IPCs. He regularly treats patients who have developed infections related to central venous catheters, including IPCs. *Id*. at 3.

Camins has prepared a case-specific report in which he discusses Plaintiff's medical history and describes the methodology he applied in reaching opinions about Plaintiff's diagnoses, the cause of Plaintiff's infection, and the consequences thereof. *Id*. at 3-10. Camins opines that: (1) Plaintiff's infection most likely was caused by catheter colonization of the Bard port he received (*id.* at 10-15); (2) all standards of care were followed when Plaintiff's port was implanted and accessed by his healthcare providers and then de-accessed at his home (*id.* at 15-19); and (3) the use of antimicrobial or anti-fouling technology in Plaintiff's port likely would have prevented his infection (*id.* at 19-23).

Camins also has prepared a rebuttal report in which he opines on: (1) the risk of infection from Bard ports (Doc. 5825-2 at 3); (2) the effectiveness of antimicrobial coatings (*id.* at 4-5); (3) Plaintiff's diagnoses and the source of his infection (*id.* at 5-8); (4) the home de-access procedure (*id.* at 9-11); and (5) Plaintiff's damages (*id.* at 11-12).

Defendants move to exclude Camins' opinions under Federal Rule of Evidence 702. Doc. 5825.

## II.     Legal Standard.

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the proponent of the expert's testimony "demonstrates to the court that it is more likely than not that" (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The proponent must show by a preponderance of the evidence that the testimony satisfies each of these requirements.

4

Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("[T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025) ("Consistent with the 2023 amendment, our precedent establishes that Rule 702 requires a proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence.").

The Court acts as a gatekeeper to ensure that expert testimony satisfies Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The Court's task is not to decide whether the expert is right or wrong, but to ensure the proposed opinions satisfy Rule 702. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 969-70 (9th Cir. 2013); *Engilis*, 151 F.4th at 1050. If the proponent does not meet its Rule 702 burden, the expert testimony is not admissible. *See Davis v. McKesson Corp.*, No. CV-18-1157-PHX-DGC, 2019 WL 3532179, at *3 n.2 (D. Ariz. Aug. 2, 2019) ("[T]he Court may admit expert opinions only if it can determine, under Rule 104(a), that Plaintiffs have shown each of the Rule 702 requirements to be satisfied by a preponderance of the evidence.").

**III.    Discussion.**

Defendants argue that Camins should be precluded from opining on (1) available technologies and alternative designs (Doc. 5825 at 3); (2) the Mayo Clinic's training and Bard's instructions and warnings regarding the de-access procedure (*id.* at 3-4); (3) Bard's knowledge, intent, motive, and state of mind (*id.* at 4-5); and (4) Plaintiff's emotional damages and credibility (*id.* at 5-7).

**A.    Available Technologies and Alternative Designs.**

Defendants challenged Camins general opinions about available technologies, alternative designs, and the effect of design changes on infection risks in a separate motion. Doc. 4833 at 9-15. Specifically, Defendants moved to exclude two general opinions: (1) "[t]echnologies exist that effectively reduce the key mechanism of infection (e.g.,

microbial adhesion) and/or effectively reduce one of the biggest facilitators of biofilm formation (e.g. protein adhesion)"; and (2) "[i]f Defendants had used safer alternative designs, the incidence of IPC-related infections would have been reduced." *Id.* at 9-10; *see* Doc. 4833-1 at 9-10.  The Court granted Defendant's motion in part.  Doc. 6614 at 7-11.

Defendants assert that Camins repeats his general opinions about available technologies and alternative designs in his case-specific reports, and argue that these opinions should be excluded for the reasons Defendants provided in their motion to exclude Camins' general opinions.  Doc. 5825 at 2-3 (citing Doc. 4833 at 9-15).  Plaintiff agrees that rulings on the admissibility of Camins general opinions will apply to his testimony in this bellwether case.  Doc. 6238 at 4.

The Court will apply its rulings on Camins' general opinions about available technologies and alternative designs to his case-specific opinions on these topics, as follows.  Camins can opine on the infection-reducing technologies he encountered, the infection process, how the infection process works with vascular access devices, what kinds of surfaces are more problematic, and how vascular access devices and surfaces have been successfully modified to reduce infections.  *See* Doc. 6414 at 9-10.  Camins cannot opine that these technologies could have been used in IPCs where they were not used, or in Defendants' IPCs specifically, and that their use in IPCs would have reduced infections. *Id.* at 10-11.  Camins is similarly precluded from opining that the use of antimicrobial or anti-fouling technology in Plaintiff's port likely would have prevented his infection.  *See* Doc. 5825-1 at 19-23.  As previously explained, these rulings will help the parties identify portions of Camins' reports that are inadmissible, but any disagreements on specific statements will need to be resolved through objections at trial.  *See* Doc. 6614 at 8.

