**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE:  Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| ——————————————— | |
| Robert Cook, | No. CV-23-01975-PHX-DGC |
| Individual Plaintiff, | |
| v. | **ORDER** |
| Becton Dickinson and Company, et al., | |
| Defendants. | |

The Court discussed proposed final jury instructions with the parties on May 4 and 6, 2026.  *See* Docs. 8269, 8292, 8382.  This order explains certain decisions the Court made with respect to the instructions.

**A.    Learned Intermediary Doctrine.**

Defendants objected to the proposed "learned intermediary" instruction relating to Plaintiff's failure to warn claim (*see* Doc. 8269 at 18), arguing that the learned intermediary doctrine is not an affirmative defense on which Defendants bear the burden of proof.  The Court ultimately agreed.

To establish a failure to warn claim, a plaintiff must show: "(1) the defendant had a duty to warn; (2) the defendant breached that duty by providing an inadequate warning (or

1

no warning at all); and (3) the defendant's inadequate (or nonexistent) warning caused the plaintiff's damages." *Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128, 1155 (D. Minn. 2011) (citing *Balder v. Haley*, 399 N.W.2d 77, 81 (Minn. 1987)). "Under Minnesota law, a manufacturer has a duty to warn users of its products of all dangers associated with those products of which it has actual or constructive knowledge." *Mozes v. Medtronic, Inc.*, 14 F. Supp. 2d 1124, 1129 (D. Minn. 1998) (citing *Gryc v. Dayton-Hudson Corp.*, 297 N.W.2d 727, 739 (Minn. 1980)). In cases where the product is a prescription drug or medical device, the learned intermediary doctrine applies and shifts the manufacturer's duty to warn from the patient to the learned intermediary – the patient's physician. *See id.* at 1130.

The Minnesota Supreme Court first recognized the learned intermediary doctrine in *Mulder v. Parke Davis & Co.*, 181 N.W.2d 882 (1970), explaining that a "manufacturer has no duty to warn the lay public regarding prescription drugs[,]" but rather must warn the prescribing physician. *Id.* at 885 n.1.[1] Since *Mulder*, some Minnesota courts have referred to the learned intermediary doctrine as a "defense." *See Gray v. Badger Min. Corp.*, 676 N.W.2d 268, 275-76 (Minn. 2004) (noting that *Mulder* recognized that the "learned intermediary defense" was available in a failure to warn claim); *Lenzen v. Garon Prods., Inc.*, No. 09-CV-2893 SRN/AJB, 2011 WL 5177713, at *4 (D. Minn. Oct. 31, 2011) (explaining that the Minnesota Supreme Court has recognized five "affirmative defenses" that could obviate or discharge the duty to warn, including learned intermediary (citing *Gray*, 676 N.W.2d at 275)); *see also Kapps*, 813 F. Supp. 2d at 1152 ("The learned-intermediary doctrine is a *defensive* doctrine, not an *offensive* one."). But no Minnesota

---

[1] The Court agrees with the conclusion in *Mozes* that "Minnesota courts would follow the large number of jurisdictions that have applied the learned intermediary doctrine to cases involving medical devices." 14 F. Supp. 2d at 1130 (citations omitted); *see also Dolan v. Bos. Sci. Corp.*, No. 20-CV-1827 (NEB/LIB), 2021 WL 698777, at *3 (D. Minn. Feb. 23, 2021) ("Minnesota has adopted the learned intermediary doctrine, meaning that a warning about a medical device need only be given to a prescribing physician, not directly to the patient."); *Marshall v. Smith & Nephew, Inc.*, No. CV 19-2313 (DWF/DTS), 2020 WL 362803, at *7 (D. Minn. Jan. 22, 2020) ("Minnesota recognizes the learned intermediary doctrine, under which a maker of drugs or medical devices only has a duty to warn doctors, and not patients, about the dangers associated with its product.").

court has held that the doctrine shifts any part of the burden of proof on a failure to warn claim from the plaintiff to the defendant.[2]

In a failure to warn claim where the learned intermediary doctrine applies, the plaintiff has the burden of proving that the defendant provided inadequate warnings to the plaintiff's physician. *See Mozes*, 14 F. Supp. 2d at 1130 ("[I]t is undisputed that Medtronic warned Dr. Webb, the surgeon who implanted the Model 4082 lead into Mozes, of the dangers inherent in the lead. . . . Accordingly, the Court finds that Mozes has failed to create a genuine issue of material fact regarding whether Medtronic complied with its duty to warn the doctor who implanted Mozes' lead of the dangers associated with it."); *Marshall*, 2020 WL 362803, at *7 ("A patient's failure-to-warn claim is foreclosed if his or her doctor received adequate warning from the manufacturer of the medical device in question.").[3] Where the plaintiff shows that the defendants provided inadequate warnings to the plaintiff's physician, the issue under the learned intermediary doctrine becomes one of causation involving "an examination of whether the prescribing physician was independently informed of the relevant risks, and whether the prescribing physician would have taken the same course of action even if the defendants had provided additional warnings." *In re Levaquin*, 726 F. Supp. 2d at 1027 (citations omitted).

