**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE:  Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| | **CASE MANAGEMENT ORDER NO. 48** |
| | **(Number of Bellwether Trials)** |

On May 7, 2026, while the jury in the Cook bellwether trial was deliberating, the Court held a conference with defense counsel and lead Plaintiffs' counsel on the question of whether a sixth bellwether trial should be scheduled in this MDL litigation.  *See* Doc. 8385.  The Court initially identified six bellwether cases for trial, including Wanda Miller's case.  Doc. 3513.  Sadly, Ms. Miller recently passed away.  Her family has elected not to continue with the litigation.  The question, therefore, is whether the alternate case identified in the Court's original bellwether order – the claims of Peter James – should be moved into a sixth bellwether slot and scheduled for trial in 2027.

Plaintiffs' counsel argued that the James case should be scheduled for trial.  They noted that Mr. James alleges his Bard port catheter fractured after it was implanted at the internal jugular location.  Plaintiffs' counsel stated that the only other fracture case among the bellwether trials – brought by Kimberly Divelbliss – involves a subclavian placement of the port – a location which raises a significant defense argument that the fracture resulted from improper implantation or from a phenomenon known as pinch-off.  Mr. James' case

1

does not present this issue and therefore, Plaintiffs believe, would provide a valuable data point in the parties' overall valuation of the MDL cases.

Defendants oppose designating the James case for trial and instead propose that we hold only five bellwether trials in this MDL. Defense counsel noted that Mr. James' case, like that of Ms. Divelbliss, involves a Bard silicone Groshong catheter with a fracture. Defense counsel argued that a case to be tried in Arizona state court in August of this year, like the James case, concerns a catheter fracture with an internal jugular placement and will provide a data point for evaluating jugular fracture cases.

Defense counsel further asserted that Defendants incurred more than $1million in preparing the Miller case for trial, and that preparing the James case for trial would cost even more. They argued that 8 to 10 treating physicians and four family members would need to be deposed; 8 to 10 case-specific experts would need to be retained, prepare reports, and be deposed; and Rule 702 motions would need to be briefed for each of these experts, in addition to cross motions for summary judgment. Plaintiffs counsel did not disagree with these James trial-preparation estimates by Defendants.

Defense counsel also argued that fracture cases comprise only 12% of the current MDL inventory. Trying two fracture cases would mean that 33% of the bellwether trials – and substantial expense – would be devoted to only 12% of the MDL inventory, a serious over-designation of fracture cases.

After considering parties' arguments, the Court concludes that a sixth bellwether trial should not be scheduled. The Court's original objective was to resolve the bellwether trials in this MDL by the end of 2026. That schedule had to be pushed back several months when the parties filed 32 Rule 702 motions and 10 motions for summary judgment, comprising more than 2,000 pages of briefing. To allow time to decide these motions, the bellwether trials were postponed and will not be completed until February 2027.

The Court could not try a sixth bellwether trial in March or April of 2027 because of a substantial criminal trial scheduled for March 20 to April 14, 2027. Nor could the Court try a bellwether trial in May of 2027 given other obligations. As a result, a sixth

bellwether trial would push the resolution of the bellwether trials into June or July of 2027, well beyond the Court's original objective.  Nor can the Court justify requiring Defendants to spend more than $1 million in additional trial preparation expenses for a second fracture case when only 12% of the MDL involves fractures.

The five scheduled bellwether trials will provide a meaningful and representative test of the claims and defenses in this MDL.  As in the previous Bard MDL, cases that are not resolved by settlement after these bellwethers, and within a schedule to be set by the Court, will be transferred or remanded to their home districts for resolution.

Dated this 19th day of May, 2026.

David G. Campbell
Senior United States District Judge