**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| _____ | |
| Kimberly Divelbliss, | No. CV-23-01627-PHX-DGC |
| Individual Plaintiff, | |
| v. | **ORDER RE FDA EVIDENCE** |
| Becton Dickinson and Company, et al., | |
| Defendants. | |

Plaintiff's Motion in Limine 1 asks the Court to exclude all evidence and argument about the FDA, including § 510(k) clearance of the port catheter at issue in this case. Doc. 9039.  The parties argued this issue at the final pretrial conference.  *See* Doc. 9565.

In the IVC MDL litigation overseen by the undersigned judge, evidence of FDA clearance of the blood filter at issue was admitted during trial.  *In re Bard IVC Filters Prods. Liab. Lit., Sherr-Una Booker*, 289 F. Supp. 3d 1045 (D. Ariz. 2018) ("*Booker*"). The Court concluded that the relevancy of the evidence was not outweighed by the danger of unfair prejudice.  *Id.* at 1048-49.  Several courts have followed this decision, while several others have excluded evidence of 510(k) clearance in medical product litigation.

1

Three federal courts of appeal have affirmed exclusion of FDA evidence in such cases. *See Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1018 (7th Cir. 2020); *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1318-19 (11th Cir. 2017); *In re C.R. Bard*, 810 F.3d 913, 922 (4th Cir. 2016). The Court excluded FDA evidence in the *Cook* bellwether trial conducted earlier this year. Doc. 8076.

This is a close evidentiary question, as it was in the IVC litigation and *Cook*. In this case, however, the Court finds that evidence of the port catheter's § 510(k) clearance is relevant for the same reasons it was relevant in *Booker*.

*Booker* was governed by Georgia law, which provided that the jury could consider "the manufacturer's compliance with federal regulations" in deciding whether the manufacturer acted reasonably. 289 F. Supp. 3d at 1047. Given this Georgia law, "the Court [found] that evidence of Bard's compliance with the 510(k) process, while certainly not dispositive, [was] nonetheless relevant to the reasonableness of Bard's conduct and whether the company defectively designed the G2 filter." *Id.*

This case is governed by New Mexico law. It too makes compliance with applicable regulations a relevant factor in negligence and strict liability design defect cases. New Mexico Uniform Jury Instruction ("UJI") 13-1405 addresses negligence and UJI 13-1408 addresses strict product liability. Both instructions inform the jury that the defendant's compliance with regulations is a relevant consideration, but not controlling. In *Brooks v. Beech Aircraft Corp.*, 902 P.2d 54 (N.M. 1995), the New Mexico Supreme Court cited these instructions favorably:

> The general instruction on ordinary care in products liability actions, UJI 13-1405, provides in relevant part: "Industry customs [standards] [codes] [rules] are evidence of ordinary care, but they are not conclusive." Similarly, the general instruction on unreasonable risk provides: "Industry customs [standards] [codes] [rules] are evidence of the acceptability of the risk, but they are not conclusive." UJI 13-1408. These instructions should be given in cases involving a claimed defect in design.

*Id.* at 64.

Other New Mexico cases reach the same conclusion.  *See, e.g.*, *Hauck v. Wabash Nat'l Corp.*, No. CV 18-471 KG/LF, 2021 WL 949740, at \*3 (D.N.M. Mar. 12, 2021) (finding that "industry regulations and standards are probative of what a reasonably prudent manufacturer would do") (cleaned up); *Rivera v. Volvo Cars of N. Am.*, No. 13-00397 KG/KBM, 2016 WL 7383321, at \*5 (D.N.M. 2016) ("In New Mexico, evidence the jury may consider to determine whether a risk of injury is acceptable to a reasonably prudent person includes . . . [c]ompliance with industry customs, standards, rules, or governmental rules or standards.") (citing UJI 13-1408); *Pac. Indem. Co. v. Therm-O-Disc, Inc.*, 476 F. Supp. 2d 1216, 1226-27 (D.N.M. 2006) ("The fact that Square D may have complied with all industry standards and regulations is certainly evidence of the acceptability of the risk of injury to a reasonably prudent person; however, it is not conclusive as to the acceptability of the risk for a product liability claim.").

