**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

IN RE: Bard Implanted Port Catheter Products Liability Litigation

MDL No. 3081

Kimberly Divelbliss,

Individual Plaintiff,

vs.

Becton Dickinson and Company, et al.,

Defendants.

No. CV-23-01627-PHX-DGC

**ORDER**

During the course of the Divelbliss bellwether trial, Plaintiff sought to introduce medical invoices from various medical facilities where she received treatment. Plaintiff contends that these invoices, which total $1,521,442.88, reflect treatment caused by Defendants' wrongful conduct. The medical facility invoices are contained in Trial Exhibit 606, and a summary of the invoices is contained in Trial Exhibit 609B. Beginning on the morning of August 21, 2026, and continuing over the course of several subsequent discussions with counsel on the record, the Court has concluded that the charges in the medical facility invoices cannot be recovered as damages in this case without expert testimony. This order will summarize the Court's reasons for this ruling.

**A. New Mexico Law.**

New Mexico law requires that the reasonableness of medical expenses, when sought as damages, be established through expert testimony. A series of decisions by the New

Mexico Court of Appeals has established this rule. *See Segura v. K-Mart Corp.*, 62 P.3d 283, 290 (N.M. Ct. App. 2002) ("As we clarified in *Padilla*, a plaintiff seeking admission of medical bills must . . . establish through expert testimony that medical bills are reasonable[.]" (citing *Padilla v. Hay*, 900 P.2d 969, 971 (N.M. Ct. App. 1995))); *Nelson v. Albuquerque Bernalillo Cnty. Water Util. Auth.*, No. A-1-CA-36495, 2020 WL 1815965, at *5 (N.M. Ct. App. Mar. 11, 2020) ("Plaintiffs contend that no expert testimony was necessary to introduce Mrs. Nelson's medical bills. The law is clear that 'a plaintiff seeking admission of medical bills must . . . establish through expert testimony that medical bills are reasonable[.]'" (quoting *Segura*, 62 P.3d at 290)); *Garcia v. DeLeon*, No. A-1-CA-41324, 2025 WL 3298036, at *2 (N.M. Ct. App. Nov. 26, 2025) (citing *Segura* and explaining that the plaintiff "had the burden of demonstrating, through expert testimony, that her medical expenses were reasonable").

This ruling has also been applied by the federal district court in New Mexico. *See Pena v. Hawes*, No. CV 12-0622 WPL/RHS, 2014 WL 11512592, at *1 (D.N.M. Apr. 17, 2014) ("A party seeking to admit medical bills must not only lay a foundation that establishes an exception to the hearsay rule, that party must also establish through expert testimony that the medical bills are reasonable[.]" (citing *Segura*, 62 P.3d at 289; *Padilla*, 900 P.2d at 972)).

Plaintiff argues that this case law represents an incorrect interpretation of the New Mexico Court of Appeals' decision in *Padilla*. *Padilla* held that the medical invoices before it were hearsay, and noted that the party presenting them had an expert ready to testify about their reasonableness if they were admitted. 900 P.2d at 971 ("The contents of the medical bills that Padilla wanted to offer through Dr. Goldman are statements that were made out of court. Padilla offered them so that Dr. Goldman could express his opinion regarding the reasonableness of the charges stated in the bills."). Thus, an expert witness was available and ready to testify in *Padilla*. But even if the New Mexico Court of Appeals overstated the holding of *Padilla* when it decided the *Segura* case seven years later, this Court cannot conclude that *Segura* is an invalid statement of New Mexico law. Two of the

judges on the *Padilla* case, including *Padilla*'s author, were on the three-judge panel that decided *Segura*. Moreover, the decision in *Segura* has been followed in subsequent New Mexico Court of Appeals decisions. *See Nelson*, 2020 WL 1815965, at *5; *Garcia*, 2025 WL 3298036, at *2. The Court cannot accept Plaintiff's invitation to disregard this line of cases because she believes the second case in the line, *Segura*, misinterpreted the first case in the line, *Padilla*. Indeed, when asked to change this rule, the Court of Appeals in *Nelson* said "[w]e decline to depart from precedent[.]" *Nelson*, 2020 WL 1815965, at *5.

The New Mexico Supreme Court has not addressed this issue, and Plaintiff argues that this Court is not bound by decisions of an intermediate appellate court in New Mexico. This is true, but the Court's task is to predict how the New Mexico Supreme Court would rule on this question. Decisions of the New Mexico Court of Appeals are relevant authority on this point. *See Mares-Moreno v. Singh*, 278 F. Supp. 3d 1223, 1237 (D.N.M. 2017) (explaining that federal courts "may and will consider the Court of Appeals' decision in making its determination" (citation omitted)); *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007) ("Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. In doing so, it may seek guidance from decisions rendered by lower courts in the relevant state[.]" (citations omitted)). Furthermore, the expert requirement established in *Segura* has stood for twenty-four years without change by the New Mexico Supreme Court. The Court finds that the *Segura* line of cases represents the best indication of how the New Mexico Supreme Court would rule on this issue, and therefore concludes that an expert witness is needed in this case to establish the reasonableness of the medical invoices.

