**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| Judy Hicks, Individual Plaintiff, v. Becton Dickinson and Company, et al., Defendants. | No. CV-23-01703-PHX-DGC<br>**ORDER**<br>**Darren R. Hurst, M.D.** |

This multidistrict litigation ("MDL") involves thousands of personal injury cases related to implanted port catheters ("ports") designed, manufactured, and marketed by Defendants Becton Dickenson and Company, C. R. Bard, Inc., Bard Access Systems, Inc., and Bard Peripheral Vascular, Inc. (collectively, "Defendants" or "Bard"). Defendants have filed a motion to exclude case-specific expert opinions of Darren R. Hurst, M.D. Doc. 5780. The motion is fully briefed and no party requests oral argument. The Court will grant the motion in part.

**I. Background.**

On February 17, 2021, Plaintiff Judy Hicks had a Bard port implanted for chemotherapy related to breast cancer. Doc. 5780-1 at 3. After several chemotherapy

infusions, and because of difficulty withdrawing blood from the port during several of those infusions, the port was surgically removed on August 3, 2022. *Id.* at 6. Plaintiff claims that her port problems arose because the port became blocked by thrombus as a result of a product defect.

Plaintiff has identified Darren Hurst, M.D., as a medical expert. Dr. Hurst is an interventional radiologist. Doc. 7091-4 at 5. He practices as the Chief of Vascular and Interventional Radiology for the St. Elizabeth Health System and holds other radiology-practice positions. *Id.* at 5, 50-51. He is also an Assistant Professor of Interventional Radiology at the University of Kentucky College of Medicine. *Id.* at 5, 51. Hurst regularly implants and removes port catheters. *Id.* at 5. Defendants move to exclude two of Hurst's opinions under Federal Rule of Evidence 702.

## II. Legal Standard.

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the proponent of the expert's testimony "demonstrates to the court that it is more likely than not that" (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The proponent of the expert testimony must show by a preponderance of the evidence that the testimony satisfies each of these requirements. Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("[T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025) ("Consistent with the 2023 amendment, our precedent establishes that Rule 702 requires a

proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence.”).

The Court acts as a gatekeeper to ensure that expert testimony satisfies Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The Court's task is not to decide whether the expert is right or wrong, but to ensure the proposed opinions satisfy Rule 702. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 969-70 (9th Cir. 2013); *Engilis*, 151 F.4th at 1050. If the proponent does not meet its Rule 702 burden, the expert testimony is not admissible. *See Davis v. McKesson Corp.*, No. CV-18-1157-PHX-DGC, 2019 WL 3532179, at *3 n.2 (D. Ariz. Aug. 2, 2019) (“[T]he Court may admit expert opinions only if it can determine, under Rule 104(a), that Plaintiffs have shown each of the Rule 702 requirements to be satisfied by a preponderance of the evidence.”).

**III. Dr. Hurst's Pain Opinion.**

In the seventh opinion of his expert report, Hurst notes that Plaintiff Hicks testified that she experienced significant pain during the infusion on April 9, 2021, and during every infusion after that date. Doc. 5780-1 at 8. Hurst opines that “[b]ecause these painful episodes coincided with difficulty aspirating and flushing, events attributable to thrombotic occlusion within the catheter, her repeated occlusions directly caused increased manipulation and pressure in the port, leading to consistent access-related pain.” *Id.*

Hurst's opinion identifies three categories of difficulties Plaintiff experienced from the port's access problems: “procedural discomfort, pain during accesses, and quality-of-life impacts[.]” *Id.* Hurst was questioned about these difficulties in his deposition. Doc. 6252-3.

When asked about procedural discomfort, Hurst testified that blood clotting in the catheter could have produced “extravasation” (*id.* at 4), which occurs when a medication being injected into a patient's veins leaks into surrounding tissue. Hurst testified that he did not know if this happened to Plaintiff. *Id.*

When asked about quality-of-life impacts, Hurst talked about pain at the port site during infusions. *Id.* at 5. He said this possibly could have been caused by extravasation,

but he did not know if that was the cause and could not say it was to a reasonable degree of probability. *Id*.

The questioning then turned to pain during access, and Hurst was asked about this statement in his report: "[f]rom an interventional radiology standpoint, the need for additional needle adjustments, higher injection pressures, and thrombolytic installations in an occluded catheter predictably produces patient discomfort, as was documented in Ms. Hicks's case." *Id*. at 5-6. Hurst testified that "because the device was having difficulty, she had to have extra infusions, extra injections of medication, thrombolysis to try and open the port up, and that requires, you know, additional time and effort and, you know, access at the port." *Id*. Hurst agreed that the pain from these additional procedures was of limited duration — "limited to the adjustment of the needle and the injection at that time" (*id*. at 7) – but he did not express doubt about this opinion. In his rebuttal report, Hurst opines that "pain complaints of the kind that Ms. Hicks mentioned in her sworn testimony would be expected, given her experience and are well established symptom of port occlusion." Doc. 6252-4 at 5.

The Court concludes that Hurst's opinion regarding extravasation as a possible cause of Plaintiff's pain is inadmissible. Hurst testified that he does not know if extravasation caused Plaintiff's pain and could not say so to a reasonable degree of probability.

Defendant argues that Hurst's other pain opinion is inadmissible because he admitted that pain can occur during infusions even without an occlusion. *See* Doc. 6252-3 at 7. But Hurst's opinion is limited to the pain Ms. Hicks experienced on April 9, 2021 and thereafter, when the port access problems occurred. Doc. 5780-1 at 8. And he has identified the mechanisms by which additional pain can be caused when occlusion of a catheter occurs: extra needle sticks, extra manipulation of the port, thrombolytic injections, higher injections pressures, and more port procedures. Docs. 5780-1 at 8, 6252-3 at 5-7. The Court will not exclude Hurst's opinion that the additional manipulation and injections required because of the occlusion caused Plaintiff additional pain. Hurst adequately

explained his reasons for this opinion, and his many years of experience as an interventional radiologist who implants and removes ports provides a sufficient expert basis for it.

**IV. Alternative Port Opinion.**

Hurst's rebuttal report states: "among alternatives on the U.S. market, the AngioDynamics Bioflo port, which is designed with an antithrombotic catheter surface, would have been an appropriate choice for Ms. Hicks." Doc 5780-3 at 5. Defendants argue that this opinion should be excluded because it is not combined within an opinion that the Bard port was defective or that the AngioDynamics port would have been a safer alternative. Doc. 5780 at 5. The Court does not agree. The existence of an alternative design will be an issue in this case. The fact that other experts will address whether the Bard design was defective, and whether antithrombotic coatings are effective, does not change the fact that the availability of antithrombotic alternatives will be relevant. Hurst does not need to give all the opinions related to this subject. If the jury finds from other evidence that antithrombotic coatings like those used on the AgioDynamics port would have been a safer alternative design, it will be relevant that an interventional radiologist opined that such a port could have been used for Ms. Hicks.

**IT IS ORDERED** that Defendants' motion (Doc. 5780) is **granted in part and denied in part**. The motion is granted with respect to any opinion from Dr. Hurst that Plaintiff's pain during infusion was caused by extravasation. The motion is otherwise denied.

Dated this 15th day of October, 2026.

David G. Campbell

David G. Campbell
Senior United States District Judge