**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| Judy Hicks,<br>Individual Plaintiff,<br>v.<br>Becton Dickinson and Company, et al.,<br>Defendants. | No. CV-23-01703-PHX-DGC<br>**ORDER**<br>**Expert Witness Keilye R. Pampillonia** |

This multidistrict litigation involves thousands of personal injury cases related to implanted port catheters ("IPCs" or "ports") designed, manufactured, and marketed by Defendants Becton Dickenson and Company, C. R. Bard, Inc., Bard Access Systems, Inc., and Bard Peripheral Vascular, Inc. (collectively, "Defendants" or "Bard"). Plaintiff Judy Hicks has filed a motion to exclude the expert opinions of Keilye R. Pampillonia. Doc. 5817. Defendants responded to the motion (Doc. 6232) and Plaintiff filed no reply. The Court will deny the motion.

## I. Background.

An IPC is a medical device surgically implanted under the skin to provide repeated access to a patient's vascular system without the need for multiple needlesticks into peripheral veins. IPCs are used to deliver chemotherapy and immunotherapy medication,

intravenous fluids, blood transfusions, and parenteral nutrition. IPCs can remain in place for weeks, months, or even years until treatment is completed.

Plaintiff Judy Hicks received a Bard IPC for chemotherapy related to breast cancer, and claims it became blocked by blood clots due to a product defect and caused her various injuries. Defendants have identified Keilye R. Pampillonia, B.S.N., O.C.N. as an expert witness in the Hicks case. Pampillonia received a bachelor's degree in nursing in 2018 and certification as an Oncology Certified Nurse in 2020. Doc. 5784-1 at 15, 17. She currently holds the positions of staff nurse and rotating charge nurse in an oncology unit, providing direct patient care. *Id.* at 4, 15. Plaintiff Hicks moves to exclude certain of Pampillonia's opinions under Federal Rule of Evidence 702. Doc. 5784 at 2-3.

## II. Legal Standard.

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the proponent of the expert's testimony "demonstrates to the court that it is more likely than not that" (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The proponent of the expert testimony must show by a preponderance of the evidence that the testimony satisfies each of these requirements. Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("[T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025) ("Consistent with the 2023 amendment, our precedent establishes that Rule 702 requires a proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence.").

The Court acts as a gatekeeper to ensure that expert testimony satisfies Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The Court's task is not to decide whether the expert is right or wrong, but to ensure the proposed opinions satisfy Rule 702. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 969-70 (9th Cir. 2013); *Engilis*, 151 F.4th at 1050. If the proponent does not meet its Rule 702 burden, the expert testimony is not admissible. *See Davis v. McKesson Corp.*, No. CV-18-1157-PHX-DGC, 2019 WL 3532179, at *3 n.2 (D. Ariz. Aug. 2, 2019) ("[T]he Court may admit expert opinions only if it can determine, under Rule 104(a), that Plaintiffs have shown each of the Rule 702 requirements to be satisfied by a preponderance of the evidence.").

## III. Discussion.

### A. Pampillonia's Pain Testimony.

Plaintiff generally argues that Pampillonia's nursing education and experience do not qualify her to opine on patient pain. Doc. 5817 at 5-6. Her extensive experience suggests otherwise.

Pampillonia has specialized knowledge as an Oncology Nursing Society provider and as an Oncology Certified Nurse. Doc. 4801-1 at 6, 32. The latter credential requires a threshold level of patient care in an oncology setting, a minimum of two years of oncology nursing experience, and passing an oncology-focused exam. Doc. 5332 at 3.

In addition, during 12 years of clinical experience, Pampillonia has "provided primary care for thousands of patients with [IPCs] and other central venous access devices." Doc. 4801-1 at 7. As a staff nurse and rotating charge nurse since August 2022, she provides direct patient care to approximately ten IPC patients per week or 500 IPC patients per year, and is responsible for teaching, supervising, and validating the competency of nursing personnel in venous and central venous access. *Id.* at 6-7, 30. Before her current position, Pampillonia was an oncology and palliative clinic nurse manager for a year and managed "a high-volume oncology clinic seeing over 100 patients per day[.]" *Id.* at 30.

