**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| Judy Hicks,<br>Individual Plaintiff,<br>v.<br>Becton Dickinson and Company, et al.,<br>Defendants. | No. CV-23-01703-PHX-DGC<br><br>**ORDER**<br><br>**Expert Witness Nan Chen, M.D.** |

This multidistrict litigation involves thousands of personal injury cases related to implanted port catheters ("IPCs" or "ports") designed, manufactured, and marketed by Defendants Becton Dickenson and Company, C. R. Bard, Inc., Bard Access Systems, Inc., and Bard Peripheral Vascular, Inc. (collectively, "Defendants" or "Bard"). Plaintiff Judy Hicks has filed a motion to exclude one of the case-specific expert opinions of Nan Chen, M.D. Doc. 5818. Defendants have responded (Doc. 6233) and no reply has been filed. The Court will deny the motion.

## I. Background.

An IPC is a medical device surgically implanted under the skin to provide repeated access to a patient's vascular system without the need for multiple needlesticks into

peripheral veins. IPCs are used to deliver chemotherapy and immunotherapy medication, intravenous fluids, blood transfusions, and parenteral nutrition. IPCs can remain in place for weeks, months, or even years until treatment is completed. Plaintiff Hicks received a Bard port for chemotherapy, and claims it became blocked by blood clots due to a product defect. She has sued for resulting injuries.

Defendants have identified Nan Chen, M.D., as a medical expert. Dr. Chen is board-certified in Medical Oncology, Hematology, and Internal Medicine. She primarily treats patients with breast cancer – the same disease for which Plaintiff Judy Hicks received chemotherapy through her Bard IPC. Doc. 5818-1 at 3-4. Dr. Chen routinely treats cancer patients using central venous access devices, such as ports, and manages port-related complications, including thrombosis. *Id.* She also is an Assistant Professor in the Department of Internal Medicine, Hematology/Oncology Section, at The University of Chicago. *Id.*

## II. Legal Standard.

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the proponent of the expert's testimony "demonstrates to the court that it is more likely than not that" (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The proponent of the expert testimony must show by a preponderance of the evidence that the testimony satisfies each of these requirements. Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("[T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025)

("Consistent with the 2023 amendment, our precedent establishes that Rule 702 requires a proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence.").

The Court acts as a gatekeeper to ensure that expert testimony satisfies Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The Court's task is not to decide whether the expert is right or wrong, but to ensure the proposed opinions satisfy Rule 702. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 969-70 (9th Cir. 2013); *Engilis*, 151 F.4th at 1050. If the proponent does not meet its Rule 702 burden, the expert testimony is not admissible. *See Davis v. McKesson Corp.*, No. CV-18-1157-PHX-DGC, 2019 WL 3532179, at *3 n.2 (D. Ariz. Aug. 2, 2019) ("[T]he Court may admit expert opinions only if it can determine, under Rule 104(a), that Plaintiffs have shown each of the Rule 702 requirements to be satisfied by a preponderance of the evidence.").

**III. Discussion.**

Plaintiff's motion focuses on the use of a single word in Dr. Chen's expert report – "synergistic." Chen discusses several comorbidities for thrombosis seen in Plaintiff's medical history, including lupus, tamoxifen usage, active smoking, obstructive sleep apnea, and high body mass index. Doc. 5818-1 at 9-10. Chen concludes her discussion with this sentence: "Thus, this patient had numerous *synergistic* risk factors which are demonstrated to increase risk of thrombus formation." *Id.* at 10 (emphasis added).

Plaintiff makes this assertion, without citation to any source or authority:

> As the Court is no doubt aware, the language of "synergy" is medically and scientifically significant. The term refers to biological interaction where the combined effect of multiple risk factors exceeds the sum of their individual effects. Synergistic interaction is distinguished from additive effects through established epidemiological measures such as the Relative Excess Risk due to Interaction (RERI), the Attributable Proportion (AP), and the Synergy Index (SI). These metrics quantify whether risk factors interact multiplicatively rather than additively.

Doc. 5818 at 4.

The Court is not aware of these assertions about medical synergy, and, as noted, Plaintiff provides no citations for them. In an attempt to understand Plaintiff's argument, the Court reviewed the Federal Judicial Center's two-volume Reference Manual on Scientific Evidence, Fourth Edition (2025), including its chapters on epidemiology and medical testimony. The Court found no mention of "Relative Excess Risk due to Interaction" or the "Synergy Index" mentioned by Plaintiff. The phrase "Attributable Proportion" is found in the Manual, and is defined as "[t]he proportion of disease in exposed individuals that can be attributed to exposure to an agent, as distinguished from the proportion of the disease attributed to all other causes." Manual Vol. II at 1009. This appears to be an additive rather than a multiplicative definition. The words synergy or synergistic are not part of the Manual's discussion of Attributable Proportion. *Id.* at 927-28, 1009. The Manual, which is very thorough, does not confirm Plaintiff's unsupported assertions.[1]

Significantly, Plaintiff does not dispute that she has each of the comorbidities identified by Chen – lupus, tamoxifen usage, active smoking, obstructive sleep apnea, and high body mass index. Nor does Plaintiff dispute that each of these conditions can contribute to thrombosis. Her only argument is that Chen "provides no interaction analysis, no quantification of joint effects, and no methodology for distinguishing synergy from mere co-occurrence of risk factors." Doc. 5818 at 4. But as Defendants note, Chen does not attempt to quantify the synergistic effect of Plaintiff's comorbidities. In fact, Chen testified in her deposition that it would not be possible to quantify the synergistic effects. Doc. 6233-2 at 10-11.

Chen does cite medical studies and articles in support of her assertion that each of Plaintiff's conditions can contribute to thrombosis. Doc. 5818-1 at 9-11. Several of these studies address several of Plaintiff's conditions. *See* Docs. 6233-3, 6233-4, 6233-5.

---

[1] The epidemiology chapter of the Manual also discusses "Relative Risk," which is similar to one of Plaintiff's phrases and is defined as "the ratio of the probability of disease in a group of exposed individuals to the probability of disease in a group of unexposed individuals." *Id.* at 922-25 (citations omitted). This definition does not appear to be multiplicative, and the Relative Risk discussion does not mention synergy or synergistic. *Id.*

The Court finds by a preponderance of the evidence that Chen's opinions about Plaintiff's comorbidities are supported by sufficient facts and data and a reliable methodology, applied reliably. The Court also finds that they will be helpful to the jury. Plaintiff will be free to cross-examine Chen about her inability to quantify the synergistic effect.

**IT IS ORDERED** that Plaintiff's motion (Doc. 5818) is **denied**.

Dated this 20th day of October, 2026.

David G. Campbell
Senior United States District Judge