WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| Judy Hicks,<br>Individual Plaintiff,<br>v.<br>Becton Dickinson and Company, et al.,<br>Defendants. | No. CV-23-01703-PHX-DGC<br>**ORDER**<br>**Expert Witness Richard Wu, M.D.** |

This multidistrict litigation involves thousands of personal injury cases related to implanted port catheters ("IPCs" or "ports") designed, manufactured, and marketed by Defendants Becton Dickenson and Company, C. R. Bard, Inc., Bard Access Systems, Inc., and Bard Peripheral Vascular, Inc. (collectively, "Defendants" or "Bard"). Defendants have filed a motion to exclude the case-specific expert opinions of Richard Wu, M.D. Doc. 5818. The motion is fully briefed. Docs. 6251, 6408. The Court will grant the motion in part and deny it in part.

## I. Background.

An IPC is a medical device surgically implanted under the skin to provide repeated access to a patient's vascular system without the need for multiple needlesticks into

peripheral veins. IPCs are used to deliver chemotherapy and immunotherapy medication, intravenous fluids, blood transfusions, and parenteral nutrition. IPCs can remain in place for weeks, months, or even years until treatment is completed. Plaintiff Hicks received a Bard port for chemotherapy, and claims it became blocked by blood clots due to a product defect. She sues for resulting injuries.

Plaintiff has disclosed Dr. Richard Wu as a testifying expert. Dr. Wu is a practicing doctor and a Clinical Associate Professor in the Department of Internal Medicine, Division of Medical Oncology, at The Ohio State University Wexner Medical Center. Doc. 5823-1 at 31. After completing a combined M.D./Ph.D. at the University of Texas McGovern Medical School and MD Anderson Cancer Center, Wu pursued residency training in Internal Medicine at the University of Texas Southwestern Medical Center, followed by a fellowship in Medical Oncology at the University of Pittsburgh Medical Center's Hillman Cancer Center. *Id.* He is board certified in Medical Oncology, Hematology, and Internal Medicine and maintains active involvement in the American Society of Clinical Oncology, the Southwest Oncology Cooperative Group, Regional Melanoma Translational Research Consortium, the Society for Immunotherapy of Cancer, and the American Society of Hematology. *Id.* at 31-32. Wu currently serves as principal investigator on multiple federally and industry sponsored clinical trials involving advanced solid tumors and immunotherapeutic agents, and has participated in various committees at the medical centers where he has worked. *Id.* at 32-34.

## II. Legal Standard.

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the proponent of the expert's testimony "demonstrates to the court that it is more likely than not that" (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert's opinion reflects a reliable application of the principles

and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The proponent of the expert testimony must show by a preponderance of the evidence that the testimony satisfies each of these requirements. Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("[T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025) ("Consistent with the 2023 amendment, our precedent establishes that Rule 702 requires a proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence.").

The Court acts as a gatekeeper to ensure that expert testimony satisfies Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The Court's task is not to decide whether the expert is right or wrong, but to ensure the proposed opinions satisfy Rule 702. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 969-70 (9th Cir. 2013); *Engilis*, 151 F.4th at 1050. If the proponent does not meet its Rule 702 burden, the expert testimony is not admissible. *See Davis v. McKesson Corp.*, No. CV-18-1157-PHX-DGC, 2019 WL 3532179, at *3 n.2 (D. Ariz. Aug. 2, 2019) ("[T]he Court may admit expert opinions only if it can determine, under Rule 104(a), that Plaintiffs have shown each of the Rule 702 requirements to be satisfied by a preponderance of the evidence.").

## III. Discussion.

### A. Materials and Design Opinions.

Dr. Wu was asked by Plaintiff's counsel to opine on whether a Bard port "that was better designed to protect patients from thrombus formation would have significantly reduced the risk that Ms. Hicks would have suffered a thrombosis at the site of her BardPort." Doc. 5823-1 ¶ 10. He offers this general opinion:

> It is my opinion, to a reasonable degree of medical certainty, based on my review of the reports of plaintiffs' General Experts, that if the BardPort had been designed with appropriate patient safety/protective measures as detailed in their reports, it would have greatly reduced or eliminated the risk such that

> Ms. Hicks likely would not have formed a thrombus at the site of her BardPort or consequently needed to have her port removed.

