Jennifer L. Saulino (Admitted *Pro Hac Vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Phone : (202)736-8000
Fax : (202-736-8711
jennifer.saulino@sidley.com

Edward J. Fanning (Admitted *Pro Hac Vice*)
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Phone: (973) 639-8486
Fax: (973) 797-3868
Email: efanning@mccarter.com

Elizabeth C. Helm (Admitted *Pro Hac Vice*)
Brandee J. Kowalzyk (Admitted *Pro Hac Vice*)
NELSON MULLINS RILEY & SCARBOROUGH, LLP
Atlantic Station
201 17th Street, NW, Ste. 1700
Atlanta, GA 30363
Phone: (404) 322-6000
Fax: (404) 322-6050
Email: elizabeth.helm@nelsonmullins.com
Email: brandee.kowalzyk@nelsonmullins.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard Implanted Port Catheter Products Liability Litigation<br><br>THIS DOCUMENT RELATES TO:<br><br>*May Lattanzio v. Becton, Dickinson & Co.*, No. 24-cv-00680 | MDL No. 3081<br><br>**DEFENDANTS' RESPONSE TO THE COURT'S SECOND PROPOSED FINAL JURY INSTRUCTIONS AND VERDICT FORM**<br><br>(Assigned to the Honorable Jennifer Choe-Groves)<br><br>**ORAL ARGUMENT REQUESTED** |

Defendants respectfully submit this Response to the Court's Second Proposed Final Jury Instructions (Doc. 11516) and Verdict Form (Doc. 11518). For the reasons that follow, Defendants respectfully request the Court adopt the proposed additional language in red text and remove the language is in ~~stricken red text~~ from each instruction restated herein.

**INSTRUCTION NO. 16**

**COURT'S PROPOSED INSTRUCTION ON SUMMARY OF THE CLAIMS**

As a reminder, the product that is the subject of this lawsuit is a PowerPort™ M.R.I.™ Implantable Port With Pre-Attached 9.6F Open-Ended Single-Lumen Venous Catheter that was designed, manufactured, marketed, and sold by Defendants. On August 16, 2013, Plaintiff was implanted with the PowerPort. When these instructions refer to the "PowerPort," they mean the PowerPort that was implanted in Plaintiff May Lattanzio. The claims and defenses in this case are as follows:

1. *Design Defect:* Plaintiff claims that the PowerPort~~, an implantable port catheter designed and manufactured by Defendants,~~ was defectively designed, and that the defective design caused harm to Plaintiff. Plaintiff also claims that Defendants negligently designed the PowerPort, and that the resulting defective ~~the PowerPort was negligently designed and that the negligent~~ design caused her harm.

2. *Fraudulent Concealment:* Plaintiff claims that Defendants concealed or failed to disclose material facts about the PowerPort that they knew or should have known should be disclosed, despite a duty to disclose that information, intending to induce Plaintiff to act, and that Plaintiff suffered ~~injuries or~~ damages as a result of reliance on the omissions.

Defendants deny all of Plaintiff's claims. Defendants also claim that Plaintiff's claims are barred by Florida's statute of limitations, and that Plaintiff's design defect claims are precluded because the PowerPort was unavoidably unsafe.

The Parties must prove their claims and defenses by the greater weight of the evidence.

I will now define some of the terms you will use in deciding this case.

* * *

Defendants propose an introductory paragraph to reintroduce the definition of PowerPort in the Final Instructions. This language is taken from the parties' stipulated uncontested facts from the Final Pretrial Order.

Defendants' proposed amendments to the design defect paragarph clarify that the alleged defect concerns the PowerPort implanted in Plaintiff, and that the existence of a defective design is a common element of both strict liability and negligent claimss. *See Grieco v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 17–18 (Fla. Dist. Ct. App. 2022) ("In order to prevail under either [a negligence or strict-liability] theory, the plaintiff must establish that the product was defective or unreasonably dangerous.").

The proposed amendment to the fraudulent concealment paragraph is to reflect the appropriate measure of damages for a fraudulent concealment claim under Florida law and the *Restatement (Second) of Torts* §§ 549, 557A. *See Muy v. Int'l Bus. Machs. Corp.*, 2020 WL 13470560, at *4 (N.D. Fla. Apr. 10, 2020) ("[A] fraudulent misrepresentation by omission claim . . . requires Plaintiff to have pleaded a pecuniary loss . . . .").

