**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard Implanted Port Catheter Products Liability Litigation | MDL No. 3081 |
| Judy Hicks,<br>Individual Plaintiff,<br>v.<br>Becton Dickinson and Company, et al.,<br>Defendants. | No. CV-23-01703-PHX-DGC<br><br>**ORDER** |

This multidistrict litigation ("MDL") involves thousands of personal injury cases related to implanted port catheters ("IPCs" or "ports") designed, manufactured, and marketed by Defendants Becton Dickenson and Company, C. R. Bard, Inc., Bard Access Systems, Inc., and Bard Peripheral Vascular, Inc. (collectively, "Defendants" or "Bard"). The MDL Plaintiffs received implants of Bard IPCs and claim they were defective and caused serious injury.

The case of Plaintiff Judy Hicks has been selected for a bellwether trial in December. She received a Bard IPC in February 2021 and developed thrombosis.

Plaintiff has filed motions for summary judgment on Defendants' affirmative defenses. Docs. 5819, 5820. Defendants have filed a response. Doc. 6231. Plaintiff has

filed no reply, and neither side requests oral argument. For reasons stated below, the Court will grant the motions in part and deny them in part.

## I. Background.

An IPC is a medical device surgically implanted under the skin to provide repeated access to a patient's vascular system without the need for multiple needlesticks into peripheral veins. IPCs are used to deliver chemotherapy and immunotherapy medication, intravenous fluids, blood transfusions, and parenteral nutrition. IPCs can remain in place for weeks, months, or even years until treatment is completed.

IPCs consist of a port and a catheter. The port is a small reservoir with a self-sealing silicone center where a needle can be inserted to deliver medication. The port typically is implanted beneath the chest skin and below the collarbone. The port is attached to a catheter, which is a thin flexible tube for delivery of the medication to a vein. The catheter is tunneled under the skin to an insertion point in a central vein. Catheters vary in width and are made of silicone or polyurethane. IPCs typically are implanted by an interventional radiologist or a vascular surgeon. A nurse or other medical professional then accesses the IPC to inject the medication, which flows from the port to the catheter and into the vein.

## II. Plaintiff Hicks.

On February 21, 2021, Plaintiff Hicks received a Bard X-Port IPC with a ChronoFlex polyurethane catheter at Ste. Genevieve County Memorial Hospital in Missouri for chemotherapy related to breast cancer. Dr. Theresa Cavins, a general surgeon, implanted the X-Port.

Plaintiff received multiple chemotherapy infusions through the X-Port. The device was occluded with thrombus during some of the infusions. After Plaintiff had received cancer-related surgery, the X-Port was found to be occluded at the tip of the catheter. It was surgically removed on August 3, 2022.

Plaintiff claims the X-Port caused her to suffer catheter-related thrombosis. She alleges the X-Port was defectively designed because the polyurethane used in the ChronoFlex catheter is a rough material that degrades over time and is prone to thrombus

formation, and that Bard failed to make the catheter smoother or coat it with antithrombotic material.

Plaintiff asserts multiple claims against Defendants under Missouri law. *See* Docs. 190 (short-form complaint), 1889 (master complaint). Defendants deny liability and assert various affirmative defenses. *See* Doc. 2023-1 (master answer).[1] Plaintiff moves for summary judgment on the statute of limitations and repose defense, contributory and comparative negligence defense, and apportionment of fault defense. Docs. 5819, 5820; *see* Doc. 2023-1 at 66-69, ¶¶ 10, 31, 32.

**III. Summary Judgment Standard.**

Summary judgment is appropriate if the moving party shows there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 322, 323 (1986).

The moving party "bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and draw justifiable inferences in that party's favor, *Anderson*, 477 U.S. at 255.

---

[1] The master pleadings set forth allegations, claims, and defenses the MDL Plaintiffs and Defendants assert generally. *See* Doc. 145. Plaintiff-specific allegations are contained in individual short-form complaints, profile forms, and fact sheets. *See id.*; Docs. 476, 477. Defendants are not required to file case-specific answers and instead enter an initial appearance in each case. *See* Doc. 453.