**B.     Mayo's De-access Training and Bard's Instructions and Warnings.**

Defendants challenge Camins' rebuttal opinion that Mayo provided appropriate training in aseptic technique for Plaintiff's home de-access procedure.  Doc. 5825 at 3. Camins bases this opinion on the following "available medical evidence": (1) Plaintiff and his wife, Ann Potter, recalled speaking with an infusion nurse about doing home de-access

6

and the nurse providing a demonstration; (2) Mayo provided a video on how to de-access the port once infusion is done, which Ms. Potter watched; (3) Mayo likely provided training beyond the video regarding disinfecting the needleless connector because Ms. Potter wiped the connector with an alcohol pad; and (4) medical records reflect that there was an instruction sheet that accompanied the chemotherapy pump.  Doc. 5825-2 at 9; *see also* Doc. 5825-1 at 17 (opining that "the available evidence demonstrates that [Plaintiff] and his wife received appropriate training in the aseptic technique from Mayo").

Defendants argue that Camins is not qualified to opine that Mayo provided appropriate training regarding the de-access procedure because he is not an interventional radiologist who routinely places IPCs.  Doc. 5825 at 3.  Plaintiff asserts that this qualification argument "makes no sense" because Camins is rebutting opinions of Defendants' experts, Dr. Allos and Nurse Pampillonia, neither of whom are interventional radiologists who routinely place IPCs.  Doc. 6238 at 5.  But Plaintiff does not explain why Camins is qualified to offer the challenged opinion.  They argue only that his opinions about the adequacy of Mayo's training "are inextricably intertwined with the risk of infection, the core of Dr. Camins' expertise.  *Id.*

Plaintiff has not made a sufficient showing to support these opinions.  As an infectious disease doctor, Camins undeniably is trained in sterile clinical protocols, but he has no basis for opining about training for at-home de-accessing procedures when he has no experience de-accessing ports, de-accessing them at home, or training non-medical persons for such procedures.  A medical doctor's qualification to opine in one area "does not mean he is qualified to testify on all other medical topics."  *Gorney v. Safeway Inc.*, No. CV-23-01413-PHX-SHD, 2025 WL 2586133, at *5 (D. Ariz. Sept. 8, 2025) (citation omitted).[1]

Defendants also argue that Camins is not qualified to opine that Bard provided inadequate instructions and warnings regarding de-accessing in its Instructions for Use

---

[1] The Court reached the same conclusion with respect to the de-access training opinions of Dr. Allos, an infectious disease doctor.  Doc. 7182 at 12-13.

("IFU") and Patient Guide (*see* Doc. 5825-2 at 10) because he has never drafted an IFU for an implantable medical device, has not interacted with the FDA regarding contents of an IFU for such a device, and cites no education, training, or experience on medical device warnings or instructions. Doc. 5825 at 3-4 (citing Doc. 5825-2 at 3). Plaintiff asserts that Camins has sufficient knowledge of, and clinical experience with, "device-related infections" to opine on the adequacy of the IFU. Doc. 6238 at 6. But the challenged opinion concerns the adequacy of instructions for de-accessing. Camins has no experience with or specialized knowledge about de-access procedures.

Plaintiff's citation to *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2017 WL 11696720 (D. Ariz. Dec. 22, 2017), is misplaced. Doc. 6238 at 6. The Court permitted doctors to provide opinions as to what an interventional radiologist reasonably expects to be told about the risks of IVC filters because the doctors were "highly qualified experts in interventional radiology and the use of IVC filters" – they were well positioned to opine on what doctors in their practice field reasonably expect. *Bard IVC Filters*, 2017 WL 11696720, at *3-5. Camins falls short in two ways: (1) he does not de-access IPCs, so he is not well positioned to opine on what de-access doctors reasonably expect, and (2) his opinions primarily concerns the inadequacy of the IFU for home de-accessing, something in which he has no experience.

The Court will grant Defendants' motion on this issue. Camins cannot opine that Bard provided inadequate instructions and warnings on de-accessing.