In *Mulder*, for example, the Minnesota Supreme Court affirmed the trial court's directed verdict in favor of the defendant, holding that "where the only issue is failure to communicate a warning, the manufacturer is not liable if the doctor was fully aware of the facts which were the subject of the warning." 181 N.W.2d at 885. The court also explained

---

[2] One federal court suggested that the defense must bring out certain facts to support application of the learned intermediary doctrine, but seemed to recognize that the plaintiff still retains the burden of proof on a failure to warn claim. *See In re Levaquin Prods. Liab. Litig.*, 726 F. Supp. 2d 1025, 1027 (D. Minn. 2010) ("If a defendant properly establishes the facts necessary to support the learned intermediary defense, *a patient will be unable to show* that the defendant's failure to warn the prescribing physician is a proximate cause of the patient's injury." (emphasis added)).

[3] *See also Amiodarone Cases*, 300 Cal. Rptr. 3d 881, 894-95 (2022) ("Because the duty to warn is an essential element of plaintiffs' claims, and the learned intermediary doctrine sets the scope of the duty with respect to the prescription drug amiodarone, it is plaintiffs' burden to plead and prove that defendants failed to adequately warn the prescribing physician of the potential risks.").

3

that "failure of the doctor to follow an unchallenged method of use prescribed by the manufacturer constitutes a break in causation which exonerates the manufacturer from any liability." *Id.* (citation modified).  Similarly, in *Cornfeldt v. Tongen*, 262 N.W.2d 684 (Minn. 1977), the Minnesota Supreme Court held that "the claimed deficiency in the warning was not a cause of [the plaintiff's] injuries" where the physician made his decision "on the basis of the facts that would have come to his attention had the [warning] read as plaintiff alleged it should have." *Id.* at 698; *see also Kapps*, 813 F. Supp. 2d at 1152 ("[T]he learned-intermediary doctrine forecloses a patient's failure-to-warn claim if a doctor (1) was aware of the information that, according to the plaintiff-patient, a defendant drug company or medical-device manufacturer wrongly failed to provide, and (2) would have taken the same action even if the defendant had included that information in a warning."); *Bruzer v. Danek Med., Inc.*, No. CIV. 3-95-971/RHKJMM, 1999 WL 613329, at \*6 (D. Minn. Mar. 8, 1999) ("The Plaintiffs allege that the Defendants failed to provide Garvey adequate information on their devices' use for pedicle screw fixation.  What the Plaintiffs never address, however, and what is a fatal problem with this claim, is Garvey's testimony that he would have recommended pedicle screw fixation regardless of the existence or content of any warnings provided by the Defendants.").

The Court reached a few conclusions from the cases discussed above.  First, while the learned intermediary doctrine typically is raised by medical device manufacturers accused of failing to provide adequate warnings, and fairly may be described as a "defensive doctrine," *Kapps*, 813 F. Supp. 2d at 1152, the doctrine is not an affirmative defense that places a burden of *dis*proving causation on the defendants.  As the Minnesota Supreme Court explained in *Gray*, the learned intermediary doctrine "do[es] not alter common law principles of . . . causation but instead describe[s] the application of those principles to various sets of fact patterns."  676 N.W.2d at 275.[4]

---

[4] *See also Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 166 (Tex. 2012) (explaining that the "learned intermediary doctrine is more akin to a common-law rule rather than an affirmative defense[,]" and while the "doctrine shifts the manufacturer's duty to warn the end user to the intermediary, it does not shift the plaintiff's basic burden of proof").

Second, because the learned intermediary doctrine is not an affirmative defense, a separate jury instruction on the doctrine was not warranted. *See* Doc. 8269 at 18. Instead, the Court concluded that it should simply instruct the jury on the failure to warn or instruct claim, explaining that a manufacturer of medical devices satisfies its duty by providing adequate warnings or instructions to the plaintiff's physician. *See* Doc. 8378 at 18.