Citing *Brooks*, Plaintiff argues that this New Mexico case law applies only to substantive design and safety standards, not to standards such as FDA's section § 510(k) clearance procedures. The trial court in *Brooks* granted summary judgment for the defendant because the plaintiff could not show the defendant violated industry standards or regulations.  902 P.2d at 55.  On appeal, the New Mexico Supreme Court held that such proof was not necessary to establish negligence or strict liability.  It explained that industry regulations are relevant to a consideration of such claims, but not controlling.  *Id.* at 64. *Brooks* specifically stated that UJI 13-405 and UJI 13-408 should be given in design defect cases.  *Id.*  While it is true that the regulations at issue in *Brooks* – which did not exist at the time of the subject airplane's design – were substantive design regulations, the New Mexico Supreme Court did not rely on this fact when it held that regulations are relevant in design defect cases.  *Id.*  Nor do the cases cited above make this distinction.

Compliance with FDA regulations is also relevant, though not dispositive, on the issue of punitive damages. *See Gonzales v. Surgidev Corp.*, 899 P.2d 576, 591 (N.M. 1995) ("Surgidev's evidence of compliance with FDA regulations was properly submitted to the jury for consideration in determining whether Surgidev acted recklessly in failing to warn of problems with the Style 10 when implanted using the ICCE procedure.").  And

3

Defendants intend to present evidence of their post-market surveillance of products and communications with FDA about that surveillance, in part to rebut Plaintiff's claim for punitive damages.[1]

For these reasons, the Court concludes that FDA evidence, including Defendants' compliance with section § 510(k), is relevant to Plaintiff's design defect claims under New Mexico law.

Plaintiff argues the evidence should nonetheless be precluded under Rule 403 because the risk of unfair prejudice would substantially outweigh its probative value. Specifically, Plaintiff argues the evidence could lead a jury to treat the FDA evidence as a stamp of safety, and that dispelling such an incorrect conclusion would consume an inordinate amount of trial time. Doc. 9039 at 4. The Court disagrees for reasons stated in *Booker*. 289 F. Supp. 3d at 1049-50.

Both sides, through appropriate expert testimony or other admissible evidence, will be permitted to tell the jury about the regulatory clearance process for port catheters, Bard's participation in the § 510(k) process, and its compliance (or lack thereof) with that process. Defendants will not, however, be permitted to present evidence or argument that the FDA "approved" the subject port for market or that clearance of the device under § 510(k) review constitutes a finding by the FDA that the filter is safe and effective. As relevant FDA regulations explain: "Any representation that creates an impression of official approval of a device because of complying with the [§ 510(k)] premarket notification regulations is misleading[.]" 21 C.F.R. § 807.97. Plaintiffs will be free to present evidence and argument that the § 510(k) process is a comparative one that requires only substantial equivalence to a predicate device. Moreover, any potential confusion can be avoided by a limiting instruction regarding the nature of the § 510(k) process, as the Court gave in the *Cook* trial.

---

[1] Defendants may also seek to argue that the lack of FDA market action regarding the port catheters suggests they are safe and effective. The Court has previously expressed doubt about this argument, noting that the FDA could have many reasons for not taking action with respect to a product on the market. If Defendants intend to present such arguments, they should first raise the issue with the Court outside the hearing of the jury.

4

The Court is also convinced that efficient management of the evidence and adherence to the Court's time limits will avoid any risk of unnecessary or time-consuming mini-trials.

Defendants have suggested they may argue § 510(k) clearance includes a safety component, and that clearance means the device is as safe and effective as its predicate device.  The Court has concerns about these arguments.

First, the Supreme Court has made clear that § 510(k) is not a safety review.  In *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 318 (2008), the Court explained that "§ 510(k) is focused on equivalence, not safety, [while] premarket approval is focused on safety, not equivalence." *Id.* at 323 (cleaned up).  It noted that "devices that enter the market through § 510(k) have never been formally reviewed under the MDA for safety or efficacy[.]" *Id.* (cleaned up).

Second, arguing that a device is as safe and effective as a predicate device on the market means little or nothing if the predicate device was also cleared under § 510(k) and has never undergone an FDA safety review.

The parties should be prepared to address these concerns at trial if Defendant seeks to present evidence or argument that § 510(k) clearance includes a safety component and means the device is as safe and effective as its predicate device.

**IT IS ORDERED** that Plaintiff's Motion in Limine 1 (Doc. 9039) is **denied**.

Dated this 20th day of July, 2026.

David G. Campbell
Senior United States District Judge

5