Plaintiff notes that the New Mexico Committee on the Rules of Evidence has proposed an amendment to the rules that would eliminate this requirement. This proposed rule has been published for public comment and has received positive and negative responses.[1] Under New Mexico rule making procedures, the evidence committee is now

---

[1] *See* Proposed Revisions to the Rules of Evidence Proposal 2026-022 (Mar. 6, 2026), https://supremecourt.nmcourts.gov/wp-content/uploads/sites/2/2026/04/Proposal-

charged with evaluating the public comments and making a recommendation to the New Mexico Supreme Court. Plaintiff has not cited, and the Court has not found, any recommendation from the evidence committee. And the New Mexico Supreme Court has not approved the rule. This Court cannot conclude that the committee's recommendation is a stronger indication of how the New Mexico Supreme Court would rule than the established line of Court of Appeals decisions.[2]

**B. Dr. Dim.**

Dr. Dim is Plaintiff's cardiologist and has provided much of the treatment Plaintiff claims was required by Defendants' wrongful conduct. Dr. Dim has treated Plaintiff for several years, performing four ablations, prescribing heart rhythm medication, and implanting a pacemaker. Plaintiff originally proposed that Dr. Dim opine on the reasonableness of his own medical invoices, which the Court allowed, and that he also opine on the reasonableness of the medical facility invoices. Unlike his own invoices, Dr. Dim did not issue medical facility invoices – they were issued by a medical facility where Plaintiff was admitted and received treatment. The Court ruled that Dr. Dim could not opine on the reasonableness of the medical facility invoices.

Plaintiff contends that Dr. Dim is a sufficient expert to testify on the reasonableness of the medical facility invoices. The Court is doubtful, given that the invoices were issued by a medical facility where Plaintiff was admitted, not Dr. Dim's office. But even if this is true, Dr. Dim was not properly disclosed as an expert on these issues.

In *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011), the Ninth Circuit held that a non-retained expert, such as a treating physician, can testify about opinions formed during the course of treating the plaintiff without producing an expert report under Rule 26(a)(2)(B). *Id.* at 826. But if a treating physician is asked to

2026-022-Medical-Billing-comments-begin-on-p.-4.pdf.

[2] Plaintiff's citation of *Scott v. Transwestern Tankers, Inc.*, 387 P.2d 327 (N.M. 1963), is not persuasive because that case involved a workmen's compensation claim and has not, in the intervening 63 years, been expanded to include personal injury cases.

render opinions that were not developed during the course of treatment, the expert must produce a written report. *Id.*

The Court specifically warned Plaintiff of this requirement early in this litigation. In Case Management Order No. 9, the Court specifically called the parties' attention to the *Goodman* case and advised them that treating physicians and similar non-retained experts would need to produce expert reports for any opinions that were not formed during the course of treatment. Doc. 114. The Court's order stated:

> In *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011), the Ninth Circuit held that 'a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment.' Thus, for opinions formed outside the course of treatment, Rule 26(a)(2)(B) written reports are required. *Id.* For opinions formed during the course of treatment, Rule 26(a)(2)(C) disclosures will suffice.

*Id.* at 3 n.1. Thus, Plaintiff was well aware of the requirement that Dr. Dim produce an expert report for opinions formed outside the course of his treatment.

Plaintiff provide no evidence that Dr. Dim formed his opinion about the reasonableness of the medical facility invoices during the course of treating Plaintiff. Rather, Plaintiff's counsel stated that Dr. Dim reviewed the medical facility bills shortly before this trial. Thus, any opinion he formed on the reasonableness of the medical facility invoices were formed after his treatment of Plaintiff and must have been disclosed in a Rule 26(a)(2)(B) expert report under *Goodman* and CMO 9.

Because Dr. Dim failed to produce a report, he cannot testify about the reasonableness of the medical facility invoices unless the failure to produce a report is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The failure is not substantially justified because the Court specifically advised Plaintiff, long before this trial, about the *Goodman* case and the need for non-retained experts to produce reports in circumstances like this. It is not harmless because Defendants received no disclosure of Dr. Dim's medical-invoice opinions and have made clear they believe that many of the medical

invoices relate not to injuries allegedly caused by Defendants' product, but to Plaintiff's other medical conditions. Because Dr. Dim provided no report explaining the basis for his opinion, Defendants had no opportunity to depose him on the medical-invoice opinions, prepare for cross-examination, or designate a counter-expert. The Court accordingly precluded Plaintiff from using Dr. Dim as an expert on this subject under Rule 37(c)(1).