Rule 702(a) recognizes expertise based on a range of sources, including knowledge, skill, experience, training, and education. Pampillonia has acquired expertise from all of these sources with respect to IPC use, care, and procedures. *See* Doc. 4801-1.

Further, "[a]lthough some expert testimony 'rests upon scientific foundations,' in other cases 'the relevant reliability concerns may focus upon personal knowledge or experience.'" *McBroom v. Ethicon, Inc.*, No. CV-20-02127-PHX-DGC, 2021 WL 2709292, at *5 (D. Ariz. July 1, 2021) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). For medical experts such as Pampillonia, "clinical experience is sufficient to satisfy the threshold reliability requirements of Rule 702." *Id.* (quoting *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 993675, at *2 (D. Ariz. Feb. 21, 2018)).

**B. Plaintiff's Pain History.**

Plaintiff argues that Pampillonia is unqualified to recount or comment on Plaintiff's pain history, as Pampillonia does in one paragraph of her report. *See* Doc. 5817-1 at 8. As Defendants note, however, Pampillonia's nursing training placed a high emphasis on patient pain; as an oncology nurse, pain and nausea are the top two patient complaints she must address regularly; nurses are trained to view pain as the fifth vital sign, assessing and treating it often; and the assessment and management of pain is a cornerstone of nursing practice. Doc. 6232 at 6-7.

Relying on this experience, Pampillonia addresses Plaintiff's pain history as reflected in Plaintiff's medical records. This will be educational testimony for the jury, and Pampillonia is qualified to provide it. "Instruction on relevant matters beyond the understanding of a typical juror is an appropriate function of an expert witness." *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2017 WL 11696724, at *4 (D. Ariz. Dec. 21, 2017) (citing *EEOC v. S&B Indus., Inc.*, No. 3:15-CV-0641-D, 2017 WL 345641, at *4 (N.D. Tex. Jan. 24, 2017) ("If an expert distills a complicated subject into language a jury can understand, and that subject is relevant, she can be admitted as a

'teaching witness.'")). The Court is satisfied that Pampillonia is qualified to recount and comment on Plaintiff's pain history as set forth in her expert report. Doc. 5817-1 at 8.

The Court is also satisfied that Pampillonia has used a reliable methodology. Her report states that she formed her opinions using the same methods she applies in her clinical practice, which include clinical reasoning, analysis of the relevant data, and review of current policies and practices, as well as her extensive experience in caring for oncology patients with ports like Plaintiff Hicks. *Id.* at 5

**C. Opinions on Cancer Pain.**

Pampillonia's report includes one paragraph on pain specific to cancer patients. *Id.* at 8. She notes that such pain results from a complex interaction among cancer cells, the nervous system, and the immune system, and that pain is common among cancer patients. *Id.* She provides relevant statistics from Mayo Clinic. *Id.*

Plaintiff argues that this opinion merely recites facts and recounts data. But as already noted, "[i]nstruction on relevant matters beyond the understanding of a typical juror is an appropriate function of an expert witness." *In re Bard IVC Filters*, 2017 WL 11696724, at *4.

Plaintiff argues that Pampillonia provides no reliable methodology, but as also noted above, she uses the same methods she applies in her clinical practice, including clinical reasoning, analysis of the relevant data, review of current policies and practices, and extensive experience caring for cancer patients. Doc. 5817-1 at 5.

**D. Post Access Pain.**

Pampillonia states that in her experience it is not unusual for patients to experience some pain or discomfort while their port is being accessed, and for the pain to continue for up to 48 hours thereafter. She also discusses Plaintiff's port access procedures and why they could have caused pain, and describes post-access pain experienced by some patients. *Id.* at 8-9.

Plaintiff argues Pampillonia is not qualified to opine on pain experienced by cancer patients during and after port access. The Court disagrees. Pampillonia has extensive experience caring for just such patients and treating the pain they experience.

Plaintiff argues that Pampillonia uses no reliable methodology, an argument the Court finds unpersuasive for reasons set forth above. Pampillonia used the same methods for reaching her opinions in this case that she uses in her clinical practice. *Id.* at 5. This is a sufficient basis for expert testimony under rule 702.