*Id.* ¶ 14.

Wu provides more detail in his rebuttal report, including:

- "Ms. Hicks' thrombotic complication was the result of Bard's choice to use thrombogenic materials when safer, anti-thrombogenic alternatives were available and tested." Doc. 5823-2 at 10.
- "[T]he poor design of the BardPort catheter itself further enhanced the primary thrombotic stimulus through localized vascular injury and flow disruption at the device tissue interface." *Id.* at 4.
- "If Bard had used appropriate antithrombogenic materials and coatings, variations in placement position within the standard of care would not have caused thrombosis." *Id.* at 8.
- "Bard's internal testing and data provides direct comparative evidence showing Bard's ports and catheters generate substantially more thrombus than standard catheters and competitors using anti-fouling technologies." *Id.* at 10.

Plaintiff concedes that Wu is not a materials scientist. Doc. 6251 at 6. Nor does he have product design experience or expertise. *Id.*

Plaintiff argues that Wu can render these opinions on the basis of his extensive clinical experience. Doc. 6251 at 7-8. But Wu does not base these opinions on clinical experience. Rather, he specifically states that he is relying on Plaintiff's general causation experts, and particularly the expert report of Plaintiff's materials scientist Buddy Ratner, Ph.D. Doc. 5823-1 ¶¶ 10, 14, 87; Doc. 5823-3 at 9. "It is my opinion, to a reasonable degree of medical certainty, *based on my review of the reports of plaintiffs' General Experts*, that if the BardPort had been designed with appropriate patient safety/protective measures *as detailed in their reports*, it would have greatly reduced or eliminated the risk[.]" Doc. 5823-1 ¶ 14 (emphasis added).

Plaintiff argues that Wu read some of the studies cited in the general expert reports, but she does not explain how his medical training qualifies him to review or interpret studies on product materials and design. She argues that Wu considered internal Bard testing, but she does not dispute that he did not personally review any testing, and instead read about the testing in the other expert reports. And Plaintiff does not explain how Wu's medical training and experience qualify him to form any opinion about Bard's internal engineering and design documents.

As the Court has held in other cases, experts are not "permitted at trial to simply parrot the opinions of other experts, or to vouch for those experts[.]" *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 495188, at *3 (D. Ariz. Jan. 22, 2018); *Merritt v. Arizona*, No. CV-17-04540-PHX-DGC, 2020 WL 4921987, at *5 (D. Ariz. Aug. 21, 2020) (same). Because Wu cites no basis for his opinions about the design and materials of Bard ports other than the opinions of Plaintiff's general experts, the Court concludes that his design and materials opinions are not admissible under Rule 702. He does not have the expertise to opine on materials and design, and the opinions he expresses are simply borrowed from other experts.

Plaintiff cites cases where this Court has permitted doctors to opine on materials-related issues. But the Court's rulings in those cases were based on the clinical experience of the doctor in actually using the product and observing its performance in the human body. *See, e.g.*, *McBroom v. Ethicon, Inc.*, No. CV-20-02127-PHX-DGC, 2021 WL 2709292, at *7 (D. Ariz. July 1, 2021) ("Dr. Flynn's clinical experience with both laser-cut and mechanical-cut mesh is sufficient to satisfy the threshold reliability requirements of Rule 702. The Court will not preclude him from testifying about his own clinical experience, and, based on that experience, opining that there is no clinical difference between the two meshes." (citation omitted)); *Triant v. Am. Med. Sys. Inc.*, No. CV-12-00450-PHX-DGC, 2020 WL 4049844, at *7 (D. Ariz. July 20, 2020) (similar). Dr. Wu does not base his opinions on his clinical experience. Nor does he have any clinical experience in selecting, evaluating, implanting, or removing ports.

The Court will grant Defendants' motion on Dr. Wu's materials and design opinions.