**INSTRUCTION NO. 17**

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 2 (MODIFIED BY COURT)**

Plaintiff contends that Defendants are liable because of a design defect in the PowerPort.

A product is defective because of a design defect if it is in a condition unreasonably dangerous to the patient and the product is expected to and does reach the patient without substantial change affecting that condition.

A product is unreasonably dangerous because of its design if ~~the product fails to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable by the manufacturer. The 'ordinary consumer' is a physician selecting the PowerPort for use in a patient."~~ the risk of danger in the design

outweighs the benefits. Plaintiff must demonstrate that the foreseeable risks of harm posed by the PowerPort could have been reduced or avoided by the adoption of a reasonable alternative design and the omission of the design renders the PowerPort not reasonably safe.

A product may be unreasonably dangerous even though the manufacturer or seller has exercised all possible care in the manufacture, preparation, and sale of the product.

In deciding whether the PowerPort was defective because of a design defect, you shall consider the state-of-the-art of scientific and technical knowledge and other circumstances that existed at the time of the PowerPort's manufacture, not at the time of the loss, injury, or damage.

* * *

The proposed amendment to third paragraph is to reflect application of the risk/benefit test as articulated in the *Restatement (Third) of Torts: Product Liability* § 2 instead of the consumer expectations test. The Florida Standard Jury Instructions Notes on Use No. 1 for Instruction 403.7 retain the risk/benefit test in addition to the consumer expectations test, and cite favorably to *Cavanaugh v. Stryker Corp.*, 308 So. 3d 149 (Fla. 4th DCA 2020). *See* Fla. Std. Jury Inst. § 403.7, Notes for Use No. 1. This Court should apply the risk/benefit test to Plaintiff's design defect claims because the PowerPort "is complex medical device available to an ordinary consumer only as an incident to a medical procedure." *Cavanaugh*, 308 So.3d at 155; *see also Cates v. Zeltiq Aesthetics, Inc.*, 535 F. Supp. 3d 1222, 1230 (M.D. Fla. 2021) (holding that the plaintiff had to prove that the medical device "was unreasonably dangerous under the risk utility test" where the product was an FDA-cleared medical device), *aff'd*, 73 F.4th 1342 (11th Cir. 2023); *Tillman v. C. R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1339 (M.D. Fla. 2015) ("Because this case pertains to a complex medical device, accessible to the consumer only through a physician, the Court finds that the consumer-expectation test is not applicable here.").

Defendants' proposed language to the second sentence of paragraph three is quoted from *Cates v. Zeltiq Aesthetics, Inc.*, 73 F.4th 1342 (11th Cir. 2023): "The risk utility test

from the Third Restatement requires a plaintiff demonstrate 'the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design . . ., and the omission of the design renders the product not reasonably safe.'" *Id.* at 1351 (quoting *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 510 (Fla. 2015)).

**INSTRUCTION NO. 18**

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 4A (MODIFIED BY COURT)**

The issues you must decide on Plaintiff's strict liability design defect claim against Defendants are:

Whether the ~~PowerPort failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the manufacturer and the PowerPort reached Plaintiff without substantial change affecting the condition~~ foreseeable risks of harm posed by the PowerPort could have been reduced or avoided by the adoption of a reasonable alternative design and the omission of the alternative design renders the PowerPort not reasonably safe.

Whether the risk of danger in the design of the PowerPort outweighs the benefits of the PowerPort and the PowerPort reached Plaintiff without substantial change affecting the condition and, if so, whether that failure was a legal cause of the injury to Plaintiff.

* * *

For the reasons set forth *supra*, this Court should follow the risk/benefit test as articulated in the *Restatement (Third) of Torts: Product Liability* § 2 instead of the consumer expectations test.

**INSTRUCTION NO. 19**

**DEFENDANTS' PROPOSED INSTRUCTION NO. 5B (MODIFIED BY COURT)**

Some products, given the state of human knowledge and technology at the time they are distributed, cannot be made safe for their intended and ordinary use. Such a product is not defective or unreasonably dangerous, nor is its seller strictly liable for the unfortunate consequences of its use, if the product is properly prepared and marketed, and is accompanied by proper directions and warnings. This is true even though the product carries a known, but reasonable risk.