## IV. Discussion.

### A. Statute of Limitations and Repose.

Plaintiff moves for summary judgment on Defendants' tenth affirmative defense, which states: "Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations and/or statute of repose." Doc. 2023-1 at 66, ¶ 10. Defendants do not oppose summary judgment on this defense. Doc. 6231 at 2. The Court therefore will grant Plaintiff's motion. Doc. 5820.

### B. Contributory/Comparative Negligence and Apportionment of Fault.

Defendants' thirty-first affirmative defense states that Plaintiff's recovery of any damages "is barred, in whole or in part, or subject to reduction, under the doctrines of contributory and/or comparative negligence." Doc. 2023-1 at 68, ¶ 31. The thirty-second affirmative defense states that Plaintiff's recovery "should be reduced in proportion to the degree or percentage of negligence, fault or exposure to products attributable to Plaintiffs, any other defendants, third-party defendants, or other persons[.]" *Id.* at 69, ¶ 32. Plaintiff moves for summary judgment on these defenses, arguing that there is no evidence that Plaintiff or any non-parties were negligent in causing her injuries. Doc. 5819 at 2-4.

Defendants make clear that they will not assert the contributory or comparative negligence of Plaintiff or seek to apportion fault to Plaintiff or any non-parties. Doc. 6231 at 2-3. The Court will grant Plaintiff's motion with respect to these specific defenses. *See* Fed. R. Civ. P. 56(g).

Defendants oppose summary judgment to the extent they will present evidence that they were not negligent and that something other than an alleged defect in the X-Port caused Plaintiff's thrombosis. Doc. 6231 at 3-6. "Under Missouri law, a defendant may offer evidence that the act of a third person, even a non-party, caused the plaintiff's injuries." *Vasquez v. Hill*, No. 4:11CV01561AGF, 2012 WL 6568474, at *4 (E.D. Mo. Dec. 17, 2012) (citing *Mengwasser v. Anthony Kempker Trucking*, 312 S.W.3d 368, 373 (Mo. Ct. App. 2010)); *see also Cox v. Callaway Cnty., Mo.*, No. 2:18-CV-04045-NKL, 2020 WL 1548063, at *2 (W.D. Mo. Mar. 31, 2020) ("[W]here the issue being addressed

is not apportionment of fault but rather whether the defendant was liable at all, a defendant 'may introduce any evidence that tends to establish that [it] is not guilty of the negligence charged.'" (citation omitted)); *Lipp v. Ginger C, L.L.C.*, No. 2:15-CV-04257-NKL, 2017 WL 277579, at *2 (W.D. Mo. Jan. 19, 2017) ("Plaintiffs concede that Ginger C can argue that a non-party was the 'sole cause' of Plaintiffs' injuries. The Court agrees; under Missouri law, a defendant may introduce evidence that tends to establish that he or she is not guilty of the negligence charged. That same rule does not prevent a defendant from arguing that the act of a third person, even a non-party, was the sole cause of the plaintiff's injuries." (citation modified)).

Defendants present evidence that imaging of Plaintiff's X-Port placement showed the tip of the catheter to be in the superior vena cava. Doc. 6231-1 ¶¶ B.1-B.2. Defendants also present expert opinions that while this placement did not breach the standard of care, it was not ideal and made thrombosis more likely. *Id.* ¶¶ B.3-B.6. Defendants argue that they should be permitted to introduce this evidence to show that something other than an alleged defect in the X-Port caused Plaintiff's thrombosis. Doc. 6231 at 6. Plaintiff offers no response. The Court will deny summary judgment on this issue.

**IT IS ORDERED:**

1. Plaintiff's motion for partial summary judgment on Defendants' tenth affirmative defense — statute of limitations and repose (Doc. 5820) — is **granted**.

2. Plaintiff's motion for partial summary judgment on Defendants' thirty-first and thirty-second affirmative defenses (Doc. 5819) is **granted in part** and **denied in part**. The motion is granted on the contributory or comparative negligence of Plaintiff and apportionment of fault, and otherwise is denied.

3. There being no motions to seal, the Clerk of Court shall file Plaintiff's motions for partial summary judgment (Docs. 5819, 5820) and Defendants' response (Doc. 6231) on the public docket with the same document number and filing date.

Dated this 2nd day of November, 2026.

David G. Campbell
Senior United States District Judge