### C.    Bard's Knowledge and State of Mind.

Defendants move to exclude Dr. Camins' opinions about Bard's corporate knowledge and state of mind. Doc. 5825 at 4 (citing Docs. 5825-1 at 23-24, 5825-2 at 5). But nothing in the cited pages constitutes an improper opinion about Bard's knowledge or state of mind. *See* Doc. 6238 at 8-9. In their reply, Defendants contend for the first time that Camins opines about Bard's knowledge from "internal studies" and "internal testing," and challenge his statement that, "I disagree, *and so does Bard*[.]" Doc. 6407 at 3 (citing

Docs. 5825-1 at 20-21, 5825-2 at 4) (emphasis added).  The italicized part of this opinion concerns Bard's state of mind.

The Court previously ruled that opinions about the knowledge, intent, motive, or state of mind of parties or others lie outside the bounds of expert testimony.  *See In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 495187, at *3 (D. Ariz. Jan. 22, 2018) ("To the extent Dr. Eisenberg 'offers opinions on Bard's intent, state of mind, or motivations, this testimony is outside the bounds of appropriate expert testimony.'" (citation omitted)); *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 495188, at *6 (D. Ariz. Jan. 22, 2018) ("Dr. Muehrcke will not be permitted to opine about Bard's knowledge, intent, or ethics.  He does not purport to be an expert on corporate information processing and he has not conducted any study of Bard internal operations, information gathering, or corporate ethics.").  No expert, on either side, will be permitted to opine on the knowledge, intent, motive, or state of mind of the parties or others.  Defendants motion is granted with respect to the statement quoted above.

### D.    Plaintiff's Emotional Damages and Credibility.

Defendants argue that Camins is not qualified to opine about Plaintiff's emotional damages, particularly that he experienced "emotional distress" and "continues to experience emotional distress over the impact of his infection on his diagnosis." Doc. 5825 at 5 (quoting Docs. 5825-1 at 23, 5825-2 at 12).  Defendants also argue Camins performed no analysis to support these opinions and merely repeats what Plaintiff said about his emotional distress, which constitutes improper vouching.  *Id.* at 6.

As explained, a medical doctor's qualification to opine in one area does not mean he is qualified to testify on all other medical topics.  *Gorney*, 2025 WL 2586133, at *5. Plaintiff must show by a preponderance of the evidence that Camins' knowledge, skill, experience, training, or education equip him to opine on Plaintiff's emotional distress.  Fed. R. Evid. 702.

Plaintiff asserts that "[a]s an infectious disease doctor with decades of experience treating patients with infections, Dr. Camins is plainly qualified to rebut the opinions of

Dr. Allos – also an infectious disease doctor – who asserted that Plaintiff 'moved on' and 'did not experience any long-term harm' from his infection." Doc. 6238 at 10.  But Plaintiff identifies no experience, training, or education in diagnosing or treating emotional distress. *See* Doc. 5825 at 6 (citing Doc. 5825-1 at 2-3).[2]

Plaintiff cites one case from the Northern District of Georgia.  Doc. 6238 at 12 (citing *Giusto v. Int'l Paper Co.*, 571 F. Supp. 3d 1346, 1361-62 (N.D. Ga. 2021)).  The Court disagrees with the lax legal standard applied in *Giusto*.  *See* 571 F. Supp. 3d at 1361 ("Rule 702 takes a liberal approach to expert witness qualification." (citation omitted)). This is especially true after the 2024 amendments to Rule 702 emphasized that courts must find every element of Rule 702 satisfied by a preponderance of the evidence.

Plaintiff has not shown by a preponderance of the evidence that Camins is qualified to opine about his damages, including emotional distress.  Further, Camins offers no analysis in reaching his emotional distress opinions and merely repeats Plaintiff's own statements.  *See* Docs. 5825-1 at 23, 5825-2 at 12.  Plaintiff can testify about his own physical and emotional condition.  Repeating his statements without expert analysis is not the proper role of a Rule 702 expert.

**IT IS ORDERED** that Defendants' motion to exclude opinions of Bernard Camins, M.D., M.Sc. (Doc. 5825) is **granted in part** and **denied in part**.  Camins cannot: (1) opine that available technologies could have been used in IPCs where they were not used, or that their use in IPCs would have reduced infections; (2) opine that the use of antimicrobial or anti-fouling technology in Plaintiff's port likely would have prevented his infection; (3) opine that Mayo provided appropriate training regarding the de-access procedure; (4) opine that Bard provided inadequate instructions and warnings regarding de-accessing; (5) opine on Bard's state of mind as identified above; or (6) opine about Plaintiff's damages, including emotional distress.

Dated this 8th day of April, 2026.

David G. Campbell
Senior United States District Judge

---

[2] Plaintiff may object at trial if he believes Dr. Allos or Dr. Musher attempts to impermissibly opine on Plaintiff's damages or lack thereof.  *See* Doc. 6238 at 10, 12.