Third, the Court concluded that the learned intermediary doctrine applies to Plaintiff's alternative theory that Defendants failed to instruct Plaintiff and Ms. Potter on the proper procedures for de-accessing Plaintiff's port. Plaintiff was unable to identify any Minnesota case that has recognized a claim against a medical device manufacturer for failure to warn or instruct the patient directly. Minnesota courts uniformly hold that a manufacturer discharges its duty to warn or instruct when it provides adequate warnings or instructions to the patient's physician. *See, e.g.*, *Mulder*, 181 N.W.2d at 885 ("The manufacturer has no duty to warn the lay public[.]"); *Gray*, 676 N.W.2d at 276 (discussing "the failure of a drug manufacturer to warn a physician of the dangers of a drug"); *Walsh v. Upsher-Smith Lab'ys, Inc.*, No. A23-0060, 2023 WL 6387233, at *6 (Minn. Ct. App. Oct. 2, 2023) ("Minnesota has recognized the 'learned-intermediary defense,' whereby a drug manufacturer 'is not liable if the [prescribing physician] was fully aware of the facts which were the subject of the warning[.]" (citations omitted)); *Kapps*, 813 F. Supp. 2d at 1152 ("[T]he learned-intermediary doctrine forecloses a patient's failure-to-warn claim if a drug company or medical-device manufacturer provides an adequate warning to the patient doctor.").[5]

---

[5] In *Bigler-Engler v. Breg, Inc.*, 213 Cal. Rptr. 3d 82, 119-20 (Cal. App. 2017), the court declined to apply the learned intermediary doctrine because the patient was required to use the medical device herself. *See* Doc. 8125 at 18 (citing *Bigler-Engler*, 213 Cal. Rptr. 3d at 119-20). But *Bigler-Engler* concerned a medical product used at home, and made clear that the learned intermediary doctrine applies to all *implantable* medical devices. 213 Cal. Rptr. 3d at 119 ("The learned intermediary doctrine, as this rule is known, has been extended in California to implantable medical devices in addition to prescription drugs. In the case of *prescription drugs* and *implants*, the physician stands in the shoes of the ordinary user because it is through the physician that a patient learns of the properties and proper use of the drug or implant. Thus, the duty to warn in these cases runs to the physician, not the patient." (citations and internal quotation marks omitted)).

Plaintiff contended that Defendants undertook a duty to provide warnings and instructions directly to patients when it provided the Patient Guide.  Doc. 7932 at 131.  Plaintiff asserted that, under Minnesota law, one who speaks takes on a duty to speak completely and in a non-misleading way.  *Id.*  But Plaintiff acknowledged that this duty related to his fraud and misrepresentation claims.  *Id.*  Plaintiff has identified no Minnesota law imposing a duty on manufacturers of implantable medical devices to provide warnings and instructions directly to patients (or their spouses or caregivers).[6]

### B.     Consumer Fraud Claims.

Defendants separately objected to the proposed final jury instructions on Plaintiff's consumer fraud and unlawful trade practices claims.  They argued that claims under the Consumer Fraud Act ("MCFA") and Unlawful Trade Practices Act ("MUTPA") require a showing of reliance on the misrepresentation, citing *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2 (Minn. 2001).  Because *Group Health* applies equally to Plaintiff's MCFA and MUTPA claims, the Court refers to both claims collectively as consumer fraud claims.[7]

Under *Group Health*, reliance is not an element of a consumer fraud claim seeking damages that is brought via the private attorney general statute.  *Grp. Health Plan, Inc.*, 621 N.W.2d at 13 ("[T]he legislature has eliminated the requirement of pleading and

---

[6] Defendants objected that there is no separate duty to instruct under Minnesota law.  But the Minnesota Supreme Court has "described the duty to warn as consisting of 'two duties: (1) [t]he duty to give adequate instructions for safe use; and (2) the duty to warn of dangers inherent in improper usage.'" *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 582 (Minn. 2012) (quoting *Frey v. Montgomery Ward & Co.*, 258 N.W.2d 782, 787 (Minn.1977)); *see also Gray v. Badger Min. Corp.*, 676 N.W.2d 268, 274 (Minn. 2004) ("The duty to warn includes the duty to give adequate instructions for the safe use of the product.") (citing *Frey*, 258 N.W.2d at 787).  Further, the standard Minnesota jury instruction includes both "warnings" and "instructions."  4A Minn. Prac., Jury Instr. Guides–Civil CIVJIG 75.25 The Duty to Warn (6th ed.); *see also* CIVJIG 75.26 Sophisticated Intermediaries (noting that "[t]he obligation to warn also includes the duty to provide 'adequate instructions for the safe use of the product'") (quoting *Gray*, 676 N.W.2d at 274).  The Court concluded that a manufacturer's duty to instruct, like a manufacturer's duty to warn, is subject to the learned intermediary doctrine.