**C. Procedural Versus Substantive Law.**

Plaintiff argues that the Court need not apply the New Mexico expert witness requirement under the *Erie* doctrine because the requirement is procedural, not substantive. The Court does not agree.

The court which has spoken most directly on this issue is the Fifth Circuit. "The law governing what damages are recoverable is substantive, and therefore . . . state law 'governs . . . the manner in which those damages must be proved[.]'" *Vinales v. AETC II Privatized Hous., L.L.C.*, 146 F.4th 434, 446 (5th Cir. 2025) (quoting *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 398 (5th Cir. 2013)); *see also Wackman v. Rubsamen*, 602 F.3d 391, 400 n.2 (5th Cir. 2010) ("Federal courts look to state law . . . to determine the general *kind* of evidence necessary to establish a particular state law cause of action." (citations omitted)). Thus, "whether damages require direct proof or allow circumstantial evidence, or require expert testimony or allow anecdotal evidence, is determined . . . [by] state law." *Vinales*, 146 F.4th at 446 n.14. Other federal courts agree with the Fifth Circuit. *See Poulter v. Cottrell, Inc.*, No. 12-CV-1071, 2016 WL 7451630, at *2 (N.D. Ill. Dec. 28, 2016) ("The Seventh Circuit has also accepted state law as controlling other evidentiary questions in products liability cases, such as whether a defect can be proved by circumstantial evidence. *See, e.g.*, *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 604-05 (7th Cir. 2016). Other circuits have also applied state law to determine whether expert testimony is required. *See, e.g.*, *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 532 (6th Cir. 2012)."); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 227 F. Supp. 3d 452, 467-69 (D.S.C. 2017) ("Like other federal courts that have addressed the issue, this Court finds that a state

law requirement that expert testimony is necessary to establish a particular element of a cause of action . . . is a statement of state substantive policy[.]" (citations omitted)); *Milam v. State Farm Mut. Auto. Ins.*, 972 F.2d 166, 170 (7th Cir. 1992) ("[W]here a state in furtherance of its substantive policy makes it more difficult to prove a particular type of state-law claim, the rule by which it does this, even if denominated a rule of evidence or cast in evidentiary terms, will be given effect in a diversity suit as an expression of state substantive policy." (citations omitted)); *see also Duke v. Garcia*, No. 11-CV-784-BRB/RHS, 2014 WL 1333151, at *1 n.1 (D.N.M. Feb. 28, 2014) (applying New Mexico law requiring expert testimony to establish medical causation); *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-1928, 2013 WL 1343529, at *3 n.5 (S.D. Fla. Apr. 2, 2013) (same under New York law); *Root v. Tempe St. Luke's Hosp.*, 368 Fed. Appx. 848, 848-49 (9th Cir. 2010) (same under Arizona law).

Plaintiff's citation to *Feldman v. Allstate Ins. Co.*, 322 F.3d 660 (9th Cir. 2003), is not persuasive. *Feldman* explained that while most evidentiary rules are procedural in nature, "the Federal Rules do not supplant '*all* state law evidentiary provisions with federal ones.' Rather, state evidence rules that are 'intimately bound up' with the state's substantive decision making must be given full effect by federal courts sitting in diversity." *Id.* at 666-67 (holding that California Penal Code § 632, which limits admissibility of illegally intercepted conversations, was an exception to the general rule that the Federal Rules govern the admissibility of evidence in diversity cases because the statute embodies a state substantive interest in the privacy of California citizens); *see also Sims v. Great Am. Life Ins.*, 469 F.3d 870, 880 (10th Cir. 2006) ("The admissibility of evidence in diversity cases in federal court is generally governed by federal law. Nevertheless, it is well recognized that Congress did not intend the procedural rules to preempt the so-called substantive state rules of evidence . . . . [A]lthough the application of these rules will affect the admissibility of some evidence, they in reality serve substantive state policies[.]" (citation omitted)); *State ex rel. Gesswein v. Galvan*, 676 P.2d 1334, 1337 (N.M. 1984) ("There may be areas in which procedural matters so closely border upon substantive rights

and remedies that legislative enactments with respect thereto would be proper. No specific definition can be stated which would clearly delineate the distinction. Each case must be determined upon its own circumstances." (citation omitted)).