**E. Neuropathic Pain Related to Taxol.**

Pampillonia opines that taxanes (a class of chemotherapy drug) commonly induce peripheral neuropathy, and that Taxol – the drug received by Plaintiff Hicks – accounts for 21-40% of taxane-induced neuropathy. *Id.* at 9. She adds that chemotherapy patients like Plaintiff have a well-documented risk of developing neuropathic pain from Taxol. *Id.* Further, Pampillonia explains that it is common in her oncology infusion practice to have patients ice their hands and feet before, during, and after Taxol infusion to reduce their neuropathic pain. *Id.*

Plaintiff argues that this is a medical causation determination only a doctor can make. Doc. 5817 at 9. In support, Plaintiff relies on a court of appeals decision from Mississippi, *Sacks v. Necaise*, 991 So. 2d 615 (Miss. Ct. App. 2007), which held that the testimony of a nurse expert was properly admitted on the infusion procedures at issue in the case. *Id.* at 622. Plaintiff argues that the nurse's testimony was only admitted because she was not called to testify on the cause of the plaintiff's injury. Doc. 5817 at 9. While the Mississippi court did note that the nurse was not called to testify on the cause of the plaintiff's injury – a severe chemical burn during chemotherapy – this was not the basis for the court's ruling. The nurse's testimony was admitted because she "was a licensed nurse and was familiar with the current standards of chemotherapy administration." *Sacks*, 991 So. 2d at 622. The nurse in *Sacks* was less qualified than Pampillonia. She "had not practiced nursing in twenty years" and "was not an advanced oncology certified nurse" like. Pampillonia. *Id.* at 621. From this case, the Court cannot conclude that Pampillonia's

opinion that Taxol is well documented to cause neuropathic pain – and causes such pain regularly in her practice as an Oncology Certified Nurse – is inadmissible. This opinion is based on her years of training and experience as an oncology nurse and on cited medical literature. *See* Doc. 5817-1 at 9. Further, Pampillonia testified in her deposition that it is common for Taxol to cause neuropathic pain in her oncology patients; that she counsels her patients on this pain, explaining what it will feel like; that she puts gloves on the patients' hands and ices them before the Taxol treatment; and that Taxol can cause pain in other areas of the body. Doc. 6232-1 at 10-11.

Nor can the Court conclude that the opinion should be excluded because it is not supported by a reliable methodology and will not be helpful to the jury. Pampillonia's methodology is clear from her report, as discussed above, and Plaintiff Hicks' pain during chemotherapy infusions will be an issue at trial.

**F. Pampillonia's Methodology.**

The final section of Plaintiff's motion again argues that Pampillonia has failed to identify a reliable methodology. As already explained, the Court does not agree. She formed her opinions using the same methods she applies in her clinical practice, which include clinical reasoning, analysis of the relevant data, and review of current policies and practices, as well as her extensive experience in caring for oncology patients with ports. Doc. 5817-1 at 5. This is a sufficient methodology. *See In re Bard Implanted Port Catheter Prods. Liab. Litig. v. Becton Dickinson & Co.*, No. CV-23-01627-PHX-DGC, 2026 WL 1953081, at *5 (D. Ariz. July 6, 2026) ("Hurst supports this opinion with his experience as an interventional radiologist treating fractured catheters. . . . Hurst's opinion that cardiac arrythmia is a common complication of a catheter fracture is supported by sufficient facts and data and is reliable."); *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 993675, at *2 (D. Ariz. Feb. 21, 2018) ("[C]linical experience [can be] sufficient to satisfy the threshold reliability requirements of Rule 702."); *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 495188, at *4 (D. Ariz. Jan. 22, 2018) ("[E]xpert testimony 'is reliable if the knowledge underlying it has

a reliable basis in the knowledge and experience of the relevant discipline.'" (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010))).

**IT IS ORDERED** that Plaintiff's motion to exclude the opinions of Nurse Keiley R. Pampillonia (Doc. 5817) is **denied**.

Dated this 19th day of October, 2026.

David G. Campbell
Senior United States District Judge