**B. Opinions About Bard's Knowledge and Corporate Responsibilities.**

Dr. Wu opines on Bard's corporate knowledge. He states Bard "knew" about product improvements that would have reduced thrombus and "chose" not to implement them, knew from its own internal testing that alternative designs could reduce thrombosis, and knew that its ports generate substantially more thrombus than standard catheters. Doc. 5823-2 at 3, 10. Wu also opines on Bard's ethical and legal obligations. He states that manufacturers bear "heightened responsibility" to minimize thrombogenic risks through superior materials and design, and that Bard should have made its internal data available to doctors, patients, and the FDA. *Id.* at 4.

Wu is not qualified to give these expert opinions. He claims no legal training or studies in corporate ethics, and he has not worked for a medical device manufacturer or the FDA. Further, he admitted in his deposition that he has not reviewed a single Bard internal document. Doc. 5823-4 at 34. He instead relies entirely on Plaintiff's other experts for these opinions. *Id.*

Plaintiff claims these opinions are medical-risk assessments, not opinions on regulatory, legal, or ethical issues, but this clearly is incorrect. Doc. 6251 at 11. Wu is opining on what Bard knew and what Bard should have done, opinions for which he has no qualifications. Nor can he simply repeat what other experts have asserted. The Court will grant Defendants' motion on these opinions.

**C. Dr. Wu's Differential Etiology.**

Dr. Wu's causation opinions are based on differential etiology, an accepted technique for identifying the cause of a medical problem by first ruling in potential causes and then ruling out the potential causes until the most probable cause remains or there is a basis for distinguishing among a small set of remaining causes. *See Engilis*, 151 F.4th at 1044-45. Wu considered 19 possible causes of Plaintiff's thrombus: the Bard IPC, cancer, Tamoxifen, hormonal contraceptives, obesity, Lupus, smoking, prolonged immobility,

hypothyroidism, sleep apnea, hypertension, possible remote history of stroke, seizures, other medications, asthma, rheumatoid arthritis, Seronegative Spondyloarthropathy, Gastroesophageal Reflux Disease, and Chronic Kidney Disease. Doc. 5823-1 ¶¶ 59-77. He ruled out all of the potential causes other than Bard's IPC, and thereby arrived at the conclusion that the Bard IPC was a substantial cause of Plaintiff's thrombus. *Id.* ¶¶ 79-82.

Defendants contend that Wu's differential etiology is unreliable and inadmissible because his "ruling in" of the IPC as a potential cause is not supported by sufficient facts and data and relies too heavily on Plaintiff's other experts. Doc. 5823 at 14. But Wu provides six reasons for ruling in the port: (1) absence of prior or after occurring thrombotic events, (2) temporal relationship between the port implant and the thrombus, (3) anatomical specificity – the thrombus occurred at the catheter tip, (4) progressive device dysfunction – the progression of clotting in the port, (5) the mechanism – what other experts said about defects in the port design and materials, and (6) the clinical response – treatment of Plaintiff's problem focused on the IPC and ultimately required its removal. Doc. 5823-1 ¶ 59. Only the fifth reason relies on other experts. Wu's five other reasons for including the IPC as a potential cause satisfy the preponderance of the evidence standard for sufficient facts and data. Fed. R. Evid. 702(b).

Furthermore, while the Court has ruled that Wu cannot state opinions on the design and materials of the IPC, if Plaintiff's general experts testify on the design and materials at trial, Wu can cite their opinions as a reason for ruling in the IPC as a potential cause of Plaintiff's thrombus. Wu must do so without endorsing or vouching for the accuracy of the other experts' opinions – something he is not qualified to do. The jury's acceptance of the other experts' design and material opinions will depend on the credit the jury gives to their testimony. If the jury believes their testimony, it will add weight to Wu's differential etiology.

Defendants also take issue with Wu's characterization of the progressive disfunction of the port and emphasize statements he made in his deposition that showed less than thorough knowledge of Plaintiff's thrombus. Doc. 5823 at 14-15. But the Court finds

these and other factual disputes do not eliminate the sufficient facts and data that underlie Wu's differential etiology, and that differential etiology is a reliable method for determining medical cause.

**IT IS ORDERED** that Defendants' motion (Doc. 5823) is **granted in part and denied in part**. The motion is granted with respect to Dr. Wu's materials, design, corporate knowledge, and corporate ethics opinions, and is otherwise denied.

Dated this 20th day of October, 2026.

David G. Campbell
Senior United States District Judge