It is Defendants' burden to prove by the greater weight of the evidence that, at the time the PowerPort was distributed, the PowerPort (1) was as safe as then-current testing and research permitted and could not be made safe for its intended and ordinary use; (2) was properly prepared and marketed; and (3) was accompanied by proper directions and warnings. If Defendants prove each of these elements, they cannot be liable on Plaintiff's strict liability design defect claim.

The Parties do not dispute that the PowerPort is properly prepared and marketed, and is accompanied by proper directions and warnings. Therefore, if Defendants have proved by the greater weight of the evidence that, at the time the PowerPort was distributed, the PowerPort was as safe as then-current testing and research permitted and could not be made safe for its intended and ordinary use, then they cannot be liable on Plaintiff's strict liability design defect claim.

* * *

In the Final Pretrial Order, Plaintiff did not contest the second element. She only asserted that "Defendants will not be able to prove that the PowerPort M.R.I. was as safe as it could have been" and that "Defendants will not be able to prove that the product was accompanied by proper directions and warnings." Doc. 11054 at 23. Plaintiff dismissed her failure-to-warn claims, and thus, no longer contests the third element. *See* Doc. 11342; Trial Tr. 985:10-19 (Plaintiff's counsel reiterating "there's no failure to warn [in this]

case"). Accordingly, because the second and third elements are undisputed, the Court should submit only the first element to the jury.

**INSTRUCTION NO. 21**

**COURT'S PROPOSED INSTRUCTION ON PLAINTIFF'S NEGLIGENT DESIGN DEFECT CLAIM**

The issues you must decide on Plaintiff's negligent design defect claim against Defendants are whether the PowerPort was defectively designed, Defendants were negligent in designing ~~and failing to modify the design of~~ the PowerPort, and, if so, whether th~~ate~~ negligently designed and defective PowerPort was a legal cause of the loss, injury, or damage to Plaintiff. In deciding whether the PowerPort was defective because of a design defect, you shall consider the state-of-the-art of scientific and technical knowledge and other circumstances that existed at the time of the PowerPort's manufacture, not at the time of the loss, injury, or damage. Only if you find that the PowerPort was unreasonably dangerous should you then decide whether Bard was negligent in the design of the PowerPort, and if so, whether that was a legal cause of the injury to Plaintiff.

~~To determine if Defendants were negligent, you must consider:~~

~~1. Whether Defendants owed a duty of care toward Plaintiff;~~

~~2. Whether Defendants breached that duty;~~

~~3. Whether the breach of duty was the proximate cause of Plaintiff's injury; and~~

~~4. Whether the PowerPort was defective or unreasonably dangerous.~~

I am going to restate some terms that were defined in Instruction No. 17 you will use in deciding this case.

Defective definition: A product is defective because of a design defect if it is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.

Unreasonably dangerous definition under the risk/benefit test: A product is unreasonably dangerous because of its design if the risk of danger in the design outweighs the benefits.

Unreasonably dangerous definition under the consumer expectations test: A product is unreasonably dangerous because of its design if the product fails to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable by the manufacturer. The "ordinary consumer" is a physician selecting the PowerPort for use in a patient.

* * *

The proposed amendments make clear that the existence of a defect is a precondition for a negligent design defect claim. *See Grieco*, 344 So. 3d at 17–18 ("In order to prevail under either theory, the plaintiff must establish that the product was defective or unreasonably dangerous.").

**INSTRUCTION NO. 24**

**DEFENDANTS' PROPOSED INSTRUCTION NO. 1 (MODIFIED)**

Plaintiff contends that Defendants are liable for fraudulent concealment.

The issues you must decide on Plaintiff's fraudulent concealment claim against Defendants are:

First, whether Defendants concealed or failed to disclose a material fact;

Second, whether Defendants knew or should have known the material fact should be disclosed;

Third, whether Defendants knew its concealment of or failure to disclose the material fact would induce Plaintiff to act;

Fourth, whether Defendants had a duty to disclose the material fact;

Fifth, whether Plaintiff detrimentally relied on the concealed information; and

Sixth, whether that reliance was a legal cause of pecuniary losses ~~loss, injury, or damage~~ to Plaintiff.