[7] *See Grp. Health*, 621 N.W.2d at 11 (answering "whether a plaintiff must plead and prove reliance on the defendant's alleged misrepresentations in order to recover damages under Minn. Stat. § 8.31, subd. 3a, for violation of Minn. Stat. §§ 325F.67, 325F.69, subd. 1 [MCFA], or 325D.13 [MUTPA]").

6

proving traditional common law reliance as an element of a statutory misrepresentation in sales action[.]"). Causation, however, remains an element of the claim. A plaintiff must show a "causal nexus" between the misrepresentation and the alleged damages, and this causal nexus has a "component of reliance[.]" *Id.* at 14-15.[8]

Plaintiff did not bring his consumer fraud claims under the private attorney general statute, which contains the "injured by" language that *Group Health* found to impose a requirement of causation in consumer fraud claims. *See id.* at 13. Plaintiff instead brought his claims under the private enforcement subdivisions of the MUTPA and MCFA. *See* Minn. Stat. §§ 325D.15, 325F.70. These private enforcement subdivisions contain language that is identical or comparable to the "injured by" language of the private attorney general statute that *Group Health* found to impose a causation requirement. *See* §325D.15 ("injured by"); § 325F.70 ("damaged . . . by"). Plaintiff must therefore prove causation.

Turning to Defendants' objection, the Court notes that *Group Health* adopted a lower reliance standard for consumer fraud claims brought by third party organizations for misrepresentations made to mass consumers, where proof of actual reliance would be unfeasible. *See id.* at 15 ("[W]e are confident that the legislature would not have authorized private damages actions such as this, where the alleged misrepresentations are claimed to have affected a large number of consumers, while retaining a strict burden of proof that depends on evidence of individual consumer reliance."). Proof of actual reliance under the facts of Plaintiff's consumer fraud claims is similarly unfeasible. The claims did not arise from a consumer sale directly from Defendants to Plaintiff. Rather, they are predicated on Defendants' sale of the port catheter to Plaintiff's physician's hospital system. Representations regarding the port catheter were made to the treating physician and his employing hospital. Requiring Plaintiff to prove that he actually relied on representations

---

[8] Minnesota courts have not defined "causal nexus." The consumer fraud model jury instruction defines causation as the misrepresentation playing a "'substantial part' in bringing about the plaintiff's injury." CIVJIG 57.40 Use Note. The Court's instructions on Plaintiff's MCFA and MUTPA claims required "direct cause" (Doc. 8378 at 19-20), which in turn was defined as "a cause that had a substantial part in bringing about the injuries" (*id.* at 21). Neither party objected.

he never received would hamstring his claims. And such a barrier would conflict with *Group Health*'s clear intent: to lower the burden of consumer fraud claims to ensure a broader recovery for consumers than is available through common law fraud. *See* 621 N.W.2d at 14-15. Plaintiff, as a consumer entitled to protection under the consumer fraud statutes, should not be held to a higher burden than the third-party organizations who brought the consumer fraud claims in *Group Health*.

Defendants point to the Minnesota model jury instruction on consumer fraud to support their argument that Plaintiff must prove reliance. Doc. 7932 at 77. That model instruction states that in some cases a plaintiff must show he "relied and acted on" the misrepresentation. *See* CIVJIG 57.40. But the model instruction is not controlling for several reasons. First, model instructions are not law. Second, the model instruction encompasses all Minnesota consumer fraud statutes and is not specific to Plaintiff's claims under the MCFA and MUTPA. Third, the model instruction does not cite any case or authority to support its assertion that some consumer fraud claims require a finding of actual reliance. Fourth, the use note to the model instruction explains that the "relied and acted on" language is only "appropriate for cases in which the trial court has determined proof of actual reliance will be required." CIVJIG 57.40 Use Note. As discussed above, the Court finds proof of actual reliance is not appropriate here. The Court accordingly rejected Defendants' argument that Plaintiff must prove reliance as an element of his MCFA and MUTPA claims.

Dated this 15th day of May, 2026.

David G. Campbell
Senior United States District Judge