The Court concludes that the New Mexico requirement that the reasonableness of medical expenses be established through expert testimony is substantive, not procedural. Like many of the cases cited above, the Court finds the expert testimony requirement to be more than a procedural step on the road to damages – it actually raises the level of proof that must be presented before medical expenses are recovered. It is a policy statement that more than lay opinion is needed to show that medical invoices – which can often be complicated and difficult to understand – are reasonable.

### D. The Custodian of Records Affidavit.

Plaintiff notes that the medical facility invoices are accompanied by an affidavit of a custodian of records authenticating them as facility invoices and stating that the charges are reasonable and necessary. Trial Ex. 606. Plaintiff argues that this affidavit can satisfy the expert witness requirement of New Mexico law. The Court does not agree.

#### 1. The Affidavit is Inadmissible Hearsay.

The affidavit is an out-of-court statement offered for the truth of the matter asserted. Plaintiff argues that it is admissible under Federal Rule of Evidence 807, but the Court is not persuaded.

First, Rule 807 applies only if the affidavit is more probative on the point for which it is offered than any other evidence Plaintiff could "obtain through reasonable efforts." Fed. R. Evid. 807(a)(2). Plaintiff could have, through reasonable efforts, obtained an expert witness to testify to the reasonableness of the invoices.

Second, Rule 807 applies only if the affidavit is supported by sufficient guarantees of trustworthiness. Fed. R. Evid. 807(a)(1). Defendants vigorously contend that many of the medical invoices are not related to Plaintiff's heart issues, and the affidavit contains no indication of the qualifications of the declarant or how he determined the bills are

reasonable. These key issues, which would be necessary for the trustworthiness of this declaration, are entirely missing from the affidavit.

Third, Plaintiff did not give written notice before trial of its intent to use the residual exception, as required by Rule 807(b), and the Court cannot find good cause to excuse the lack of pretrial notice.

**2. The Affidavit Does Not Satisfy New Mexico Law.**

Even if the affidavit was admitted under Rul 807, it provides no indication that the declarant is an expert as required by New Mexico law. Plaintiff has provided no information regarding his expertise, and if he were to be treated as an expert, he would need to have been disclosed by Plaintiff under Rule 26, which did not occur.

Plaintiff argues that a Texas statute, Tex. Civ. Prac. & Rem. Code § 18.001, not only makes the affidavit admissible in court, but also elevates it to the level of expert evidence. But in addition to the fact that this case is governed by New Mexico law, the Texas statute makes clear that the affidavit is not treated as coming from an expert, even in Texas. Before § 18.001's enactment, the "reasonableness of medical expenses could be proven [in Texas] only by expert testimony even if the amount was undisputed." *Ortiz v. Nelapatla*, 734 S.W.3d 400, 405 (Tex. 2026) (citation modified). The Texas legislature passed § 18.001 "to streamline that process by allowing a party to *avoid adducing expert testimony* on those issues at trial through pretrial service of affidavits containing evidence sufficient to support the claimed costs." *Id.* at 405-06 (emphasis added). Section 18.001 allows a party to serve an affidavit made by a "*non-expert custodian*" testifying that "the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary[.]" *Vansill v. Dollar Tree Stores, Inc.*, 520 F. Supp. 3d 847, 851 (E.D. Tex. 2021) (emphasis added); § 18.001(b), (c)(2).

What is more, § 18.001 allows an opposing party to serve a counteraffidavit, but unlike the initial affidavit, the counteraffidavit must be made by an expert – that is, "a person who is qualified, by knowledge, skill, experience, training, education, or other expertise, to testify in contravention of . . . the initial affidavit." § 18.001(f). When a

counteraffidavit challenges a medical expense, the initial affidavit "is no longer sufficient evidence to support a finding of reasonableness and . . . expert testimony is required to support such a finding." *Ortiz*, 734 S.W.3d at 406; *see also In re Chefs' Produce of Houston, Inc.*, 667 S.W.3d 297, 301 (Tex. 2023) ("In the face of a compliant counteraffidavit, the claimant may not reach the jury on the reasonableness and necessity of her medical expenses without expert testimony."). Clearly, an initial affidavit served pursuant to § 18.001 is not treated as coming from an expert. Indeed, the entire purpose of the statute is to allow a party to avoid obtaining expert testimony. *See Ortiz*, 734 S.W.3d at 406.

The Court also notes that Plaintiff did not follow the Texas statute's notice procedure in this case, which would have given Defendants an opportunity to serve a counteraffidavit and force Plaintiff to use an expert witness.

**E. Conclusion.**

For all these reasons, the Court concludes that the medical facility invoices and their summary cannot be used to prove Plaintiff's damages in this trial.

Dated this 31st day of August, 2026.

David G. Campbell

David G. Campbell
Senior United States District Judge