* * *

With respect to the fourth element, "[t]he threshold question of whether one has a duty to disclose is a matter of law to be decided by the court." *Pritchard v. Levin*, 305 So. 3d 628, 630 (Fla. Dist. Ct. App. 2020). The proposed amendment to the sixth element is to reflect the appropriate measure of damages for a fraudulent concealment claim under Florida law and the *Restatement (Second) of Torts* §§ 549, 557A. *See Muy v. Int'l Bus. Machs. Corp.*, 2020 WL 13470560, at *4 (N.D. Fla. Apr. 10, 2020) ("[A] fraudulent misrepresentation by omission claim . . . requires Plaintiff to have pleaded a pecuniary loss . . . .").

**INSTRUCTION NO. 26**

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 7 (MODIFIED BY COURT)**

Reliance on a material fact that is concealed or failed to be disclosed is a legal cause of pecuniary loss~~, injury, or damage~~ if it directly and in natural and continuous sequence produces or contributes substantially to producing such pecuniary loss~~, injury, or damage~~, so that it can reasonably be said that, but for the reliance, pecuniary loss~~, injury, or damage~~ would not have occurred.

~~In order to be regarded as a legal cause of loss, injury, or damage, reliance on the material fact that is concealed or failed to be disclosed need not be the only cause. Reliance may be a legal cause of loss, injury, or damage even though it operates in combination with the act of another, some natural cause, or some other cause if the reliance contributes substantially to producing such loss, injury, or damage.~~

* * *

Plaintiff is not entitled to the concurrent cause instruction for her fraudulent concealment claim because Plaintiff presents no evidence of any other statement or omission upon which she was relying in connection with her decision to proceed with the implantation of the Bard PowerPort. *See Butler v. State*, 493 So. 2d 451, 452 (Fla. 1986) ("Jury instructions must relate to issues concerning evidence received at trial.").

**INSTRUCTION NO. 27**

**COURT'S PROPOSED INSTRUCTION ON STATUTE OF LIMITATIONS DEFENSE**

If the greater weight of the evidence supports one or more of Plaintiff's claims, then you shall consider the defenses raised by Defendants.

Defendants assert a statute of limitations defense. Under this defense, Defendants assert that Plaintiff was required to file this lawsuit against Defendants within four years after her claims accrued.

Plaintiff's claims accrued when she discovered, or through the exercise of due diligence should have discovered, that she suffered a distinct and unexcepted injury and that there was a reasonable possibility the PowerPort caused it.

~~Defendants must prove by the greater weight of the evidence that Plaintiff knew, or by the exercise of reasonable diligence should have known prior to March 28, 2020, that she had been injured or damaged, and that there was a reasonable possibility that the injury or damage was caused by a defect in the PowerPort.~~

Due diligence means the reasonable care an ordinarily careful person would use under like circumstances to look into the cause of an injury; it does not require knowledge of every fact. Plaintiff is considered to have knowledge of the contents of her medical records.

If you find by the greater weight of the evidence that more than four years prior to filing this lawsuit Plaintiff knew or, should have known through the exercise of due diligence, facts showing a possible causal connection between her injury and the PowerPort, your verdict must be for Defendants.

* * *

The proposed amendment to the third paragraph is to more specifically define the concept of accrual for statute of limitations purposes. Florida law does not require knowledge that the "injury or damage was caused by a ***defect*** in the PowerPort." "The knowledge required to commence the limitation period . . . does not rise to that of legal

certainty." *Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991). Florida law requires actual or constructive knowledge "of the possible involvement" of the PowerPort in causing a distinct and unexpected injury. *Id.* ("[B]ecause knowledge of the contents of accessible medical records is imputed, [plaintiffs] had constructive knowledge of medical opinion that the drug ***may have contributed*** to the injury in 1977." (emphasis added)); *Redding v. Coloplast Corp*, 104 F.4th 1302, 1309 (11th Cir. 2024). More specifically, "[t]his knowledge 'ha[s] two essential ingredients: an injury distinct in some way from conditions naturally to be expected from the plaintiff's condition, *and* . . . exposure to the product in question.'" *Redding v. Coloplast Corp*, 104 F.4th 1302, 1309 (11th Cir. 2024) (first alteration added) (quoting *Babush v. Am. Home Prods. Corp.*, 589 So. 2d 1379, 1381 (Fla. 4th Dist. Ct. App. 1991)).

**INSTRUCTION NO. 29**

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 9 (MODIFIED BY COURT)**

If your verdict is for Defendants, you will not consider the matter of damages. But if the greater weight of the evidence supports one or more of Plaintiff's claims, you should determine and write on the verdict form, in dollars, the total amount of loss, injury, or damage which the greater weight of the evidence shows will fairly and adequately compensate her for her loss, injury, or damage~~, including any damage that Plaintiff is reasonable certain to incur or experience in the future.~~

You shall consider the following elements:

(1) Any bodily injury sustained by Plaintiff and any resulting pain and suffering, physical impairment, mental anguish, inconvenience, or loss of capacity for the enjoyment of life experienced in the past. There is no exact standard for measuring such damage. The amount should be fair and just in the light of the evidence.

~~(2) The reasonable value or expense of hospitalization and medical care and treatment necessarily or reasonable obtained by Plaintiff in the past.~~

Such damages do not apply to Plaintiff's fraudulent concealment claim. If you find for Plaintiff on her fraudulent concealment claim, she may recover only pecuniary losses caused by her reliance on the alleged concealment. Pecuniary losses are actual, economic or tangible losses, such as out-of-pocket expenses.

* * *

The proposed amendments strike the references to future damages and past medical expenses to conform to the evidence adduced at trial. Plaintiff agrees to striking the past medical expenses. *See* Doc. 11536, at 2, n.1. As for future damages, Plaintiff testified that she (1) "had no other surgeries or significant medical procedures"; (2) has never been told that she "ha[s] any physical limitations related to [her] port"; (3) has never been "given . . any restrictions because of [her] port"; and 94) has never been "told that [she] might have any future complications because of [her] port." Trial Tr. 1265:3-15.

The proposed language regarding pecuniary losses tracks the Court's language from the prior proposed instructions for negligent misrepresentation, but applies them to the fraudulent concealment claim.

**INSTRUCTION NO. 30**

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 10A (MODIFIED BY COURT)**

If you find for Plaintiff and against Defendants, you must decide whether, in addition to compensatory damages, punitive damages are warranted as punishment to Defendants and as a deterrent to others.

The trial of the punitive damages issue is divided into two parts. In this first part, you will decide whether the conduct of Defendants is such that punitive damages are warranted. If you decide that punitive damages are warranted, we will proceed to the second part of that issue during which the Parties may present additional evidence and argument on the issue of punitive damages. I will then give you additional instructions, after which you will decide whether, in your discretion, punitive damages will be assessed and, if so, the amount.

Plaintiff claims that punitive damages should be awarded against Defendants for their conduct in the design of the PowerPort and by allegedly concealing or failing to disclose known risks and safety concerns associated with the PowerPort, which Plaintiff contends constituted intentional misconduct or gross negligence.

~~1. selling and marketing the PowerPort when Defendants knew it was defective and doing so despite knowing how to make the PowerPort safer;~~

~~2. discontinuing development of other potentially safer design models for profit reasons;~~

~~3. ignoring feedback from healthcare providers about the need for a coated port to reduce infections;~~

~~4. failing to warn physicians about the higher risks of infection when using the PowerPort that Defendants knew existed;~~

~~5. affirmatively withholding data about infection rates to ensure that the PowerPort remained profitable; and~~

~~6. affirmatively steering physicians away from safer alternatives with coatings despite Defendants having developed that same coating to reduce infections and having abandoned it.~~

Punitive damages are warranted against Defendants if you find by clear and convincing evidence that Defendants were guilty of intentional misconduct or gross negligence, which was a substantial cause of loss, injury, or damage to Plaintiff.

Under those circumstances you may, in your discretion, award punitive damages against Defendants. If clear and convincing evidence does not show such conduct by Defendants, punitive damages are not warranted against Defendants.

“Intentional misconduct” means that Defendants had actual knowledge of the wrongfulness of the conduct and there was a high probability of injury or damage to Plaintiff and, despite that knowledge, Defendants intentionally pursued that course of conduct, resulting in injury or damage.

“Gross negligence” means that Defendants’ conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

“Clear and convincing evidence” differs from the “greater weight of the evidence” in that it is more compelling and persuasive. As I have already instructed you, “greater weight of the evidence” means the more persuasive and convincing force and effect of the entire evidence in the case. “Clear and convincing evidence” is evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction, without hesitation, about the matter in issue.

In deciding the issue of punitive damages, you may consider any harm Defendants’ conduct caused Plaintiff.

You have also heard evidence of harms Defendants’ conduct allegedly caused to persons other than Plaintiff.

You may consider harms that Defendants’ conduct caused to persons other than Plaintiff in deciding the reprehensibility or wrongfulness of Defendants’ conduct only if the harms suffered by those other persons were caused by the same or similar conduct of Defendants that harmed Plaintiff.

However, you may not punish Defendants for any harms suffered by persons other than Plaintiff.

You may in your discretion decline to assess punitive damages.

* * *

The Court should revise the alleged punitive conduct described in the instruction because the current language is argumentative and improperly comments on the evidence. Florida Standard Jury Instruction (Civ.) 503.1(b) calls only for a description of the “alleged punitive conduct.” The proposed list goes further. It suggests that Plaintiff has ***already proven*** that Bard knew the PowerPort was defective, had developed a “safer” product, abandoned it for profit, knew its infection risk was higher, withheld data to protect profits, and steered doctors away from safer products.

Plaintiff may comment and argue about the evidence, but not the Court. *See, e.g.*, Fla. Stat. § 90.106 ("A judge may not sum up the evidence or comment to the jury upon the weight of the evidence, the credibility of the witnesses, or the guilt of the accused."); *Vaughn v. Progressive Cas. Ins. Co.*, 907 So. 2d 1248, 1254 (Fla. Dist. Ct. App. 2005) ("In order to ensure that all litigants receive a fair trial, the courts adhere to the general principle that '[a] trial court should scrupulously avoid commenting on the evidence in a case.'"); *Brown v. State*, 11 So. 3d 428, 435 (Fla. Dist. Ct. App. 2009) ("The Florida courts have determined that various jury instructions that amounted to judicial comment on the evidence violate the statute and thus are impermissible."); *Humana Health Ins. Co. of Fla. v. Chipps*, 802 So.2d 492, 495-96 (Fla. Dist. Ct. App. 2001) (reversing punitive damages award because "[t]he jury instructions here interfered with the jury's fact-finding function by characterizing and summarizing the evidence"); *Belle Glade Chevrolet-Cadillac Buick Pontiac Oldsmobile, Inc. v. Figgie*, 54 So. 3d 991, 997-98 (Fla. 4th DCA 2010) (holding that the trial court abused its discretion in its punitive damages instruction because "reading the complaint's entire allegations to the jury and telling them to accept those facts as true may have interfered with the jury's ability to independently determine the egregiousness of [defendant's] conduct.").

Finally, Defendants propose adding "[y]ou may in your discretion decline to assess punitive damages" to this instruction at the end of the first phase of trial because the jury must be so instructed. *See Chipps*, 802 So.2d at 496 (holding that trial court must instruct the jury that it has discretion to award no punitive damages).

## VERDICT FORM

Defendants respectfully request the Court adopt the proposed additional language in red text and remove the language is in ~~stricken red text~~ from the proposed verdict form. Defendants' arguments in support of the proposed changes are contained in the footnotes accompanying each line item on the verdict form.

**1. Statute of Limitations Defense**[1]

Do you find by a greater weight of the evidence that ~~Defendants proved their statute of limitations defense that~~, on or before March 28, 2020, Plaintiff knew—or, through due diligence, should have known—that she had suffered an infection that might have involved her PowerPort?

____ Yes ____ No

**2. Strict Product Liability Design Defect Claim**[2]

(A) ~~Do you find by a greater weight of the evidence that Defendants are liable to Plaintiff on the strict product liability design defect claim?~~ Do you find by a greater weight of the evidence that the PowerPort was defective because of its design?

____ Yes ____ No

(B) Do you find by a greater weight of the evidence that the design defect was a legal cause of Plaintiff's injury?

____ Yes ____ No

---

[1] The proposed amendment removes the burden of proof language to be consistent with the remainder of the verdict form on liability. *See, e.g.*, Question No. 2 ("Do you find by a greater weight of the evidence that Defendants are liable to Plaintiff on the strict product liability design defect claim?").

[2] The proposed amendment requires the jury to separately respond to questions regarding liability and causation. The Model Forms of Verdict set forth in Appendix B to the Florida Standard Jury Instructions in Civil Cases all contain specific language regarding "legal cause."

***If you answered "No" to Question 2(A) or 2(B), skip Questions 3 and 4 go to Question 5.*** [3]

**3. Unavoidably Unsafe Defense**

Do you find by a greater weight of the evidence that the PowerPort was unavoidably unsafe, and therefore not defective?

____ Yes ____ No

***A "Yes" to Question 3 means Defendants are not liable on the design defect claim.*** ~~***Skip Question 4 and go to Question 5. If you answered "No" to Question 3, then answer Question 4.***~~

**4. Negligent Design Defect Claim**[4]

~~Do you find by a greater weight of the evidence that Defendants are liable to Plaintiff on the negligent design defect claim?~~ (A) Do you find by a greater weight of the evidence that Defendants negligently designed the PowerPort?

(B) Do you find by a greater weight of the evidence that the defect in the negligently designed PowerPort was a legal cause of injury to Plaintiff?

____ Yes ____ No

**5. Fraudulent Concealment Claim**[5]

A. Do you find by a greater weight of the evidence that Defendants are liable to Plaintiff on the fraudulent concealment claim?

---

[3] To avoid the risk of inconsistent verdicts between the strict liability and negligence design defect claims, the jury should be instructed to skip the negligent design defect claim if it finds in Defendants' favor on the strict liability design defect or causation questions. *See* Fla. Std. Jury Instr. in Civ. Cases § 403.7, Notes on Use No 3 ("In cases involving claims of both negligence and defective design, submission of both claims may result in an inconsistent verdict.").

[4] The proposed amendment to the negligent design defect instruction is based on the Model Form of Verdict for General Negligence set forth in Appendix B to the Florida Standard Jury Instructions in Civil Cases: "Was there negligence on the part of (defendant) which was a legal cause of [loss] injury] [or] [damage] to (claimant) (decedent)?

[5] The proposed amendment requires the jury to separately respond to questions regarding liability and causation.

____ Yes ____ No

B. Do you find by a greater weight of the evidence that Plaintiff's reliance was a legal cause of Plaintiff's pecuniary loss?

____ Yes ____ No

**If you answered "No" to Questions 2, 4, and 5, do not answer any more Questions—sign the verdict form and notify the Court that you are finished. If you answered "Yes" to Questions 2, 4, or 5, please proceed to Question 6.**

**6. Compensatory Damages**[6]

What amount of damages do you find will fairly and adequately compensate Plaintiff for the claims you found in her favor?

Design Defect: $ ______________________

Fraudulent Concealment: $ ______________________

**7. Punitive Damages—Entitlement**

Do you find by clear and convincing evidence that Plaintiff should recover punitive damages?

____ Yes ____ No

---

[6] The jury must specify the damages it awards on the fraud and design defect claims. *See Philip Morris USA Inc. v. Gentile*, 281 So. 3d 493, 497 (Fla. Dist. Ct. App. 2019) (reversing and remanding with instructions to enter directed verdict on fraud-based claims and granting new trial on negligence and strict liability claims "because the jury awarded compensatory damages without specifying the amounts attributable to the non-fraud claims").

**CONCLUSION**

For these reasons, Defendants respectfully request the Court adopt Defendants' proposed amendments to the Second Proposed Final Jury Instructions and Verdict Form.

DATED this 26th day of October, 2026

SIDLEY AUSTIN LLP

By: <u>*/s/ Jennifer L. Saulino*</u>
Jennifer L. Saulino
(Admitted *Pro Hac Vice*)
1501 K Street, N.W.
Washington, D.C. 20005
Phone : (202)736-8000
Fax : (202-736-8711
jennifer.saulino@sidley.com

MCCARTER & ENGLISH, LLP

By: <u>*/s/ Edward J. Fanning, Jr.*</u>
Edward J. Fanning, Jr.
(Admitted *Pro Hac Vice*)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Phone: (973) 639-7927
Fax: (973) 297-3868
efanning@mccarter.com

NELSON MULLINS RILEY & SCARBOROUGH, LLP

By: <u>*/s/ Elizabeth C. Helm*</u>
Elizabeth Helm
(Admitted *Pro Hac Vice*)
Brandee J. Kowalzyk
(Admitted *Pro Hac Vice*)
Atlantic Station
201 17th St. NW, Ste. 1700
Atlanta, GA 30363
Phone: (404) 322-6155
Fax: (404) 322-6050
kate.helm@nelsonmullins.com
brandee.kowalzyk@nelsonmullins.com

*Attorneys for Defendants*